# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 14-04213-RGK (RZx) | Date | August 25, 2014 |
|---|---|---|---|
| Title | *MUNHWA BROADCASTING CORP. et al. v. SONG et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE |
|---|---|

| Sharon L. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) Order re: Plaintiffs' Motion for Preliminary Injunction (DE 38)**

## I.     INTRODUCTION

Plaintiffs Munhwa Broadcasting Corporation, MBC America Holdings, Inc., Seoul Broadcasting System International, Inc., and KBS America, Inc. ("Plaintiffs") filed a complaint in this Court on June 2, 2014 against defendants Doo Hyun Song aka Dylan Song, Sung Youn Kim, Media Journal, Inc., Best4U, Inc. dba Bestway Realty, Chilbo Myunok USA, LLC, Myungdong Tofu House, Keum S. Kang dba MissyLuxy, and unnamed entities. Plaintiffs filed a First Amended Complaint ("FAC") on June 30, 2014. The FAC maintains the same causes of action as the original Complaint, and adds as defendants Se Jin O, Glonet Services, Inc., Lai Lai China Bistro, Inc., and Beul (together with the originally named defendants, "Defendants"). The FAC alleges the following causes of action: violation of the Digital Millennium Copyright Act; copyright infringement; and unfair competition.

Plaintiffs filed the present Motion for Preliminary Injunction on July 7, 2014. For the reasons set forth below, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction.

## II.     FACTUAL BACKGROUND

Plaintiffs allege the following facts:

Plaintiffs and/or their respective parent companies are the three largest national television networks in South Korea, and are the producers, distributors, and/or exclusive licensees of a large number of audiovisual works, or "programs." Customers in the United States can access Plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-04213-RGK (RZx) | Date | August 25, 2014 |
|---|---|---|---|
| Title | *MUNHWA BROADCASTING CORP. et al. v. SONG et al.* | | |

programs through Plaintiffs' respective websites by paying a subscription fee. In the U.S., Plaintiffs also enter into retransmission consent agreements with various cable television systems, satellite television services, and other multi-channel distributors, which then make the programs available to their subscribers. Plaintiffs' works are registered with the United States Copyright Office, and Plaintiffs own or hold exclusive licenses for the copyrights covering those works.

Central to Plaintiffs' claims is the TVPad,[1] a device manufactured by Create New Technology (HK) Limited, which utilizes Google's Android operating system. The TVPad connects to a television via an HDMI or analog/video cable, and can be connected to the Internet through either a wireless or Ethernet cable. Once an Internet connection is established, various applications, commonly known as "apps," allow the user to access and stream a host of audiovisual works.

The TVPad enables users to view copyrighted works, including Plaintiffs' copyrighted works, without the authorization of the applicable copyright holders, and without paying to do so. Customers make a one-time, up-front payment to purchase the device, and then use its applications to stream myriad copyrighted works for free. The entities responsible for TVPad's creation and operation - its manufacturer, distributors, and third party application developers - do not pay any licensing or other fees. Additionally, the TVPad and its applications are designed to bypass "geo-blocking" algorithms which many broadcasters apply to deter the viewing of their content outside of their country's border.

Defendants Song, Kim, Media Journal, and Kang (collectively, "Retail Defendants") are individuals and entities which advertise and sell the TVPad in Southern California. Defendants explain that Media Journal, Inc. is a retailer of the TVPad, Song is a shareholder of Media Journal, Kim is an employee of Media Journal, and Kang "dba Missyluxy" is an affiliate of Media Journal that sells TVPads in Orange County, California. (Song Decl. ¶¶ 2-3, 9, 11.) A fifth defendant, Best4U, is Media Journal's landlord. (Song Decl. ¶ 10.) The Retail Defendants' advertisements often emphasize a customer's ability to enjoy "free" programming utilizing the device. Retail Defendants also instruct customers on how to set up and use the TVPad, and provide an installation manual.

Defendants Chilbo Myunok USA, Corea B.B.Q., Lai Lai China Bistro, and Beul ("Restaurant Defendants") are restaurants which use the TVPad to display copyrighted programming to their customers.

Plaintiffs do not explain who or what Se Jin O or Glonet are, or their relationship to the above allegations.

Plaintiffs seek a preliminary injunction, and assert that (1) all Defendants are directly infringing

---

[1]There are currently three versions of the TVPad, to which Plaintiffs refer as "TVPad," "TVPad 2," and "TVPad 3." This Order uses "TVPad" to refer to all versions of the device.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-04213-RGK (RZx) | Date | August 25, 2014 |
|---|---|---|---|
| Title | ***MUNHWA BROADCASTING CORP. et al. v. SONG et al.*** | | |

Plaintiffs' copyrights, (2) the Retail Defendants are engaged in contributory infringement of Plaintiffs' copyrights, and (3) the Retail Defendants' distribution of the TVPad violates the Digital Millennium Copyright Act.

### III.   JUDICIAL STANDARD

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For a court to grant a preliminary injunction, the plaintiff must establish (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that the public interest favors injunction. *Id*. at 20. The Ninth Circuit has adopted a sliding scale approach. Under this approach, where there is not a likelihood of success on the merits, a preliminary injunction may still be warranted when serious questions going to the merits are raised and the balance of the equities tips sharply toward the plaintiff. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). However, the plaintiff must also show that there is a likelihood of irreparable injury and the injunction is in the public interest. *Id*. at 1135.

### IV.   DISCUSSION

For the reasons that follow, the Court finds that Plaintiffs have not established that they are entitled to a preliminary injunction against Defendants.

#### A.   Likelihood of Success on the Merits

##### 1.   *Plaintiffs' Direct Infringement Claim Against All Defendants*

To establish a claim for direct copyright infringement, Plaintiffs must show (1) ownership of the allegedly infringed material and (2) violation by Defendants of at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (2001) (citing 17 U.S.C. § 501(a)). "Under the copyright laws, the registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright in a judicial proceeding commenced within five years of the copyright's first publication." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (1997) (citing 17 U.S.C. § 410(c)).

Plaintiffs have provided voluminous evidence that they own valid copyrights in the material which they allege is being infringed. They have submitted declarations authenticating copyright registration certificates issued within the last five years for hundreds of episodes of programming, and provided copyright registration numbers for additional episodes. (H. Lee Decl. ¶ 2, Ex. B; Chang Decl. ¶ 2, Ex. B; Kim Decl. ¶ 2, Ex. A.) Further, the declaration of Kyung-Won Yi and Exhibits G through J thereto establish that these are the same programs allegedly infringed by Defendants' actions. (Yi Decl. ¶ 7, Exs. G-J.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-04213-RGK (RZx) | Date | August 25, 2014 |
|---|---|---|---|
| Title | ***MUNHWA BROADCASTING CORP. et al. v. SONG et al.*** | | |

Plaintiffs argue that all of the Defendants are directly infringing Plaintiffs' copyrights by "violating Plaintiffs' exclusive right to perform their copyrighted works publicly and to authorize others to do so" (Pls.' Mot. Prelim. Inj. at 10), one of the exclusive rights granted by 17 U.S.C. § 106. In the case of audiovisual works, to "perform" a work means "to show its images in any sequence or to make the sounds accompanying it audible." 17 U.S.C. § 101. To perform an audiovisual work "publicly" means:

> (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

*Id.*

Plaintiffs have demonstrated a likelihood of success on their direct infringement claim as to the Restaurant Defendants. Plaintiffs have submitted uncontradicted evidence that the Restaurant Defendants use the TVPad to show Plaintiffs' copyrighted programs on TVs in their restaurants (Yi Decl. ¶¶ 10-13), and have done so without obtaining a license or other form of consent from Plaintiffs. (H. Lee Decl. ¶ 6; Kim Decl. ¶ 3; Chang Decl. ¶ 3.) This violates Plaintiffs' exclusive statutory right to "publicly perform" their copyrighted works.

Plaintiffs' argument with regard to the Retail Defendants is unclear. Plaintiffs have not shown that Retail Defendants "perform" any of Plaintiffs' copyrighted works. Nor do Plaintiffs cite any authority for the proposition that selling a third party a device which can be used to infringe another's copyrighted works somehow constitutes "authorizing" that third party to "publicly perform" those works. Thus, Plaintiffs have not demonstrated a likelihood of success on their direct infringement claim against the Retail Defendants.

Plaintiffs also fail to demonstrate a likelihood of success on this claim against Best4U, Se Jin O, or Glonet Services. Defendants assert that Best4U, which does business as Bestway Realty, is Media Journal's landlord (Song Decl. ¶ 10), and Plaintiffs do not dispute this fact. Plaintiffs fail to provide any basis for holding a landlord liable for the infringing acts of its tenant. With regard to Se Jin O and Glonet Services, Plaintiffs do not explain who or what those entities are, and do not provide any evidence that they have engaged in infringing activities.

2.   *Plaintiffs' Contributory Infringement Claim Against Retail Defendants*

Plaintiffs also argue that Retail Defendants are liable on a theory of contributory infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-04213-RGK (RZx) | Date | August 25, 2014 |
|---|---|---|---|
| Title | *MUNHWA BROADCASTING CORP. et al. v. SONG et al.* | | |

Under the doctrine of contributory infringement, "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005). "Evidence of 'active steps . . . taken to encourage direct infringement,' . . . such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe[.]" *Id.* at 936 (citation omitted). Additionally, there must be "evidence of actual infringement by recipients of the device[.]" *Id.* at 940.

Plaintiffs have provided substantial evidence of Retail Defendants' advertisements to prospective purchasers. For example, a March 10, 2014 advertisement in the Korea Daily Economy stated, "View Real-time Korean TV Broadcasts for free with TV Pad! . . . Real-time views without Monthly fees with one-time purchase[.]" (Yi Decl. ¶ 5, Ex. D at 0027-28.) Similarly, a large banner in MissyLuxy's store invited customers to "[w]atch Korean Broadcasting Live for Free[.]" (Yi Decl. ¶ 3, Ex. B at 0018-19.) Additional evidence shows that Retail Defendants instruct customers on how to set up and use the TVPad, and provide an installation manual. (Lee Decl. ¶¶ 2; Yi Decl. ¶ 2, 4.)

This evidence demonstrates an intent to encourage individual customers to purchase the TVPad and use it to stream Korean broadcasts for their personal viewing without paying licensing fees. It does not indicate an intent to encourage businesses or other entities to perform copyrighted works in a place open to the public, as Restaurant Defendants have done. Yet Plaintiffs have not cited any authority or provided any argument in support of their implicit proposition that individuals engage in copyright infringement when they stream unlicensed content for personal viewing. Thus, Plaintiffs have not shown that Retail Defendants distributed the TVPad with the object of promoting an infringing use, and therefore have not established a likelihood of success on their claim for contributory infringement. However, because an individual's liability for streaming unlicensed, copyrighted content for personal viewing appears to be an issue of first impression in the Ninth Circuit,[2] the Court will assume for the sake of argument that Plaintiffs have raised "serious questions going to merits," *Cottrell*, 632 F.3d at1134-35, and will analyze whether the balance of the equities tips sharply towards Plaintiffs in Section IV(B)(2).

---

[2]In June 2014, the U.S. Supreme Court held that a company which made copies of broadcast programs and streamed them to subscribers over the Internet could be liable for direct copyright infringement because it "performed" copyrighted works "publicly" in violation of 17 U.S.C. § 106. *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 134 S.Ct. 2498, 2503, 2511 (2014). Whether the subscribers themselves were liable for copyright infringement was not at issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-04213-RGK (RZx) | Date | August 25, 2014 |
|----------|----------------------|------|-----------------|
| Title | ***MUNHWA BROADCASTING CORP. et al. v. SONG et al.*** | | |

3. _Plaintiffs' Claim for Violation of Digital Millennium Copyright Act_
_Against Retail Defendants_

Alternatively, Plaintiffs argue that Retail Defendants have violated 17 U.S.C. § 1201(a)(2)(A), which provides that "[n]o person shall . . . import, offer to the public, provide, or otherwise traffic in any technology, product, . . . device, component, or part thereof, that . . . is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title." To "circumvent a technological measure" includes avoiding or bypassing that measure without the authority of the copyright owner. *Id.* at § 1201(a)(3)(A). A technological measure "effectively controls access to a work" if "the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id.* at § 1201(a)(3)(B).

In support of their position, Plaintiffs argue that "the TVPad is a device designed to circumvent a technological measure called 'geo-blocking' which controls the viewing of broadcasted programming outside of the originating country's borders." (Pls.' Mot. Prelim. Inj. at 13.) Yet Plaintiffs fail to provide sufficient facts regarding the manner in which the "geo-blocking" measure works for this Court to determine whether it meets the criterion of "effectively controlling access to a work" as set forth in Section 1201(a)(3)(B). Moreover, Plaintiffs do not show that the TVPad was *primarily* designed or produced for the purpose of circumventing the "geo-blocking" measure. While Gail Peter Wong states in his declaration that "many broadcasters apply geo-blocking algorithms to deter the viewing of their content outside their country's border" (Wong Decl. ¶ 12), neither Mr. Wong nor Plaintiffs' other declarants compare the importance of the TVPad's bypass functionality to the other functions it performs. Thus, Plaintiffs do not demonstrate a likelihood of success on this claim. They do, however, raise serious questions going to the merits sufficient for the Court to analyze whether the balance of the equities tips sharply towards Plaintiffs.

**B.     Balance of Equities**

1. _The Balance of Equities Between Plaintiffs and Restaurant Defendants Tips in_
_Plaintiffs' Favor_

A preliminary injunction would impose little harm on Restaurant Defendants, as it would simply require them to cease using TVPads in their restaurants. Plaintiffs have provided evidence of their content distribution models in the United States, as well as some of the ways in which they believe they will be affected by Defendants' activities. (H. Lee Decl. ¶¶ 3-4, 9-10, 14, 19; Einhorn Decl. ¶¶ 4-5.) This includes impacts on Plaintiffs' revenues from online subscriptions, retransmission agreements, and advertising which outweigh the relatively minor impact on Restaurant Defendants. Thus, Plaintiffs have shown that the balance of equities tips in their favor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-04213-RGK (RZx) | Date | August 25, 2014 |
|---|---|---|---|
| Title | ***MUNHWA BROADCASTING CORP. et al. v. SONG et al.*** | | |

2. *The Balance of Equities Between Plaintiffs and Retail Defendants Does Not Tip Sharply Toward Plaintiffs*

Since the Court did not find a "likelihood of success" on Plaintiffs' claims against Retail Defendants, they must establish that the balance of equities tips "sharply" in their favor. *Cottrell*, 632 F.3d at 1134-35.

The effect of an injunction on Retail Defendants would be drastic. Since the TVPad is Media Journal's only product, a preliminary injunction would force that company out of business. (Song Decl. ¶ 17.) Critically, in evaluating the harm to Plaintiffs, Plaintiffs have not presented any evidence of the size of the market for their content in Southern California, where Retail Defendants' sales are occurring, or even in the U.S. more broadly. Michael Einhorn's declaration contains a table with some high-level information about the platforms through which Plaintiffs' programming is available in the U.S. (Einhorn Decl. ¶ 5), but does not contain any information about total U.S. revenues, much less U.S. revenues as a proportion of Plaintiffs' total revenues. As a result, Plaintiffs have not provided the Court with a reasonable measure of the effect of Retail Defendants' actions on Plaintiffs' businesses. In light of the grave effect a preliminary injunction would have on Retail Defendants, the Court cannot conclude that the balance of equities tips "sharply" in favor of Plaintiffs. Therefore, the Court cannot issue a preliminary injunction against Retail Defendants.

**C.     Plaintiffs Do Not Establish a Likelihood of Irreparable Harm Due to Restaurant Defendants' Copyright Infringement**

Plaintiffs fail to establish a likelihood of irreparable harm due to Restaurant Defendants' copyright infringement. Plaintiffs' declarants anticipate a reduction in revenues from online subscriptions, retransmission agreements, and advertising, as well as associated harms such as interference with the negotiation of favorable retransmission and advertising agreements. However, Plaintiffs do not analyze the impact of individuals or entities using the TVPad to publicly perform copyrighted works, as distinct from the (presumably much larger) number of people using the TVPad for their own personal streaming use. The one declarant to provide evidence of the Restaurant Defendants' conduct only visited each Restaurant Defendant on one or two occasions (Yi Decl. ¶¶ 10-13), making it difficult to determine how often they engage in their infringing use. Nor does that declarant provide information about the number of customers viewing the public performances at Restaurant Defendants' restaurants. Further, Plaintiffs do not provide any concrete evidence of harm that has resulted during the time Restaurant Defendants have been using the TVPad in their restaurants.

Moreover, the majority of the harms which Plaintiffs identify are monetary, and "[i]t is well established . . . that such monetary injury is not normally considered irreparable." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (1980) (holding that "a diminution of revenues, a diminution of the market value of plaintiff's property and the loss of substantial goodwill normally attached to a profitable enterprise" were "but monetary injuries which could be remedied by a damage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-04213-RGK (RZx) | Date | August 25, 2014 |
|---|---|---|---|
| Title | *MUNHWA BROADCASTING CORP. et al. v. SONG et al.* | | |

award").

Because Plaintiffs fail to satisfy this third element, the Court need not evaluate whether the public interest favors an injunction against Restaurant Defendants.

**V.    CONCLUSION**

The Court finds that Plaintiffs have not presented sufficient allegations and evidence to warrant preliminary injunctive relief. The Court is not, however, deciding the merits of this case beyond its current procedural posture.

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

_____    **:**    _____

**Initials of Preparer**

_____