Brent D. Sokol (State Bar No. 167537)
Charlotte S. Wasserstein (State Bar No. 279442)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071.2300
Telephone:  +1.213.489.3939
Facsimile:   +1.213.243.2539
Email:      bdsokol@JonesDay.com
Email:      cswasserstein@JonesDay.com

William Rooklidge (State Bar No. 134483)
JONES DAY
3161 Michelson Drive Suite 800
Irvine, CA 92612-4408
Telephone:  1.949. 851.3939
Facsimile:   1.949.553.7539
Email:      wrooklidge@JonesDay.com

Attorneys for Plaintiffs
MUNHWA BROADCASTING
CORPORATION, *et al*.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNHWA BROADCASTING CORPORATION, a Korean corporation; MBC AMERICA HOLDINGS, INC., a California corporation; SEOUL BROADCASTING SYSTEM INTERNATIONAL, INC., a New York corporation; and KBS AMERICA, INC., a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> CREATE NEW TECHNOLOGY (HK) CO. LTD. a Hong Kong Company, HUA YANG INTERNATIONAL (HK) CO. LTD., a Hong Kong Company, SHENZHEN GREATVISION TECHNOLOGY LTD., a China company, DU HYUN SONG aka DOO HYUN SONG aka DYLAN SONG, an individual; SUNG YOUN KIM, an individual; MEDIA JOURNAL, INC., a California corporation; BEST4U, INC. dba BESTWAY REALTY, a California corporation; CHILBO MYUNOK USA, LLC, a California limited liability company; COREA B.B.Q., INC. dba MYUNGDONG TOFU HOUSE, a California corporation; KEUM S. KANG, | Case No. CV14-4213-RGK-RZx <br><br> Assigned for all purposes to Hon. R. Gary Klausner <br><br> **SECOND AMENDED COMPLAINT** <br><br> **FOR (1) PUBLIC PERFORMANCE COPYRIGHT INFRINGEMENT; (2) REPRODUCTION AND DISTRIBUTION COPYRIGHT INFRINGEMENT; (3) DMCA VIOLATIONS; (4) LANHAM ACT VIOLATION; (5) FEDERAL UNFAIR COMPETITION (6) COMMON LAW TRADEMARK INFRINGEMENT; (7) STATUTORY UNFAIR COMPETITION; (8) COMMON LAW UNFAIR COMPETITION** <br><br> **DEMAND FOR JURY TRIAL** |

1  an individual dba MISSYLUXY; SE JIN
   O, an individual; GLONET SERVICES,
2  INC., a California corporation; LAI LAI
   CHINA BISTRO, INC., a California
3  corporation; CJ Wilshire, Inc. d/b/a BEUL,
   a California corporation; and DOES 1
4  through 10, inclusive,

5                  Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    THE PARTIES ..................................................................................... 7

    A.     The Korean Television Network Entities .............................. 7

    B.     The Retransmission Service Operator Defendants ............... 8

    C.     The U.S. Promoter-Distributor Defendants ......................... 8

    D.     The User Defendants ........................................................... 10

III.   JURISDICTION AND VENUE ........................................................ 11

IV.    BACKGROUND FACTS .................................................................. 12

    A.     The Korean Television Networks and Their U.S. Subsidiaries ......... 12

    B.     The Create Group Directly Infringes the U.S. Subsidiaries' Public   Performance Rights by Retransmitting the Networks' Daily Broadcasts To, From and Within the United States of America ................... 13

    C.     How the Create Group's Service Illegally Retransmits Copyrighted Works To, From and Within The United States of America ................... 13

    D.     The Create Group Promotes Its Parallel Korean Television Broadcast Service ............................................................. 16

    E.     The Create Group's U.S. Promoter-Distributors Have Built Their  Businesses By Promoting Use of the Service to View the Network's Korean Broadcasts and Programs ....................... 20

    F.     Song's and Media Journal's Acts Constitute Willful Infringement And Are Under the Direction of the "Control Tower"—Create Group ............................................................ 21

    G.     Media Journal and Song's Ongoing Misrepresentation of this Court's Proceedings ................................................................ 22

    H.     PLAINTIFFS' TRADEMARK AND COPYRIGHT REGISTRATIONS ................................................................ 25

V.     PRAYER FOR RELIEF ................................................................... 39

    DEMAND FOR A JURY TRIAL ................................................... 41

# I.    INTRODUCTION

1.      Plaintiffs Munhwa Broadcasting Corporation, MBC America Holdings, Inc., ("MBC"), Seoul Broadcasting System International, Inc. ("SBS") and KBS America, Inc. ("KBS", and collectively with MBC and SBS, "the U.S. Subsidiaries") file this Second Amended Complaint ("SAC") against Defendants Create New Technology (HK) Ltd. ("Create"), Hua Yang International (HK) Ltd., ("Hua Yang"), ShenZhen GreatVision Technology Co. Ltd., ("GreatVision" and, collectively with Create and Hua Yang, the "Create Group"), their U.S. distributors, Media Journal, Inc., Du Hyun Song, Sung Youn Kim, Keum S. Kang, Glonet Services, Inc. and Se Jin O (collectively "Promoter-Distributors"), and representative U.S. users of the Create Group's service, including CJ Wilshire, Inc. d/b/a/ Beul, Chilbo Myunok USA, LLC, Correa B.B.Q., Inc. d/b/a Myungdong Tofu House and Lai Lai China Bistro, Inc. ("Users"), and allege as follows:

2.      The issue before this Court is whether the U.S. Subsidiaries of the three largest Korean television broadcasting networks (the "Networks") may protect their daily broadcasts and virtually their entire catalog of Korean television programs from being publically performed via pirated retransmission to, from and within the United States.

3.      The U.S. Subsidiaries are the exclusive licensees of the Networks' Korean television broadcasts and programs in the United States.  For decades, these broadcasts and programs have been popular among U.S. residents in general, and Chinese and Korean speakers in particular.[1]  Moreover, the U.S.

---

[1] *See, e.g.,* Karen Klein, *Korean Drama's Appeal Crosses Ethnic Lines*, L.A. Times, Jan. 16, 1994, at 3; Monica Eng, *Korean Soaps Lure Unlikely Audience*, Chicago Tribune, July 9, 2005, at C1.

market for the Networks' broadcasts and programs has increased as the ethnic Korean population in the U.S. has surged by nearly 50% since 2000.[2]

4.      The U.S. Subsidiaries sublicense their licensed broadcasts and programs to DIRECTV and Time Warner Cable, among other service providers. In turn, these service providers retransmit the broadcasts and programs in the U.S. to fee-paying subscribers.

5.       Plaintiffs hold exclusive U.S. copyrights for their Korean television programs and broadcasts.   Among the bundle of copyright rights afforded Plaintiffs, the Transmit Clause of the Copyright Act, 17 U.S.C. § 101, 106(4) provides them with the exclusive right "to transmit or otherwise communicate a performance or display of" their copyrighted television programs and broadcasts (the "Copyrighted Works") "to the public by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times."

6.      As has been the law of this Circuit, Plaintiffs' exclusive rights under the Transmit Clause are vested and enforceable regardless of whether or not the Copyrighted Works are originally broadcast for free.  *See generally Fox TV Stations v. BarryDriller Content Sys.*, 915 F. Supp. 2d 1138 (C.D. Cal. 2012); *ABC, Inc. v. Aereo, Inc.*, 134 S.Ct. 2498 (2014) (holding that unauthorized retransmission of free broadcast television to members of the public violates the Transmit Clause).

7.      Plaintiffs allege that the Create Group retransmits or otherwise communicates *the entirety of the Networks' copyrighted daily broadcasts and its programs on demand* to the U.S. public, without a copyright license, in direct infringement of the U.S. Subsidiaries' public performance rights.  In substance,

_____

[2] *See* U.S. Census Records, *available at* http://www.census.gov/data/data-tools.html.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................. 1

II.   THE PARTIES ...................................................................... 7
      A.   The Korean Television Network Entities ........................ 7
      B.   The Retransmission Service Operator Defendants .............. 8
      C.   The U.S. Promoter-Distributor Defendants ......................... 8
      D.   The User Defendants.......................................................... 10

III.  JURISDICTION AND VENUE.............................................. 11

IV.   BACKGROUND FACTS ........................................................ 12
      A.   The Korean Television Networks and Their U.S. Subsidiaries.......... 12
      B.   The Create Group Directly Infringes the U.S. Subsidiaries'
           Public   Performance Rights by Retransmitting the Networks'
           Daily Broadcasts To, From and Within the United States of
           America ...................................................................................... 13
      C.   How the Create Group's Service Illegally Retransmits
           Copyrighted Works To, From and Within The United States of
           America ...................................................................................... 13
      D.   The Create Group Promotes Its Parallel Korean Television
           Broadcast Service ...................................................................... 16
      E.   The Create Group's U.S. Promoter-Distributors Have Built
           Their  Businesses By Promoting Use of the Service to View the
           Network's Korean Broadcasts and Programs ..................... 20
      F.   Song's and Media Journal's Acts Constitute Willful
           Infringement And Are Under the Direction of the "Control
           Tower"—Create Group ............................................................ 21
      G.   Media Journal and Song's Ongoing Misrepresentation of this
           Court's Proceedings .................................................................. 22
      H.   PLAINTIFFS' TRADEMARK AND COPYRIGHT
           REGISTRATIONS .................................................................... 25

V.    PRAYER FOR RELIEF ......................................................... 39

      DEMAND FOR A JURY TRIAL ........................................... 41

# I.    **INTRODUCTION**

1.     Plaintiffs Munhwa Broadcasting Corporation, MBC America Holdings, Inc., ("MBC"), Seoul Broadcasting System International, Inc. ("SBS") and KBS America, Inc. ("KBS", and collectively with MBC and SBS, "the U.S. Subsidiaries") file this Second Amended Complaint ("SAC") against Defendants Create New Technology (HK) Ltd. ("Create"), Hua Yang International (HK) Ltd., ("Hua Yang"), ShenZhen GreatVision Technology Co. Ltd., ("GreatVision" and, collectively with Create and Hua Yang, the "Create Group"), their U.S. distributors, Media Journal, Inc., Du Hyun Song, Sung Youn Kim, Keum S. Kang, Glonet Services, Inc. and Se Jin O (collectively "Promoter-Distributors"), and representative U.S. users of the Create Group's service, including CJ Wilshire, Inc. d/b/a/ Beul, Chilbo Myunok USA, LLC, Correa B.B.Q., Inc. d/b/a Myungdong Tofu House and Lai Lai China Bistro, Inc. ("Users"), and allege as follows:

2.     The issue before this Court is whether the U.S. Subsidiaries of the three largest Korean television broadcasting networks (the "Networks") may protect their daily broadcasts and virtually their entire catalog of Korean television programs from being publically performed via pirated retransmission to, from and within the United States.

3.     The U.S. Subsidiaries are the exclusive licensees of the Networks' Korean television broadcasts and programs in the United States.  For decades, these broadcasts and programs have been popular among U.S. residents in general, and Chinese and Korean speakers in particular.[1]  Moreover, the U.S.

---

[1] *See, e.g.,* Karen Klein, *Korean Drama's Appeal Crosses Ethnic Lines*, L.A. Times, Jan. 16, 1994, at 3; Monica Eng, *Korean Soaps Lure Unlikely Audience*, Chicago Tribune, July 9, 2005, at C1.

market for the Networks' broadcasts and programs has increased as the ethnic Korean population in the U.S. has surged by nearly 50% since 2000.[2]

4.     The U.S. Subsidiaries sublicense their licensed broadcasts and programs to DIRECTV and Time Warner Cable, among other service providers. In turn, these service providers retransmit the broadcasts and programs in the U.S. to fee-paying subscribers.

5.      Plaintiffs hold exclusive U.S. copyrights for their Korean television programs and broadcasts.   Among the bundle of copyright rights afforded Plaintiffs, the Transmit Clause of the Copyright Act, 17 U.S.C. § 101, 106(4) provides them with the exclusive right "to transmit or otherwise communicate a performance or display of" their copyrighted television programs and broadcasts (the "Copyrighted Works") "to the public by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times."

6.     As has been the law of this Circuit, Plaintiffs' exclusive rights under the Transmit Clause are vested and enforceable regardless of whether or not the Copyrighted Works are originally broadcast for free.  *See generally Fox TV Stations v. BarryDriller Content Sys.*, 915 F. Supp. 2d 1138 (C.D. Cal. 2012); *ABC, Inc. v. Aereo, Inc.*, 134 S.Ct. 2498 (2014) (holding that unauthorized retransmission of free broadcast television to members of the public violates the Transmit Clause).

7.     Plaintiffs allege that the Create Group retransmits or otherwise communicates *the entirety of the Networks' copyrighted daily broadcasts and its programs on demand* to the U.S. public, without a copyright license, in direct infringement of the U.S. Subsidiaries' public performance rights.  In substance,

---

[2] *See* U.S. Census Records, *available at* http://www.census.gov/data/data-tools.html.

1  the Create Group operates an unlicensed, parallel Korean television

2  retransmission service in the United States, upon information and belief complete

3  with unauthorized advertising, whereby it retransmits the Networks' broadcasts

4  and programs to its U.S. service users without the U.S. Subsidiaries' permission.

5  **Screen of Live MBC Broadcast Retransmitted to U.S. User By Create Group**



20  8.   Plaintiffs further allege that the Create Group and its U.S. Promoter-

21  Distributors are also secondarily liable for Transmit Clause and other violations

22  by virtue their inducement of and contribution to infringement of the Networks'

23  copyrighted broadcasts and programs.  As exemplified by the Create Group's

24  marketing materials below, the Create Group promotes unlicensed retransmission

25  request software—including SOLIVE, KKS and DB—to actual and prospective

26  service users.  On information and belief, the Create Group is the co-author of the

27  SOLIVE, KKS and DB software, which works exclusively on its service.

28

1    9.    Further, the Create Group promotes use of the software to *retransmit*

2    MBC, SBS and KBS broadcasts and programs to service users, including U.S.

3    users.

**"Designed for Revolution"[Translated]: Create Group Promotion of Software Specifically Designed to Request Retransmission of the Networks' Broadcasts and Programs [Certified Translation, *see* Ex. 1][3]**

# Korean Applications

## Live: All-round Live Software, Satisfying Everyone's Needs

  **Solive**, a Korean live TV App thoughtfully created for the Koreans all over the world, has a number of popular Korean TV program resources including KBS2, MBC, SBS, tvN and JTBC, providing them with stable, smooth and safe high-quality Korean live TV programs.

  **월드TV** is a live App providing currently the most-viewed mainstream international channels, which will bring you different visual and audio delights.

  **KKS** is a Korean live App that gets together the most popular HD real-time live programs from Korea, bringing you the most crystal-clear visual and audio experience.



─────────────────────

[3] All images that include translated text have been attached as Exhibits hereto, with the original language version, the English translation and a certification of translation. The two pages that comprise Exhibit 1 are excerpted in pertinent part from a longer document.

# Korean Applications

## Variety Shows: Presenting Wonderful Entertainments

 **DB티비극장** is a Korean VOD App that gathers together massive wonderful TV series and movies, making it possible for users to view their favorite series and play on demand real-time updates.

 As a special Korean on-demand App providing the most-viewed popular entertainment programs, **DB 예능hot** updates the latest most popular entertainment programs in real time every day so that users will never miss any wonderful programs anywhere and anytime.

 **DB종합오락프로** is a comprehensive Korean on-demand App integrating entertainment, education, current events, and MTV music programs, enabling people to enjoy infinite fun at home.

 

**Create Group Web Page Banner Introducing its Retransmission Service to Korean Speakers[4]**



---

[4] From Create Group Web site, www.kr.tvpad.hk/tvpad/tvpadintro.html, as of April 24, 2013.

10.     The Create Group also uses the retransmission request software to track and fulfill its service users' requests to retransmit the Networks' live broadcasts and programs on demand.

11.     The Create Group monetizes its broadcast transmission service through its manufacture and sale of TVpad brand transmission apparatuses that its service users must use to receive the broadcast transmission service.

12.     When the Create Group's U.S. users watch the Networks' broadcasts and programs using the Create Group service, the service causes the U.S. Users to provide buffered local video to other users who view the same videos.  Thus, the U.S. users, by their *own retransmission* of the Networks' copyrighted works, are also liable for direct infringement of the U.S. Subsidiaries rights under these same laws.

**Create Group Retransmission of Unauthorized, Live MBC Sports Broadcast to Restaurant User CJ Wilshire, Inc. d/b/a Beul on June 16, 2014**



13.     Since the Create Group controls and profits from its users' retransmission of the Networks' broadcasts and programs, it is vicariously liable for such direct infringement by these Users.

1    14.    Plaintiffs ask this Court to permanently enjoin the Create Group and its

2    Users' retransmission of the Networks' broadcasts and programs to, from and

3    within the U.S., enjoin the acts of inducement and contribution by the Create Group

4    and its U.S. Promoter-Distributors, and award damages arising out of Defendants'

5    unlawful conduct, along with any other relief that the Court finds appropriate.

6                         **II.    THE PARTIES**

7                 **A.    The Korean Television Network Entities**

8    15.    Plaintiff Munhwa Broadcasting Corporation is a Korean Corporation

9    having its principal place of business at 31, Youido-dong, Youngdeunpgo-gu,

10   Seoul, 150-728, Republic of Korea.  Munhwa Broadcasting Corporation is one of

11   the leading television and radio production and broadcasting companies in South

12   Korea.

13   16.    Plaintiff MBC is a California Corporation and the wholly owned U.S.

14   subsidiary and licensee of Munhwa Broadcasting Corporation.  MBC's principal

15   place of business is 3400 West 6th Street, Los Angeles, California 90020.  MBC's

16   licensed television programs are broadcast, rented and sold throughout the United

17   States.

18   17.    Plaintiff SBS is a California Corporation and the wholly owned U.S.

19   subsidiary and licensee of Korean broadcaster SBS Media Holdings Co., Ltd.  SBS'

20   principal place of business is 3530 Wilshire Boulevard, Suite 1000, Los Angeles,

21   California 90010.  SBS' licensed television programs are broadcast, rented and sold

22   throughout the United States.

23   18.    Plaintiff KBS is a California Corporation and the wholly owned U.S.

24   subsidiary and licensee of Korean Broadcasting System and/or its affiliates.  KBS'

25   principal place of business is 625 S. Kingsley Drive, Los Angeles, CA 90005.

26   KBS' licensed television programs are broadcast, rented and sold throughout the

27   United States.

28

### B.     The Retransmission Service Operator Defendants

19.     Upon information and belief, Defendant Create is a Hong Kong Limited shell company with a registered address of Room D, 10/F, Billion Centre, 1 Wang Kwong Road, Kowloon Bay, Kowloon, Hong Kong.  This address is also the same as its current Company Secretary's address—SBC Corporate Services Limited.

20.     Upon information and belief, Defendant Hua Yang is a Hong Kong Limited shell company with a registered address of Room 19c, Lockhart Ctr., 301-307 Lockhart Rd., Wan Chai, Hong Kong.  This address is also the same as its current Company Secretary's address—Joy Enterprise Secretary Services Company.

21.     Upon information and belief, Defendant GreatVision is a People's Republic of China company, with a registered address of 101, South of 1A, Building 1R2, Gaozin Industrial Village, 020 Gaoxinnanqidao, Nanshan District, Shenzhen, China.  Upon information and belief, GreatVision employees in China, operating at the instruction of Create, control the Create Group retransmission servers and retransmission process in the United States.

22.     Upon information and belief, the entities of the Create Group are commonly owned, operated and controlled to operate the Create Group's Korean television retransmission and video on demand service in the United States.

### C.     The U.S. Promoter-Distributor Defendants

23.     Upon information and belief, Defendant Media Journal is a California, Corporation with business operations at 621 South Virgil Avenue, #252, Los Angeles, California, 6131 Orangethorpe Avenue #495, Buena Park, California 90620, and 2021 West Commonwealth Avenue, Unit G, Fullerton, California 92833.

24.     Upon information and belief, Media Journal uses, promotes and distributes the software and transmission apparatuses required for service users to receive the Create Group's Korean television retransmission service.

25.     Upon information and belief, Defendant Du Hyun Song is an individual residing in the Los Angeles area conducting business activities alleged herein within the Central District of California.  Mr. Song is the President and a shareholder of U.S. Promoter-Distributor Media Journal.

26.     Upon information and belief, in coordination with the Create Group, Mr. Song uses, promotes and distributes the software and transmission apparatuses required for service users to receive the Create Group's Korean television retransmission service.

27.     Upon information and belief, Defendant Sung Youn Kim is an individual residing in the Los Angeles area conducting business activities alleged herein within the Central District of California.

28.     Upon information and belief, Mr. Kim uses, promotes and distributes the software and transmission apparatuses required for service users to receive the Create Group's Korean television retransmission service.

29.     Upon information and belief, Defendant Keum S. Kang is an individual residing in the Los Angeles area conducting the business activities alleged herein within the Central District of California.

30.     Upon information and belief, Mr. Kim uses, promotes and distributes the software and transmission apparatuses required for users to receive the Create Group's Korean television retransmission service.

31.     Upon information and belief, Defendant Se Jin O, is an individual residing in the Los Angeles area conducting business activities alleged herein within the Central District of California.

1    32.    Upon information and belief, Mr. O uses, promotes and distributes the

2    software and transmission apparatuses required for users to receive the Create

3    Group's Korean television service.

4    33.    Upon information and belief, Glonet Services, Inc. is a California

5    corporation with a business address of 2021 W. Commonwealth Avenue, Suite G

6    and/or H, Fullerton, California 92833.

7    34.    Upon information and belief, Glonet Services, Inc. owns, operates

8    and/or controls locations wherein the software required for users to receive the

9    Create Group's television retransmission service is installed.

10   35.    Upon information and belief, Best4U, Inc. d/b/a BestwayRealty is a

11   California corporation with a business address of 6131 Orangethorpe Avenue, Suite

12   495, Buena Park, California 90620.

13   36.    Upon information and belief, Best4U, Inc. owns, operates and/or

14   controls locations wherein the software required for users to receive the Create

15   Group's television retransmission service is installed.

16                          **D.    The User Defendants**

17   37.    Upon information and belief, Defendant CJ Wilshire, Inc. d/b/a Beul is

18   a California Corporation with a principal place of business at 3240 Wilshire Blvd.,

19   Suite 401, Los Angeles, California 90010.  At CJ Wilshire, Inc.'s request, the

20   Create Group has retransmitted one or more of the Networks' broadcasts or

21   programs to it for display.

22   38.    In turn, upon information and belief, CJ Wilshire, Inc. has

23   retransmitted the broadcast(s) or program(s) to other service users.

24   39.    Upon information and belief, Defendant Chilbo Myunok USA, LLC is

25   a California LLC with a principal place of business at 3680 West 6th Street, Los

26   Angeles, California 90029.  At Chilbo Myunok USA, LLC's request, the Create

27   Group has retransmitted one or more of the Networks' broadcasts or programs for

28   display.

40.     In turn, upon information and belief, Chilbo Myunok USA, LLC has retransmitted the broadcast(s) or program(s) to other service users.

41.     Upon information and belief, Defendant Corea B.B.Q., Inc. d/b/a Myungdong Tofu House is a California Corporation with a principal place of business at 3426 Caraway Lane, Yorba Linda, California 92886.  At Correa B.B.Q., Inc.'s request, the Create Group has retransmitted one or more of the Networks' broadcasts or programs for display.

42.     In turn, upon information and belief, Correa B.B.Q., Inc. has retransmitted the broadcast(s) or program(s) to other service users.

43.     Upon information and belief, Defendant Lai Lai China Bistro, Inc. is a California Corporation with a principal place of business at 3077 Primrose Lane, Fullerton, California 92833.  At Lai Lai China Bistro, Inc.'s request, the Create Group has retransmitted one or more of the Networks' broadcasts or programs for display.

44.     In turn, upon information and belief, Lai Lai China Bistro, Inc. has retransmitted the broadcast(s) or program(s) to other service users.

### III.   <u>JURISDICTION AND VENUE</u>

45.     The first, second and third claims for relief are for violation of the copyright laws of the Unites States, 17 U.S.C. §  101 *et seq.* and 17 U.S.C. § 1201, *et seq.*

46.     The fourth and fifth claims for relief are for violation of the trademark laws of the United States, 15 U.S.C. § 1114, *et seq.*

47.     Accordingly, this court has original subject matter jurisdiction pursuant to the provision of 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121(a).

48.     This Court has supplemental jurisdiction over the remainder of Plaintiffs' claims for relief under 28 U.S.C. § 1367(a).  These claims are so related to the other claims in the case over which this Court has original jurisdiction that

1  they form a part of the same case or controversy under Article III of the United
2  States Constitution.

3      49.    This Court also has original jurisdiction pursuant to 28 U.S.C.
4  § 1338(b) for claims for unfair competition under Cal. Business and Professions
5  Code § 17200, and California common law unfair competition, because all these
6  claims for unfair competition under California law are joined with a substantial and
7  related claim under the copyright and trademark laws of the United States.

8      50.    Upon information and belief, venue is proper under 28 U.S.C. §§
9  1391(b) and (c) because the Defendants reside in the district and/or a substantial
10 part of the acts of infringement and unfair competition that give rise to Plaintiffs
11 claims occurred here.

12                    **IV.    BACKGROUND FACTS**

13     **A.    The Korean Television Networks and Their U.S. Subsidiaries**

14     51.    The Korean Television Networks collectively spend tens of millions of
15 dollars each year creating and promoting 24 hours a day of television programs for
16 licensed transmission throughout the world.  The Networks produce highly popular
17 television programs, including hit Korean drama and entertainment series, such as
18 *Moon Embracing the Sun* (MBC), *Seoyeong, My Daughter* (KBS) and *My Love*
19 *From the Star* (SBS).

20     52.    The Networks' respective U.S. subsidiaries sublicense these and the
21 Networks' other copyrighted works for retransmission in the United States via
22 DIRECTV and TimeWarner cable systems among other retransmission services.
23 Through these sublicenses, the U.S. Subsidiaries help recover their own substantial
24 investment, fund their U.S. operations and develop the U.S. market for the
25 Networks' programs.  The U.S. Subsidiaries also sell advertising transmitted during
26 the sublicensed U.S. broadcasts.  Finally, the U.S. Subsidiaries sublicense the
27 copyrighted works to various television stations and new media digital transmission
28 partners such as DramaFever, Hulu and Viki, among others.

**B.    The Create Group Directly Infringes the U.S. Subsidiaries' Public Performance Rights by Retransmitting the Networks' Daily Broadcasts To, From and Within the United States of America.**

53.    Create is a Hong Kong shell company that controls another Hong Kong shell company, Hua Yang, and a wholly owned operating affiliate, GreatVision, a People's Republic of China entity with more than 500 employees.

54.    Create's shares were transferred to a Samoan entity, Create New Technology International Limited.

55.    As explained in detail below, through its broadcast transmission process, the Create Group retransmits or otherwise communicates the entirety of the Networks' copyrighted live broadcasts and programs on demand to the U.S. public each day in direct infringement of the U.S. Subsidiaries' U.S. public performance and other rights.

**C.    How the Create Group's Service Illegally Retransmits Copyrighted Works To, From and Within The United States of America.**

56.    To retransmit live broadcasts and video programs on demand, the Create Group operates a closed, centrally managed global P4P digital broadcast transmission service.  The Create Group's broadcast transmission service employs a GreatVision "live broadcast transmission/VOD [Video on Demand] system."[5]  The GreatVision system constitutes "a group of background server clusters based on the P4P algorithm."  P4P stands for "proactive provider participation for P2P" and it differs from the traditional P2P ("peer to peer") protocol since the system operator, not the user, specifies the peer or server from which the requested content is retransmitted.

57.    The Create Group centrally manages and controls its P4P television broadcast retransmissions through a GreatVision "stream media server."  With its

_____

[5] All cites to and quotes from the Great Vision website may be viewed at gvtv.com.cn, where one can select an English version of the Web site.  Emphasis has been supplied to quotes drawn from this Web site.

GreatVision stream media server, the Create Group controls which publishing servers it permits on its broadcast transmission network, what broadcasts it lists as available for request by its service users, what broadcasts it retransmits to its service users, to which service users ("peers" or "nodes") it retransmits the broadcasts, and from which of its servers and nodes it retransmits tiny pieces of the broadcasts.  As the Create Group explains on its GreatVision Web site:

> GreatVision stream media server is designed as the central management architecture based on C/S [client-server] mode. All user access behaviors, server operation information, content resource information and node handling information in the distributed P2P publishing network are uniformly managed via a central management system....

58.    As part of its transmission process, the Create Group provides each requesting service user with access to its "server inquiry content resource and user list"—also known as an electronic program guide ("EPG") or "trackers."  Through its trackers, the Create Group tracks a limited number of transmission request software programs.  On information and belief, the Create Group co-authors these programs by providing its software template to a select group of publishing partners, so that the publishers' content is permitted onto the Create Group service and tracked with the trackers by the Create Group.

59.    The Create Group tracks and fulfills user retransmission requests on its service the same way regardless of the co-author-publisher.  Specifically, the Create Group uses its trackers to select the peers and servers to which the requesting user's client will connect in order receive a particular transmission.  As evidenced by the GreatVision Web site, the Create Group also uses trackers to create user and resource lists that it employs to schedule P2P sharing, content transport and content terminal display:

> User-generated video requests, server inquiry content resource and user list, feedback user network information list, user-accessed video contents by list and *content P2P sharing transport and content's terminal display will be completed via scheduling of the management system.* Complete management mode facilitates system management.

60.     With the Create Group transmission process, the user specifies only the broadcast it wants, but does not specify the particular peer or server to provide the retransmission.  Instead, the Create Group's trackers select the many peers who each will provide the requesting with a piece of the requested broadcast.  In this way, the Create Group communicates copyrighted content by controlling the P2P process, as well as by transmitting content from its own stream media servers:

> GreatVision GV-LIVE and VOD live broadcast transmission/VOD distribution system *enables users to watch the video from GreatVision stream media servers and support[s] mutual P2P transmission*….

61.     Further, with the Create Group transmission process, requesting users *not only receive* the requested broadcast, but also *concurrently retransmit* the broadcast to other peers or servers specified by the Create Group.  The user does not know or select to whom he or she retransmits the broadcast or program.

> When users watch video, the client can provide buffered local video to other users who view the same videos. GreatVision P2P stream client can get over 90% near available node users with the advanced P2P algorithm, obtain contents from extensive sources, reduce user access to the server, and alleviate user access pressure on the server with minimum server connection time.

62.     The Create Group monetizes its broadcast transmission service through its manufacture and sale of what the Create Group avers in its U.S.

trademark registration are TVpad brand "transmission apparatuses."[6]   Its service users must use the Create Group transmission apparatuses to receive its broadcast transmission service.  The Create Group transmission apparatuses do not work with any other service.  The transmission apparatuses sell at retail for between $250 and $300 each.

63.    Once a prospective service user agrees online to the Create Group's terms of service, the Create Group then joins the user's transmission apparatus to one of its P4P "swarms" comprising other Create Group transmission apparatuses. The user may request a broadcast via any transmission request software program co-authored by the Create Group and tracked by the Create Group as part of its service.

64.    In sum, the Create Group retransmits unauthorized, unlicensed copyrighted content to the public by a retransmission process that it controls via its servers and swarms of Create Group transmission apparatuses.

**D.    The Create Group Promotes Its Parallel Korean Television Broadcast Service**

65.    By at least October 1, 2013, the Create Group began to sell the TVpad M358 transmission apparatus on its www.itvpad.com Web site.  Both before and after sale of the M358, the Create Group authored blog posts at its www.itvpad.com Web site that promote the use of its service to watch the Networks' programs, including through the use of the SOLIVE retransmission request software.

**Create Group's Blog Promotes Its Service To Watch Plaintiffs' Programs**

---

[6] *See* U.S. Trademark Registration No. 4,443,369.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Example 1**

And the second one is about the Korean drama, which is named as Scandal or Scandal: A Shocking and Wrongful Incident. The plot of this series is about the detective Ha Eun-Joong meets bright and positive Woo A-Mi (Jo Yoon-Hee). Because of her, he becomes involved in a scandal. Detective Eun-Joong learns that his father is a kidnapper and kidnapped Eun-Joong.



Please pay attention at this: "Scandal" takes over the MBC Saturdays & Sundays 21:45 time slot previously occupied by "Hundred Year Inheritance".

**Promotion of Create Group Service To Watch MBC's *Scandal***

**Example 2**



*Solive*

**Promotion of Create Group's Service To Watch SBS's *Heirs***

**Example 3**



**Promotion of Create Group's Service To Watch SBS's *I Hear Your Voice***

66.     The Create Group eventually upgraded firmware in its transmission apparatuses to Revision 3.0.  With Revision 3.0 firmware, Create Group transmission apparatuses, including the M121S, M233 and M358 models, automatically loaded the icons for the Korean broadcast and program retransmission request software programs Solive, DB, KKS and other programs onto the apparatuses, and provided links for its promoter-distributors and users to download them.  Concurrently, the Create Group continued to tout to Korean

speakers at www.kr.itvpad.com that its own broadcast retransmissions are free

forever, in contrast to legitimate fee for service satellite television.

67.   In 2014, the Create Group merged two of its Web sites,

www.creatent.net and www.itvpad.com.  The Create Group continues to operate the

www.itvpad.com Web site, along with the featured blogs and promotions, and still

uses the same contact phone number, which it answers as "Create."  As of

November 28, 2014, the Create Group continued to promote the Korean television

retransmission software at www.en.itvpad.com.

**E.   The Create Group's U.S. Promoter-Distributors Have Built Their Businesses By Promoting Use of the Service to View the Network's Korean Broadcasts and Programs**

68.   Since it purports to offer a lifetime of the Networks' broadcasts and

programs for free, the Create Group was tremendously successful in finding U.S.

promoter-distributors for its transmission apparatuses and service.  The Create

Group has authorized and contracted with at least six Korean-language promoter-

distributors in the United States.

69.   Defendant Media Journal is a Promoter-Distributor that directly

coordinates its promotion of the Create Group service with the Create Group.

Media Journal was incorporated on January 30, 2013 and purports to be the largest

seller of Create Group transmission apparatuses to Korean Americans.

70.   Media Journal followed the Create Group's "free television for life"

marketing pitch with a newspaper, billboard, television and radio campaign

promoting the Create Group service as providing free Korean television for life.

71.   Defendant Kim has acted as an agent for Media Journal, and sold

TVpad brand transmission apparatuses and instructed users in their operation, in the

Los Angeles area, including with respect to Defendant Corea BBQ, LLC.

72.   Defendant Kang entered into a contract with Media Journal for about

100 transmission apparatuses, and resold them to service users in the Los Angeles

1  area.  Kang installed retransmission request software programs, including KKS and

2  SOLIVE, onto the TVpad brand transmission apparatuses for his customers.

3  **F.    Song's and Media Journal's Acts Constitute Willful Infringement And**
   **Are Under the Direction of the "Control Tower"—Create Group.**

4

5         73.    In fact, Mr. Song and Media Journal work together with the Create

6  Group to promote the Create Group's Korean broadcast retransmission service and

7  apparatuses for consumers to watch live Korean television in the United States.  For

8  several years, the Create Group has featured on its Web site Song and Media

9  Journal's Los Angeles-based promotions of the Create Group's Korean broadcast

10 retransmission service.

11        74.    For example, the Create Group features Media Journal's advertisement

12 and press release on its website, www.itvpad.com:



75.     Further, on September 15, 2014, the day Plaintiffs' counsel requested to substitute into this case, undersigned counsel made Song and Media Journal explicitly aware of the U.S. Supreme Court's *Aereo* decision.  Nonetheless, Song and Media Journal continue to promote the Create Group's Korean broadcast retransmission service and transmission apparatuses to watch live Korean television, "for free, forever."  In fact, only three days later, Song and Media Journal promoted the Create Group's Korean retransmission service and transmission apparatuses to watch live Korean television at a Korean festival in Los Angeles.  The Create Group promptly featured Song and Media Journal's Korean Festival promotion of "live Korean Television, for free, forever" on its Facebook page.

76.     The coordination between Song, Media Journal and the Create Group is express.  In a November 5, 2014 interview with Radio Korea, a Los Angeles-based Korean Language radio broadcaster, Mr. Song asserted, "when any legal issue arises, we have the control tower [Create]; and we have been working together to this day."  (Ex. 2 at 59.)  The Create Group even posted the last page of this Court's preliminary injunction decision—absent appropriate context—on its Facebook page.

**G.     Media Journal and Song's Ongoing Misrepresentation of this Court's Proceedings**

77.     The coordinated workings of the "Control Tower" and Song/Media Journal have resulted in gross misrepresentation of the Court's rulings to the U.S. public.  After this Court's preliminary injunction ruling, as to the User defendants, Song maintained in the radio interview that the Users all "won" and were "dismissed" from the case:

> Song:  The places which used it for commercial purpose were included in the lawsuit but they were all dismissed.
>
> Q:  Is that right? What happened?

Song:   Won all.   All were successful including a tofu
restaurant and others....

Q.  . . . We want your explanation so that [the consumers]
can feel relieved." . . .

Song:   A tofu restaurant and other places were involved
but all were dismissed.

(Ex. 2 at 59.)

78.     Song's other misrepresentations regarding this Court's rulings and the legal landscape in which the Create Group transmission service operates are included in the interview as recorded, the certified English translation of which is attached as Exhibit 2.[7]

79.     Indeed, the radio interview is merely the latest episode in Song's ongoing mischaracterization of this Court's rulings in the media.  For example, after the Court denied Plaintiffs' *preliminary* injunction, Media Journal ran a full-page advertisement on September 3, 2014, in the Los Angeles Koreatown Daily.  (*See* Ex. 3.)

80.     The advertisement represented that Media Journal was "celebrating on winning a lawsuit" and for that reason was having a "fire sale" of TVpad brand transmission apparatuses.[8]

_____

[7] Plaintiffs will lodge an audio version of this interview with the Court if so requested.

[8] The Korean-language original and certification of translation are attached as Exhibit 3.



81.     The Defendants' continued promotion and operation of the Create Group retransmission service and the Networks' Korean broadcast and programs, and blatant misrepresentation of this case to the public, along with other factors, makes their infringement willful and this case exceptional.

### H.     Plaintiffs' Trademark And Copyright Registrations

82.     Plaintiffs KBS, Munhwa Broadcasting Corporation and MBC are presently using in interstate commerce, and have continuously used since prior to Defendants' acts complained of herein, in connection with their broadcasting, *inter alia*, the MBC, KBS America and KBS World trademarks (collectively with the other trademarks used by Plaintiffs, the "Marks").

83.     To designate their programming and to distinguish them from other shows on air, Plaintiffs KBS, Munhwa Broadcasting Corporation and MBC have included the Marks on screen periodically during their programming.

84.     The Marks are inherently distinctive and, by virtue of long, consistent and continued use, these marks have become well known to consumers as symbols of the authenticity of Plaintiffs' programming.

85.     Munhwa Broadcasting Corporation owns U.S. Trademark Registration No, 4,259,591 for the mark MBC in Classes 9, 38 and 41, for digital media, broadcast services and cable television programming respectively.  Each of these registrations is valid, subsisting and uncancelled.  MBC exclusively licenses this mark in the United States.

86.     Korea Broadcasting System, the parent company of KBS, owns U.S. Trademark Registration No. 4,599,526 for the mark KBS America in Classes 9, 35, 38 and 41, for digital media, DVD retail stores, broadcast services and cable television programming respectively.  Each of these registrations is valid, subsisting and uncancelled.  KBS exclusively licenses this mark in the United States.

87.     Korea Broadcasting System, the parent company of KBS, owns U.S. Trademark Registration No. 4,378,636, for the mark KBS World in Class 38, for

broadcast services.  Each of these registrations is valid, subsisting and uncancelled.
KBS exclusively licenses this mark in the United States.

88.     Further, Plaintiffs are the owners and/or exclusive licensees of the
copyrights in and copyright registrations for the Copyrighted Works, including in
and to the programming broadcast by or for them in the United States, and have
registered or will register all such copyrights.

**FIRST CLAIM FOR RELIEF**

**(Copyright Infringement – Infringement of the Public Performance Right In
Violation of 17 U.S.C. §§ 106(4), 501)**

89.     Plaintiffs reallege and incorporate herein by reference all the preceding
paragraphs, inclusive, of the Second Amended Complaint as though set fully set
forth below.

90.     Defendants, without the permission or consent of Plaintiffs, have
publicly performed and will publicly perform Plaintiffs' copyrighted audiovisual
works, by transmitting live and on-demand television broadcast programming by
means of the Create Group's retransmission service.

91.     Plaintiffs own the copyrights to the Copyrighted Works and/or are the
exclusive licensees.

92.     Defendants are directly liable for these acts of infringement under the
Copyright Act.  Defendants cause and carry out the unauthorized public
performance of Plaintiffs' audiovisual works.  Defendants publicly perform the
works by, among other acts, transmitting them on the Create Group's
retransmission service to members of the public.

93.     To the extent one or more of the Defendants is not directly liable for
infringement as to public performances, then those Defendants are additionally
liable for vicarious infringement as to such public performances because (a) those
Defendants have the right and ability to control the infringers' acts, and (b) those

Defendants receive a direct financial benefit from the Create Group retransmission service.

94.    To the extent one or more of the Defendants is not directly liable for infringement as to public performances, then those Defendants are secondarily liable for contributory infringement as to such public performances because they provided the means for infringement and/or distributed a product or service, or part thereof, that was subsequently used to infringe.

95.    To the extent one or more of the Defendants is not directly liable for infringement as to public performances, then those Defendants are secondarily liable for inducement of copyright infringement as to such public performances because Defendants expressed an intent to foster copyright infringement, and/or were willfully blind as to the infringing nature of the Create Group retransmission service.

96.    Such public performance of audiovisual works constitutes infringement of Plaintiffs' exclusive rights under copyright law in violation of 17 U.S.C. § 106(4).

97.    Upon information and belief, Defendant Song is additionally directly liable for these acts of infringement under the Copyright Act pursuant to alter ego liability.   First, there is a unity of interest and ownership of Media Journal and Song such that Media Journal is an alter ego of Song.  On information and belief, Song is the major shareholder of Media Journal.  He also is the individual who has, on information and belief, the decision-making power to start, stop, or continue the infringing conduct.  Observance of the corporate form for the Media Journal would lead to an inequitable result because it would sanction Media Journal's unauthorized public performances of Plaintiffs' audiovisual works, acts of secondary infringement and other unlawful acts, and would allow Song to avoid personal liability.

98.     To the extent one or more of the Create Group Defendants claims another Defendant is responsible for the infringement, upon information and belief, Plaintiffs allege such Create Group Defendant is subject to alter ego liability for the acts of infringement alleged herein. First, there is a unity of interest and ownership among the Create Group Defendants such that one or more of the Create Group Defendants is an alter ego of the other Create Group Defendants. One or more of the Create Group Defendants exerts domination and control over one or more of the other Create Group Defendants. Moreover, one or more of the Create Group Defendants is used as a mere shell for one or more of the other Create Group Defendants' actions. Second, observance of the corporate form would lead to an inequitable result because it would sanction the Create Group Defendants' unauthorized public performances of Plaintiffs' audiovisual works, acts of secondary infringement and other unlawful acts, and would allow another Create Group Defendant to avoid liability.

99.     The infringement of Plaintiffs' rights in each of their copyrighted audiovisual works constitutes a separate and distinct act of infringement.

100.    Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to the rights of Plaintiffs.

101.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## SECOND CLAIM FOR RELIEF

**(Copyright Infringement – Infringement of the Reproduction and Distribution Rights In Violation of 17 U.S.C. §§ 106, 501)**

102.    Plaintiffs reallege and incorporate herein by reference all the preceding paragraphs, inclusive, of the Second Amended Complaint as though set fully set forth below.

103.    The Create Group Defendants, without the permission or consent of Plaintiffs, have reproduced and will reproduce Plaintiffs' copyrighted audiovisual works by making copies of such works when Defendants encode and/or store broadcast and other programming for the Create Group retransmission service and make retransmissions via the Create Group retransmission service.

104.    The Create Group Defendants, without the permission or consent of Plaintiffs, have distributed and will distribute Plaintiffs' copyrighted audiovisual works via the Create Group retransmission service.

105.    Plaintiffs own the copyrights to the Copyrighted Works and/or are the exclusive licensees.

106.    To the extent one or more of the Create Group Defendants is not directly liable for infringement as to reproduction or distribution, then those Create Group Defendants are additionally liable for vicarious infringement because (a) those Create Group Defendants have the right and ability to control the infringers' acts, and (b) those Create Group Defendants receive a direct financial benefit from the Create Group retransmission service.

107.    To the extent one or more of the Create Group Defendants is not directly liable for infringement as to reproduction or distribution, then those Defendants are secondarily liable for contributory infringement because they provided the means for infringement and/or distributed a product or service, or part thereof, that was subsequently used to infringe.

108.   To the extent one or more of the Defendants, including the Create Group Defendants, is not directly liable for infringement as to reproduction or distribution, then those Defendants are secondarily liable for inducement of copyright infringement because Defendants expressed an intent to foster copyright infringement, and/or were willfully blind as to the infringing nature of the Create Group retransmission network.

109.   Defendants purposefully and intentionally induce and encourage such infringement by materially contributing to the Create Group retransmission service, with the object of inducing and promoting reproduction and distribution of unlicensed broadcast television programming, virtually all of which is copyrighted. The Create Group Defendants operate the Create Group retransmission service with the object that their affiliates will infringe the copyrights in such programming by making reproductions of unlicensed broadcast programming for distribution.

110.   Therefore, the Create Group Defendants are additionally liable for contributory infringement as to such reproductions and distributions because (a) the Create Group Defendants have knowledge of the programming reproduced or distributed, that such programming is copyrighted, and that such programming is reproduced or distributed in the systems and networks the Create Group Defendants have created, and (b) the Create Group Defendants cause or materially contribute to such infringement by providing the Create Group retransmission service and related facilities for the infringing reproductions and distributions in connection with the operation the Create Group retransmission service.

111.   To the extent one or more of the Create Group Defendants claims another Create Group Defendant is responsible for the infringement, those Defendants are additionally liable for contributory infringement as to such reproductions and distributions because (a) those Create Group Defendants have knowledge of, or willful blindness towards, the programming reproduced or distributed, that such programming is copyrighted, and that such programming is

1   reproduced in the systems one or more of the other Create Group Defendants have

2   created, and (b) those Defendants cause or materially contribute to such

3   infringement by providing the Create Group retransmission service with financing,

4   facilities, and the means to operate, and have decision-making power over the

5   infringing activities of its service.

6        112.   Such reproduction and distribution of audiovisual works constitutes

7   infringement of Plaintiffs' exclusive rights under copyright in violation of 17

8   U.S.C. §§ 106 and 501.

9        113.   Upon information and belief, Defendant Song is liable for these acts of

10  infringement under the Copyright Act pursuant to alter ego liability.  First, there is a

11  unity of interest and ownership of Media Journal and Song such that Media Journal

12  is an alter ego of Song.  On information and belief, Song is the major shareholder of

13  Media Journal.  He also is the individual who has, on information and belief, the

14  decision-making power to start, stop, or continue the infringing conduct.

15  Observance of the corporate form for the Media Journal would lead to an

16  inequitable result because it would sanction Media Journal's unauthorized

17  reproduction and distribution of Plaintiffs' audiovisual works, acts of secondary

18  infringement and other unlawful acts, and would allow Song to avoid personal

19  liability.

20       114.   To the extent one or more of the Create Group Defendants claims

21  another Defendant is responsible for the infringement, upon information and belief,

22  Plaintiffs allege such Create Group Defendant is subject to alter ego liability for the

23  acts of infringement alleged herein.  First, there is a unity of interest and ownership

24  among the Create Group Defendants such that one or more of the Create Group

25  Defendants is an alter ego of the other Create Group Defendants. One or more of

26  the Create Group Defendants exerts domination and control over one or more of the

27  other Create Group Defendants. Moreover, one or more of the Create Group

28  Defendants is used as a mere shell for one or more of the other Create Group

1  Defendants' actions.  Observance of the corporate form would lead to an
2  inequitable result because it would sanction the Create Group Defendants'
3  unauthorized reproduction and distribution of Plaintiffs' audiovisual works, acts of
4  secondary infringement and other unlawful acts, and allow another Create Group
5  Defendant to avoid liability.

6       115.  The infringement of Plaintiffs' rights in each of their copyrighted
7  audiovisual works constitutes a separate and distinct act of infringement.

8       116.  Defendants' acts of infringement are willful, intentional and
9  purposeful, in disregard of and with indifference to the rights of Plaintiffs.

10       117.  Defendants' conduct is causing and, unless enjoined by this Court, will
11  continue to cause Plaintiffs great and irreparable injury that cannot fully be
12  compensated or measured in money. Plaintiffs have no adequate remedy at law.

13       118.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and
14  permanent injunction prohibiting infringement of Plaintiffs' copyrights and
15  exclusive rights under copyright.

16  **THIRD CLAIM FOR RELIEF**
17  **(Violation of the Digital Millennium Copyright Act Pursuant to 17 U.S.C. §**
18  **1201, *et seq.*)**

19       119.  Plaintiffs reallege and incorporate herein by reference all the preceding
20  paragraphs, inclusive, of the Second Amended Complaint as though set fully set
21  forth below.

22       120.  The Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201,
23  *et seq*. makes it illegal to manufacture, import, offer to the public, provide, or
24  otherwise traffic in any technology, product, service, device, component, or part
25  thereof, that is primarily designed or produced for the purpose of circumventing a
26  technological measure that effectively controls access to a work protected by
27  copyright or the rights of a copyright owner, that has only limited commercially

28

significant purpose or use other than to circumvent such technological measures, or that is marketed for use in circumventing such technological measures.

121.   Defendants have violated Plaintiffs' rights under 17 U.S.C. § 1201, *et seq.* by offering for sale to the public, providing, installing, trafficking in, marketing and/or using for commercial gain the components of the Create Group's retransmission service that enables users to gain unlicensed and unauthorized access to the Copyrighted Works.

122.   Plaintiffs are informed and believe, and thereon allege, that Defendants have acted willfully and deliberately in disregard of Plaintiffs' rights.

123.   As a direct and proximate result of the actions of Defendants, Plaintiffs have suffered damages in an amount to be proven at trial.

124.    Plaintiffs are further entitled to their attorneys' fees and costs incurred in this action pursuant to 17 U.S.C. § 1203(b)(5).

**FOURTH CLAIM FOR RELIEF**

**(Infringement of Federally Registered Trademarks Under Section 32 of the Lanham Act, 15 U.S.C. § 1114 –Plaintiffs KBS, Munhwa Broadcasting Corp. and MBC Against All Defendants)**

125.   Plaintiffs KBS, Munhwa Broadcasting Corp. and MBC reallege and incorporate herein by reference all the preceding paragraphs, inclusive, of the Second Amended Complaint as though set fully set forth below.

126.   Plaintiffs KBS, Munhwa Broadcasting Corp. and MBC and/or their exclusive licensees are the owners of all rights, titles, and interests in the Marks.

127.   Defendants' display of the Marks is without Plaintiffs' authorization. Defendants' use, past and present, in commerce of Plaintiffs' marks as described herein constitutes an unauthorized and unlawful use of Plaintiffs' marks in a manner that is likely to cause confusion or mistake, or that is likely to deceive consumers.

128.   Defendants' conduct as described herein constitutes an intentional attempt to trade upon the goodwill that Plaintiffs KBS, Munhwa Broadcasting Corp. and MBC have developed in its marks and to cause consumer confusion, mistake, or to deceive, all to the detriment of Plaintiffs KBS, Munhwa Broadcasting Corp. and MBC and their valuable marks.

129.   Upon information and belief, Defendant Song is additionally directly liable for these acts of trademark infringement pursuant to alter ego liability.   First, there is a unity of interest and ownership of Media Journal and Song such that Media Journal is an alter ego of Song.   On information and belief, Song is the major shareholder of Media Journal.   He also is the individual who has, on information and belief, the decision-making power to start, stop, or continue the infringing conduct.   Observance of the corporate form for the Media Journal would lead to an inequitable result because it would sanction Media Journal's unauthorized use of Plaintiffs' Marks, acts of secondary infringement and other unlawful acts, and would allow Song to avoid personal liability.

130.   To the extent one or more of the Create Group Defendants claims another Defendant is responsible for the infringement, upon information and belief, Plaintiffs allege such Create Group Defendant is subject to alter ego liability for the acts of infringement alleged herein.   First, there is a unity of interest and ownership among the Create Group Defendants such that one or more of the Create Group Defendants is an alter ego of the other Create Group Defendants.   One or more of the Create Group Defendants exerts domination and control over one or more of the other Create Group Defendants.   Moreover, one or more of the Create Group Defendants is used as a mere shell for one or more of the other Create Group Defendants' actions.   Second, observance of the corporate form would lead to an inequitable result because it would sanction the Create Group Defendants' unauthorized use of Plaintiffs' Marks, acts of secondary infringement and other unlawful acts,  and allow another Create Group Defendant to avoid liability.

131.   To the extent one or more of the Defendants is not directly liable for infringement, then those Defendants are additionally liable for vicarious infringement because (a) those Defendants have the right and ability to control the infringers' acts, and (b) those Defendants receive a direct financial benefit from the Create Group retransmission network.

132.   To the extent one or more of the Defendants is not directly liable for infringement as to the Marks, then those Defendants are secondarily liable for contributory infringement because they provided the means for infringement and/or distributed a product or service, or part thereof, that was subsequently used to infringe.

133.   To the extent one or more of the Defendants is not directly liable for infringement, then those Defendants are secondarily liable for inducement of trademark infringement because Defendants expressed an intent to foster trademark infringement, and/or were willfully blind as to the infringing nature of the Create Group transmission network.

134.   The aforesaid acts of Defendants constitute willful infringement of Plaintiffs' federally registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

135.   The aforesaid acts of Defendants have caused and, unless restrained by this Court, will continue to cause great and irreparable injury to Plaintiffs KBS, Munhwa Broadcasting Corp. and MBC.

136.   Plaintiffs KBS, Munhwa Broadcasting Corp. and MBC have no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**

**(False Designations of Origin and False Descriptions and Representations, and Unfair Competition Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125)**

137.   Plaintiffs reallege and incorporate herein by reference all the preceding paragraphs, inclusive, of the Second Amended Complaint as though set fully set forth below.

138.   Defendants' use, past and present, in commerce of the Marks as described herein constitutes false designations of origin and/or false and misleading representations that are likely to cause confusion, mistake, and/or to deceive the purchasing public and others as to the origin of Defendants' goods and services, whereby consumers and others would be led to believe, incorrectly, that Defendants are affiliated with, related to, endorsed by, sponsored by, or connected with Plaintiffs.

139.   The aforesaid acts of Defendants constitute the use of false designations of origin, false descriptions and representations, and federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

140.   The aforesaid acts of Defendants have caused and, unless restrained by this Court, will continue to cause great and irreparable injury to Plaintiffs.

141.   Plaintiffs have no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**

**(Common Law Trademark Infringement)**

142.   Plaintiffs reallege and incorporate herein by reference all the preceding paragraphs, inclusive, of the Second Amended Complaint as though set fully set forth below.

143.   By reason of Plaintiffs' continuous use and promotion of the Marks, as well as the distinctiveness of the Marks, consumers associate and recognize the Marks as representing a single, even if anonymous, source or sponsor of goods, and therefore, the Marks are protectable trademarks at common law.

144.   Plaintiffs own and enjoy common law trademark rights in the Marks. The Marks are distinctive, nonfunctional, and possesses secondary meaning with the trade and consuming public and are distinctive in the minds of consumers in that the Marks are associated with Plaintiffs, or a single, even if anonymous, source.

145.   The sale, advertising, and distribution by Defendants of the Create Group retransmission network, without Plaintiffs' permission or consent, constitutes designation and use of a term, symbol, device or combination thereof that is false or misleading and is likely to cause and has caused confusion, to cause mistake, or to deceive the trade and consuming public as to the affiliation, connection, or association, or as to the origin, sponsorship, or approval of Defendants' commercial activities, all to the detriment of Plaintiffs.

146.   By reason of Defendants' actions alleged herein, Plaintiffs have suffered, and will continue to suffer, irreparable injury to their rights and suffer substantial loss of goodwill and in the value of their Marks unless and until Defendants are enjoined from continuing their wrongful acts.

147.   By reason of Defendants' actions alleged herein, Plaintiffs have been damaged in an amount not presently ascertained, and such damage will continue and increase unless and until Defendants are enjoined from continuing their wrongful acts.

148.   Upon information and belief, Defendants' conduct in this claim for relief is willful, wanton, malicious, oppressive, and in conscious disregard of Plaintiffs' rights in the Marks, justifying the imposition of punitive and exemplary damages.

## SEVENTH CLAIM FOR RELIEF

**(California Unfair Competition – Cal. Bus. & Prof. Code § 17200, *et seq*.)**

149.   Plaintiffs reallege and incorporate herein by reference all the preceding paragraphs, inclusive, of the Second Amended Complaint as though set fully set forth below.

1      150.   By the conduct alleged above, Defendants have intentionally and

2  willfully engaged in unlawful, unfair and fraudulent methods of competition, and

3  unfair or deceptive acts or practices, in violation of Cal. Bus. & Prof. Code §

4  17200, *et seq.*

5      151.   Plaintiffs are informed and believe and thereon allege that unless

6  restrained by this Court, Defendants will continue to infringe Plaintiffs copyrights

7  and trademarks, and trade unfairly in connection therewith, pecuniary compensation

8  will not afford Plaintiffs adequate relief for the damage caused by such actions.

9      152.   As a result of Defendants' acts complained herein, Plaintiffs have

10  suffered and will continue to suffer damage, and Defendants have been and will

11  continue to be unjustly enriched.

12      153.   By reason of Defendants' acts, Plaintiffs have suffered, and will

13  continue to suffer irreparable harm for which Plaintiffs have no adequate remedy at

14  law, unless and until Defendants' conduct is enjoined.

15                 **EIGHTH CLAIM FOR RELIEF**

16              **(Common Law Unfair Competition)**

17      154.   Plaintiffs reallege and incorporate herein by reference all the preceding

18  paragraphs, inclusive, of the Second Amended Complaint as though set fully set

19  forth below.

20      155.   Defendants' actions are likely to cause confusion, misrepresentation,

21  and/or to cause mistake or to deceive the public as to the affiliation, approval,

22  sponsorship or connection between Defendants and Plaintiffs, and constitutes unfair

23  competition at common law.

24      156.   As a result of Defendants' acts of unfair competition, Plaintiffs have

25  suffered and will continue to suffer damages, and Defendants have been unjustly

26  enriched.

27

28

157.   By reason of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, irreparable harm for which Plaintiffs have no adequate remedy at law unless and until Defendant is enjoined from continuing their wrongful acts.

158.   Upon information and belief, Defendants' conduct in this claim for relief is willful, wanton, malicious, oppressive, and in conscious disregard of Plaintiffs' rights, justifying the imposition of punitive and exemplary damages.

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.   For a preliminary and permanent injunction requiring that Defendants and Defendants' successors and assigns, parents, subsidiaries, affiliates, suppliers, officers, agents, servants, employees, and attorneys, and all those persons in active concert, participation or privity with them cease any and all transmission, reproduction, or distribution of Plaintiffs' programming or otherwise infringing, whether directly or secondarily, Plaintiffs' copyrights.

2.   That the Court enter judgment in favor of Plaintiffs and against Defendants, and each of them, on all counts.

3.   For statutory damages, in the maximum amount provided by law arising from Defendants' violations of Plaintiffs' rights.  Alternatively, at Plaintiffs' election, for Plaintiffs' actual damages, including Defendants' profits.

4.   That Defendants be required to pay for present and future corrective advertising damages sustained by Plaintiffs by reason of Defendants' unlawful acts herein alleged.

5.   For an order requiring Defendants to engage in a corrective notice campaign.

6.   For the amount of recovery to be increased as provided by law, up to three times, and that interest and costs be awarded.

7.   For restitution and/or disgorgement of Defendants' profits to Plaintiffs.

8.    For a constructive trust on, and restitution, of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment.

9.    For punitive damages.

10.    For Plaintiffs' reasonable attorneys' fees.

11.    That Defendants be required to account for and identify all profits, transactions, offers and promotions, of any kind, involving products that infringe Plaintiffs' copyrights or trademarks.

12.    That Defendant, within thirty days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiffs' attorneys a written report under oath setting forth in detail the manner in which Defendant has complied with the above-mentioned paragraphs 1, 5 and 11.

13.    For pre- and post-judgment interest on any monetary award made part of the judgment against Defendants.

14.    For other such relief as the Court may deem just and proper.

Dated:    November 28, 2014    JONES DAY

By: _Brent D. Sokol_

Attorneys for Plaintiffs
MUNHWA BROADCASTING
CORPORATION; MBC AMERICA
HOLDINGS, INC; SEOUL
BROADCASTING SYSTEM
INTERNATIONAL, INC.; and KBS
AMERICA, INC.

1

## DEMAND FOR A JURY TRIAL

2        Plaintiffs hereby demand a jury trial.

3

4   Dated:        November 28, 2014          JONES DAY

5

6                                           By:

7                                               Brent D. Sokol

8                                           Attorneys for Plaintiffs
                                            MUNHWA BROADCASTING
9                                           CORPORATION; MBC AMERICA
                                            HOLDINGS, INC; SEOUL
10                                          BROADCASTING SYSTEM
                                            INTERNATIONAL, INC.; and KBS
11                                          AMERICA, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28