Create New Technology HK Co Ltd
Room D, 10/F Billion Ctr
1 Wang Kwong Rd
Kowloon Bay, Kowloon
Hong Kong



# ORDERS ON MOTIONS

2:14-cv-04213-RGK-RZ Munhwa Broadcasting Corportion et al v. Doo Hyun Song et al

(RZx),AO121,DISCOVERY,PROTORD

Paper recipients: 1      Mailing Labels

## UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered on 5/13/2015 at 8:27 AM PDT and filed on 5/12/2015
**Case Name:**       Munhwa Broadcasting Corportion et al v. Doo Hyun Song et al
**Case Number:**     2:14-cv-04213-RGK-RZ
**Filer:**
**Document Number:** 217

**Docket Text:**
MINUTES (IN CHAMBERS) ORDER by Judge R. Gary Klausnerre: Plaintiffs' Motion for Summary Judgment on Liability Against Create New Technology (HK) Co. Ltd. and Du Hyun Song [181]. The Court GRANTS Plaintiffs' Motion with respect to Song, and DENIES the Motion as moot with respect to Create. Refer to the Court's order for details. (pso)


**2:14-cv-04213-RGK-RZ Notice has been electronically mailed to:**

Charlotte Wasserstein     cswasserstein@jonesday.com

Christina S Kim     christinakim.law@gmail.com

Brent D Sokol     bdsokol@jonesday.com, cswasserstein@jonesday.com

Francis S Ryu     francis@ryulaw.com

Jennifer So Young Chang     jennifer@ryulaw.com

Edward San Chang     vswanson@jonesday.com, jmmullins@jonesday.com, ecfirvinenotifications@jonesday.com, echang@jonesday.com

John Hyongjo Choi     johnchoi@kpcylaw.com

**2:14-cv-04213-RGK-RZ Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**
Create New Technology HK Co Ltd
Room D, 10/F Billion Ctr
1 Wang Kwong Rd
Kowloon Bay, Kowloon
Hong Kong

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 14-04213-RGK (RZx) | Date | May 12, 2015 |
| Title | *MUNHWA BROADCASTING CORP., et al. v. SONG, et al.* | | |

| | |
|---|---|
| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE |

| Sharon L. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                               Not Present

**Proceedings:**    **(IN CHAMBERS) Order re: Plaintiffs' Motion for Summary Judgment on Liability Against Create New Technology (HK) Co. Ltd. and Du Hyun Song (DE 181)**

## I. INTRODUCTION

On December 4, 2014, plaintiffs Munhwa Broadcasting Corporation, MBC America Holdings, Inc., Seoul Broadcasting System International, Inc., and KBS America, Inc. (collectively, "Plaintiffs") filed a corrected Second Amended Complaint ("SAC") against the following defendants: Create New Technology (HK) Co. Ltd. ("Create"); Hua Yang International (HK) Co. Ltd.; Shenzhen GreatVision Network Technology Co., Ltd. ("Shenzhen GreatVision"); Du Hyun Song[1] ("Song"); Sung Youn Kim; Media Journal, Inc.; Best4U, Inc. dba Bestway Realty; Chilbo Myunok USA, LLC; Corea B.B.Q., Inc. dba Myungdong Tofu House ("Corea BBQ"); Keum S. Kang dba MissyLuxy; Se Jin O; Glonet Services, Inc.; Lai Lai China Bistro, Inc.; and CJ Wilshire, Inc. d/b/a Beul ("CJ Wilshire").

The SAC contains the following claims: (1) Copyright Infringement – Infringement of the Public Performance Right in Violation of 17 U.S.C. §§ 106(4), 501; (2) Copyright Infringement – Infringement of the Reproduction and Distribution Rights in Violation of 17 U.S.C. §§ 106, 501; (3) Violation of the Digital Millennium Copyright Act Pursuant to 17 U.S.C. §§ 1201, *et seq.*; (4) Infringement of Federally Registered Trademarks Under Section 32 of the Lanham Act, 15 U.S.C. § 1114; (5) False Designations of Origin and False Descriptions and Representations, and Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125; (6) Common Law Trademark Infringement; (7) California Unfair Competition – California Business & Professions Code §§ 17200, *et seq.*; and (8) Common Law Unfair

---

[1] Plaintiffs allege that Du Hyun Song is also known as Doo Hyun Song and/or Dylan Song.

Competition.

On April 20, 2015, Plaintiffs filed a Motion for Summary Judgment on Liability (the "Motion") against Create and Song (collectively, "Defendants"). The Motion is unopposed. With one exception, the liability of the remaining defendants has been resolved by default or Consent Judgments and Permanent Injunctions. That one exception is Shenzhen GreatVision, which has not yet been served.

On April 30, 2015, the Court struck Create's Answer for failure to comply with a prior order, and the clerk entered default against Create on May 5, 2015. Therefore, only the issue of Song's liability is presently before the Court.

For the following reasons, the Court **GRANTS** the Motion with respect to Song, and **DENIES** the Motion as **moot** with respect to Create.

## II.     FACTUAL BACKGROUND

Plaintiffs allege the following facts. Plaintiffs and/or their respective parent companies are the three largest national television networks in South Korea, and are the producers, distributors, and/or exclusive licensees of a large number of audiovisual works. Plaintiffs sub-license their broadcasts and programs to DIRECTV and Time Warner Cable, among other service providers. Those service providers then retransmit the broadcasts and programs in the U.S. to fee-paying subscribers. Many of Plaintiffs' works are registered with the United States Copyright Office, and Plaintiffs own or hold exclusive licenses for the copyrights covering those works.

Create operates a closed, centrally managed global "P4P" digital broadcast transmission service, which is a variant of "P2P," or "peer to peer," services. This service retransmits or otherwise communicates the entirety of Plaintiffs' copyrighted daily broadcasts and programs on demand to the U.S. public without any copyright licenses, using a device Create manufactures called the TVpad.[2] The TVpad connects to a television via an HDMI or analog/video cable, and can be connected to the Internet through either a wireless or Ethernet cable. The TVpad operates various applications (commonly known as "apps"), which Plaintiffs refer to as "unlicensed retransmission request software," and which allow users to access and stream a host of audiovisual works, including Plaintiffs' works, for free.

Critically, in addition to receiving transmitted content, the TVpads also *re-transmit* that content to other TVpads on the network operated by Create. The details of this retransmission system will be further explained below.

Song operates Media Journal, which distributes TVpads to the public. Media Journal also advertised the TVpad in a variety of ways, particularly to the Korean-American population in Southern California.

## III.    JUDICIAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper only upon a showing that "there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such showing, the court may grant summary judgment "on all or part of the claim." *Id.*

---

[2]There are four versions of the TVPad, to which Plaintiffs refer as "TVpad," "TVpad2," "TVpad3," and "TVpad4." This Order uses "TVpad" to refer to all versions of the device.

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See id.*

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

## IV. DISCUSSION

In their Motion, Plaintiffs assert that they are entitled to summary judgment against Song on their first claim for copyright infringement, their fourth claim for trademark infringement, and their fifth claim for unfair competition under 15 U.S.C. § 1125. The Court agrees, and addresses each claim below. Since Song did not file an Opposition to the Motion, all facts referenced herein are undisputed.

### A. Copyright

Plaintiffs argue that Song is liable for contributory copyright infringement. To succeed on this theory, Plaintiffs must first "establish that there has been direct infringement by third parties." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007).

#### 1. *Direct Infringement*

To establish a claim for direct copyright infringement, Plaintiffs must show (1) ownership of the allegedly infringed material and (2) violation by Defendants of at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (citing 17 U.S.C. § 501(a)). "Under the copyright laws, the registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright in a judicial proceeding commenced within five years of the copyright's first publication." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) (citing 17 U.S.C. § 410(c)). However, copyrighted works of foreign origin need not be registered to be enforced in U.S. courts. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010) (citing 17 U.S.C. § 411(a)).

Plaintiffs have clearly shown ownership of the allegedly infringed material. They have submitted non-exhaustive lists of representative copyright registrations for their programs and broadcasts, as well as representative registration certificates for works they have registered with the U.S. Copyright Office within the last five years. (*See* Kim Decl., Exs. A-B; Lee Decl., Exs. A-B; Chang Decl., Exs. A-B.) Declarations from Plaintiffs' executives also set forth additional programming to which Plaintiffs own copyrights. (*See* Kim Decl. ¶ 3; Lee Decl. ¶ 3; Chang Decl. ¶ 3.) Moreover, Plaintiffs have submitted ample evidence that these copyrighted works are the same ones allegedly directly infringed by TVpad users, as discussed below. (*See* Wasserstein Decl., Ex. 44; *id.* at Ex. 7 [Kang Dep.], 40:22-24; *id.* at Ex. 4 [Kim Dep.], 29:9-20, 33:3-20, 39:1-4, 70:3-14, 73:9-22, 93:7-21; *Id.* at Ex. 8 [Lyu Dep.], 43:7-24, 46:6-21, 49:8-24; *id.* at Ex. 11 [Crocker Report], ¶ 40; *id.* at Ex. 5 [Media Journal Dep.], 44:3-21; *id.* at Ex. 86; *id.* at Ex. 3 [Song Dep.], 92:23-93:6, 94:1-96:14; Se Jin O Decl. ¶ 14; Paek Decl. ¶ 11, Ex. 4.)

Further, Plaintiffs' evidence shows that third parties, specifically TVpad users, have violated Plaintiffs' exclusive right to publicly perform their copyrighted works. *See* 17 U.S.C. § 106(4). In the

case of audiovisual works, to "perform" a work means "to show its images in any sequence or to make the sounds accompanying it audible." 17 U.S.C. § 101. To perform an audiovisual work "publicly" means:

> (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

*Id.*

### a. *TVpad Re-transmissions*

Testing performed by Plaintiffs' expert, David Crocker, showed that the TVpads utilize a "P4P" process, which stands for "proactive network provider participation for P2P." (*See* Wasserstein Decl., Ex. 11 ("Crocker Rpt.") ¶ 6.) This is similar to "P2P," or "peer-to-peer," sharing technology in which participating devices share content transmissions with one another, but is somewhat distinct in that "a central source decides which participating devices shall share the content transmissions and which devices they shall share them with." (*Id.* at ¶ 7.) Here, the central source directed TVpads to share transmissions with other TVpads that were "close" to them on the network when acquiring the same content, such as when programs are broadcast live. (*Id.* at ¶¶ 8, 41.) In effect, this means that TVpads receive Plaintiffs' live content from, and *retransmit* it to, other TVpads. (*Id.* at ¶¶ 6-8, 12, 32-33, 37-41.)[3]

In *ABC, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014), the Supreme Court held that the defendant's similar activity of receiving live broadcasts and re-transmitting them over the Internet constituted a "public performance" in violation of 17 U.S.C. § 106.[4] *Id.* at 2504-10. The Court finds *Aereo* controlling here, and holds that the TVpad re-transmissions violate Plaintiffs' public performance right.

Therefore, Plaintiffs have established that TVpad users directly infringe their copyrights.

### b. *Restaurants' Public Performance*

Plaintiffs' evidence also shows that at least two restaurants, Corea BBQ and CJ Wilshire, used TVpads to show Plaintiffs' copyrighted broadcasts to their customers. (*See* Ex. 44; Ex. 10 [Yoo Dep.], 37:18-38:8; Ex. 86; Ex. 8 [Lyu Dep.], 50:24-51:17, 54:10-59:10, 69:2-25; Ex. 86.) Moreover, those restaurants did not obtain a license or other form of consent from Plaintiffs. (*See* Kim Decl. ¶ 9; Lee Decl. ¶ 9; Chang Decl. ¶ 9.) Those actions violated Plaintiffs' exclusive statutory right to "publicly

---

[3] It stands to reason, and it appears from Mr. Crocker's report, that at least some of these TVpads receive the live broadcasts directly from a server or other device controlled by the "central source," which appears to be Create along with an as-yet-unserved defendant, Shenzhen GreatVision. (*See* Crocker Rpt. ¶¶ 6, 17.) The first paragraph of Plaintiffs' brief hints that is the case. (*See* Pls.' Mot., 1:8-11.)

[4] The direct infringers in this case are one step removed from the defendant in *Aereo*. That defendant was the entity which initially received the copyright holders' broadcasts and subsequently streamed them to viewers online. *See id.* at 2503. Here, the initial action of receiving or "capturing" Plaintiffs' broadcasts appears to be performed by Create, and the viewers then *re*-transmit the broadcasts to other viewers by way of their TVpads. However, those re-transmissions still appear to qualify as public performances, and Song effectively conceded this point by failing to file an Opposition. Thus, the Court does not find this to be a ground for distinguishing *Aereo*.

perform" their copyrighted works, and thus directly infringed Plaintiffs' copyrights as well.

### 2. *Contributory Infringement*

"[O]ne contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). Knowledge may be actual or constructive. *See Napster*, 239 F.3d at 1020 ("Contributory liability requires that the secondary infringer 'know or have reason to know' of direct infringement.").

"Material contribution" is established where an entity "encouraged or assisted others' infringement, or provided machinery or goods that facilitated infringement." *See Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011). With regard to inducing infringement, the Supreme Court has explained that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005). "[U]nder *Grokster*, an actor may be contributorily liable for intentionally encouraging infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007).

### a. *TVpad Re-transmissions*

Plaintiffs have submitted uncontradicted evidence that Song, Media Journal's CEO (*see* Wasserstein Decl., Ex. 3 at 8:19-20), had knowledge the TVpads were being used to directly infringe Plaintiffs' copyrights. On February 20, 2014, Plaintiffs' counsel sent a letter to Song informing him that use of the TVpad constituted copyright infringement, and that his marketing and sale of TVpads "for the purpose of allowing purchasers of the TVpad devices to access [Plaintiffs'] Copyrighted Works" without their authorization, and without paying for that access, rendered Song liable for contributory infringement. (Wasserstein Decl., Ex. 25.) Plaintiffs demanded that Song cease and desist marketing and selling TVpads. (*Id.*) Song forwarded this letter on to Create, which in turn consulted with its own attorney. Create relayed its attorney's advice to Song; this included advising Song of the "requirements" that he not sell TVpads with applications already installed or use copyrighted content when promoting TVpads. (*See id.* at Exs. 24, 75; *see also id.* at Ex. 56 (notice Create sent to Song regarding legal issues, stating among other things: "(1) Do not install any software applications for end users, and do not assist end users in installing any software applications in any manner"; "(2) Do not indicate to end users that the TVpad products may be used to view copyrighted content.").)

Yet Song proceeded to disregard the advice of Create's attorney and engage in the precise actions which he was advised would facilitate direct infringement, and thus render him liable for contributory infringement. Media Journal employees installed applications used to access Plaintiffs' programming prior to selling TVpads to customers. (*See id.*, Ex. 4 [Kim Dep.], 107:10-110:14, 125:19-23; Paek Decl. ¶¶ 4-13.) Media Journal also provided the applications to a sub-distributor on a USB stick, and instructed the sub-distributor on how to install the applications onto consumers' TVpads. (*See id.*, Ex. 7 [Kang Dep.], 43:4-45:1.) Media Journal's advertising promoted these applications and their use to access Plaintiffs' copyrighted works. (*See id.*, Ex. 47.) Moreover, Media Journal displayed copyrighted content during advertisements and when promoting the TVpad. (*See id.*, Ex. 5 [Song Dep.], 85:10-86:21; Ex. 32.) These actions both materially contributed to and induced the direct infringement described above, and therefore Song is liable for contributory copyright infringement.

        b.    *Restaurants' Public Performance*

Plaintiffs' evidence also shows that Media Journal materially contributed to Corea BBQ's infringing activity, and induced it by taking steps which were substantially certain to result in infringement. Chris Kim, a Media Journal employee, brought a TVpad to Corea BBQ and set it up so that it would be able to play Dodgers baseball games broadcast on the MBC Sports Channel. Corea BBQ's owner had previously informed Mr. Kim that the restaurant wanted to show Korean broadcasts of Dodgers games, as Korean player Hyun Jin Ryu was pitching for that team. (*See* Ex. 8 [Lyu Dep.], 40:22-51:17.) Additionally, on two separate occasions, Mr. Kim went back to Corea BBQ to further explain how to use the TVpad in the restaurant. (*Id.*, 51:18-52:23.) Thus, Plaintiff is further liable for contributory infringement as a result of this activity.[5]

### B.    Trademark

Under the Lanham Act, 15 U.S.C. § 1114, a person is liable for trademark infringement if that person, without the consent of the registrant

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ....

15 U.S.C. § 1114(1)(a). To establish trademark infringement under this provision, Plaintiffs must show (1) that their trademarks are valid and protectable, and (2) that Media Journal's use of their marks has created a likelihood of consumer confusion. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). This is "[t]he same standard [that is] embodied in section 43(a)(1) of the Lanham Act, [15 U.S.C. § 1125(a)(1),] which applies to both registered and unregistered trademarks[.]"[6] *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.6 (9th Cir. 1999).

In analyzing likelihood of confusion, courts consider the eight *Sleekcraft* factors:

> (1) strength of the mark(s); (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) the defendants' intent; [and] (8) likelihood of expansion.

*Id.* at 632; *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

Plaintiffs own valid federal trademark registrations in a number of the trademarks which are displayed during their broadcasts. (*See* Kim Decl. ¶¶ 7-8; Chang Decl. ¶¶ 7-8; Lee Decl. ¶¶ 7-8.) These registrations are *prima facie* evidence that Plaintiffs own those marks and have the exclusive right to use them in connection with the goods and services specified in the registrations. *See* 15 U.S.C. § 1115(a).

---

[5] Plaintiffs did not provide similar evidence regarding contribution to or inducement of CJ Wilshire's activity.

[6] 15 U.S.C. § 1125(a)(1) renders liable "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities ...."

Plaintiffs also presented evidence that they own certain other valid but unregistered marks. (*See* Kim Decl. ¶¶ 7-8; Chang Decl. ¶¶ 7-8; Lee Decl. ¶¶ 7-8.)

Plaintiffs' evidence shows that Song and Media Journal used Plaintiffs' trademarks in advertising and offering TVpads for sale. (*See* Notice of Lodging, ECF No. 182 [Song's YouTube video]; Wasserstein Ex. 32 [translation thereof]; Ex. 47 [print advertisement].) Plaintiffs' declarants testify that their marks are distinctive (Kim Decl. ¶ 7; Chang Decl. ¶ 7; Lee Decl. ¶ 7), and both the "goods" (live broadcasts) and marks are identical. In the absence of any countervailing evidence, there is no genuine issue of material fact, and an analysis of the *Sleekcraft* factors shows a likelihood of consumer confusion over whether the TVpad transmissions of Plaintiffs' content were licensed or otherwise authorized. *See ESPN, Inc. v. Edinburg Cmty. Hotel, Inc.*, 735 F. Supp. 1334, 1341-42 (S.D. Tex. 1986) (finding trademark infringement where defendant's unauthorized transmissions of HBO content contained HBO's trade marks and trade names). Thus, Media Journal is liable for trademark infringement under Plaintiffs' fourth and fifth claims.

### C. Willfulness

Plaintiffs argue that Media Journal's copyright and trademark infringement was "willful," in that it was committed "with knowledge that the . . . conduct constitutes . . . infringement." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 n.3 (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 1404[B], at 14-40.2-.3 (1989)); *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003) ("[P]laintiff must demonstrate that defendant was aware, or should have been aware, that his activities were infringing.").

As discussed in Section IV(A)(2)(a), *supra*, Media Journal was aware that its conduct rendered it contributorily liable for copyright infringement at the time it engaged in the conduct at issue. The February 2014 letter to Song from Plaintiffs' counsel also informed him that he had used Plaintiffs' trademarks and/or service marks in connection with their copyrighted works "in a manner that is designed to falsely suggest to consumers that [Plaintiffs] are affiliated with, or endorse, [his] business." (Wasserstein Decl., Ex. 25.) Moreover, Create's email to Song containing the advice of its attorney stated, "Don't use the wording or logos such as SBS or MBC in advertising or promotional documents." (*Id.* at Ex. 24.) Thus, Media Journal was aware that its activities infringed Plaintiffs' trademarks as well. Therefore, the Court finds that Media Journal's conduct in infringing Plaintiffs' copyrights and trademarks was willful.

### D. Song's Personal Liability for Media Journal's Infringing Actions

Finally, Plaintiff argues that Song should be held personally liable for Media Journal's infringing actions. There are two requirements for disregarding a corporate entity and holding an individual liable:

> [F]irst, that there is a sufficient unity of interest and ownership between the corporation and the individual . . . controlling it that the separate personalities of the individual and the corporation no longer exist; and second, that treating the acts as those of the corporation alone will sanction a fraud, promote injustice, or cause an inequitable result.

*Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1072 (2011).

A number of factors are relevant to determining whether the first requirement is met. Two factors in particular weigh heavily in favor of finding unity of interest and ownership – "commingling of funds and other assets of the individual and the corporation," and "an individual holding out that he is personally liable for debts of the corporation." *Id.* at 1073. At his deposition, Song admitted that he used

his personal bank account interchangeably with that of Media Journal, using both accounts to purchase and to receive payments for TVpads. (Wasserstein Decl., Ex. 5 at 152:14-153:2.) Song also admitted that he used his personal account to pay Media Journal employees. (*Id.* at Ex. 5, 153:3-5.) An analysis conducted by Plaintiffs' expert found that Song made $182,730 in payments to Create from his personal account, which accounted for approximately 81% of all of Media Journal's TVpad purchases. (Sokol Decl., Ex. 2 at ¶ 7, Ex. A.) Additionally, more than $150,000 in TVpad sales was deposited directly into Song's personal account. (*Id.* at ¶ 12, Ex. B.) This accounted for approximately 31% of total revenue from TVpad sales. (*Id.* at ¶ 13.)

Further, Plaintiffs' expert was unable to identify a deposit to either Song's personal account or that of Media Journal which corresponded to a $20,000 payment to Media Journal from Se Jin O of Glonet Services, Inc., for the purchase of 100 TVpads. (*See id.* at ¶¶ 9-10; Se Jin O Decl. ¶¶ 7-8, Ex. 2.) According to Plaintiffs' expert, this indicates either an off-the-books transaction by Song, or the existence of another bank account potentially controlled by Song, which he did not disclose at his deposition. (Sokol Decl., Ex. 2 at ¶ 10.)

Moreover, in March 2014, the investor who provided Song with the initial capital for Media Journal indicated that Song was not maintaining "adequate corporate records," *Misik*, 197 Cal. App. 4th at 1073, and was "manag[ing] the company fund as he please[d]." (Wasserstein Decl., Ex. 78.) Finally, Media Journal has gone out of business, and thus there is an "absence of corporate assets." *Misik*, 197 Cal. App. 4th at 1073.

In light of the above evidence, the Court finds sufficient unity of interest and ownership to satisfy the first requirement. Additionally, it would be inequitable to allow Song to use the corporate form to avoid liability for his infringing conduct as Media Journal's CEO given that he deposited significant revenues from TVpad sales directly into his personal bank account. Thus, the Court finds Song personally liable for Media Journal's infringing actions.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion with respect to Song, and **DENIES** the Motion as **moot** with respect to Create.

**IT IS SO ORDERED.**

**Initials of Preparer**

Case 2:14-cv-04213-RGK-RZ Document 234 Filed 07/14/15 Page 11 of 11 Page ID #:8537

