Brent D. Sokol (State Bar No. 167537)
Charlotte S. Wasserstein (State Bar No. 279442)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071.2300
Telephone:  +1.213.489.3939
Facsimile:    +1.213.243.2539
bdsokol@JonesDay.com
cswasserstein@JonesDay.com

Attorneys for Plaintiffs
MUNHWA BROADCASTING CORPORATION;
MBC AMERICA HOLDINGS, INC; SEOUL
BROADCASTING SYSTEM INTERNATIONAL,
INC.; and KBS AMERICA, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNHWA BROADCASTING CORPORATION, *et al.*,<br><br>          Plaintiffs,<br>   v.<br><br>CREATE NEW TECHNOLOGY (HK) CO. LTD., *et al.*<br><br>          Defendants. | Case No. CV14-4213-RGK-RZx<br><br>Hon. R. Gary Klausner<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT CREATE NEW TECHNOLOGY (HK) CO. LTD.**<br><br>Date:     August 24, 2015<br>Time:    9:00 a.m.<br>Place:    Courtroom 850<br>Judge:   Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................. 1

II.    FACTUAL BACKGROUND .......................................................... 2

III.   PROCEDURAL HISTORY ............................................................ 5

IV.    LEGAL STANDARD .................................................................... 5

V.     ARGUMENT .................................................................................. 6

    1.     Default Judgment Should Be Entered Against Create ......................... 6

    2.     Plaintiffs Are Entitled To Significant Copyright, Trademark And DMCA Damages ................................... 12

    3.     Plaintiffs Are Entitled To Permanent Injunctive Relief .................... 18

    4.     Plaintiffs Are Entitled To Their Reasonable Attorneys' Fees ............ 19

    5.     Plaintiffs Are Entitled To Costs Of Suit And Pre- And Post-Judgment Interest ................................................. 20

VI.    CONCLUSION ............................................................................ 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

4    CASES

5    *A&M Records v. Napster, Inc.*,
6        239 F.3d 1004 (9th Cir. 2001) .............................................................. 8

7    *AAA, Inc. v. AAA Auto Body & Repair, Inc.*,
8        2015 U.S. Dist. LEXIS 25172 (N.D. Cal. Feb. 9, 2015) .................................... 10

9    *Adray v. Adry-Mart, Inc.*,
10       76 F.3d 984 (9th Cir. 1996) ................................................................... 17

11   *Amini Innovation Corp. v. KTY Int'l Mktg.*,
12       768 F. Supp. 2d 1049 (C.D. Cal. 2011) ..................................................... 6

13   *Blizzard Entm't v. Reeves*,
14       2010 U.S. Dist. LEXIS 85560 (C.D. Cal. Aug. 10, 2010) ........................ 11, 16

15   *BottleHood, Inc. v. Bottle Mill*,
16       2012 U.S. Dist. LEXIS 57381 (S.D. Cal. Apr. 23, 2012) .................................. 11

17   *Broadcast Music v. Blueberry Hill Family Rests.*,
18       899 F. Supp. 474 (D. Nev. 1995) .............................................................. 18

19   *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
20       536 F.3d 121 (2d Cir. 2008) .................................................................... 14

21   *Chanel, Inc. v. Lin*,
22       2010 U.S. Dist. LEXIS 61295 (N.D. Cal. May 7, 2010) .................................. 17

23   *Curtis v. Illumination Arts, Inc.*,
24       33 F. Supp. 3d 1200, 1220 (W.D. Wash. 2014) .......................................... 19

25   *Deckers Outdoor Corp. v. ShoeScandal.com, LLC*,
26       2013 U.S. Dist. LEXIS 111407 (C.D. Cal. Aug. 7, 2013) ............................... 20

27

28

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) .................................................................... 6, 11, 19

*Disney Enters., Inc. v. Delane*,
    446 F. Supp. 2d 402 (D. Md. 2006) ............................................................... 19

*Domanus v. Lewicki*,
    742 F.3d 290 (7th Cir. 2014) ......................................................................... 13

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986) ................................................................. passim

*Elektra Entm't Grp., Inc. v. Crawford*,
    226 F.R.D. 388 (C.D. Cal. 2005) .................................................................. 12

*Entm't & Sports Programming Network, Inc. v. Edinburg Cmty. Hotel, Inc.*,
    735 F. Supp. 1334 (S.D. Tex. 1986) ............................................................. 10

*Geddes v. United Fin. Grp.*,
    559 F.2d 557 (9th Cir. 1977) ........................................................................... 5

*Harris v Emus Records Corp.*,
    734 F.2d 1329 (9th Cir. 1984) ...................................................................... 13

*Henry v. Sneiders*,
    490 F.2d 315 (9th Cir. 1974) ........................................................................... 6

*Hounddog Prods., LLC v. Empire Film Grp., Inc.*,
    826 F. Supp. 2d 619 (S.D.N.Y. 2011) .......................................................... 13

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*,
    559 F.3d 985 (9th Cir. 2009) ......................................................................... 19

*Jackson v. Sturkie*,
    255 F. Supp. 2d 1096 (N.D. Cal. 2003) ........................................................ 19

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*,
    2008 U.S. Dist. LEXIS 50839 (D. Nev. July 1, 2008) ................................... 7

*L.A. News Serv. v. Reuters Tel. Int'l, Ltd.*,
    340 F.3d 926 (9th Cir. 2003) ................................................................. 14

*Landstar Ranger, Inc. v. Parth Enters.*,
    725 F. Supp. 2d 916 (C.D. Cal. 2010) ..................................................... 7

*MGM Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................. 18

*Microsoft Corp. v. Nop*,
    549 F. Supp. 2d 1233 (E.D. Cal. 2008) ................................................. 13

*Microsoft Corp. v. Silver Star Micro, Inc.*,
    2008 U.S. Dist. LEXIS 1526 (N.D. Ga. Jan. 9, 2008) ............................. 9

*New Form, Inc. v. Tekila Films, Inc.*,
    357 Fed. App'x 10 (9th Cir. 2009) ........................................................ 15

*Nexon Am., Inc. v. Kumar*,
    2012 U.S. Dist. LEXIS 47294 (C.D. Cal. Apr. 3, 2012) ........................ 16

*NFL v. Primetime 24 Joint Venture*,
    211 F.3d 10 (2d Cir. 2000) ................................................................... 14

*Nintendo of Am. v. Dragon Pac. Int'l*,
    40 F.3d 1007 (9th Cir. 1994) ................................................................ 17

*Peer Int'l Corp. v. Pausa Records, Inc.*,
    909 F.2d 1332 (9th Cir. 1990) .............................................................. 15

*Philip Morris U.S.A. Inc. v. Castworld Prods.*,
    219 F.R.D. 494 (C.D. Cal. 2003) ........................................................... 11

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ................................................................ 20

*Randles Films, LLC v. Quantum Releasing, LLC*,
    551 F. App'x 370 (9th Cir. 2014) .......................................................... 14

*Reed Elsevier, Inc. v. Muchnick,*
   559 U.S. 154 (2010) ........................................................................................ 7

*Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.,*
   2003 U.S. Dist. LEXIS 5595 (C.D. Cal. Mar. 7, 2003) ..................................... 11

*Shropshire v. Canning,*
   809 F. Supp. 2d 1139 (N.D. Cal. 2011) .............................................................. 14

*Storz Performance, Inc. v. Moto Italia,*
   2008 U.S. Dist. LEXIS 70240 (S.D. Cal. Sept. 15, 2008) ................................. 18

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.,*
   933 F. Supp. 918 (C.D. Cal. 1996) ..................................................................... 11

*Taylor Made Golf Co. v. Carsten Sports, Ltd.,*
   175 F.R.D. 658 (S.D. Cal. 1997) ........................................................................ 11

*Teller v. Dogge,*
   2014 U.S. Dist. LEXIS 139632 (D. Nev. Sept. 30, 2014) .......................... 18, 19

*Thane Int'l., Inc. v. Trek Bicycle Corp.,*
   305 F.3d 894 (9th Cir. 2002) .............................................................................. 10

*Ticketmaster L.L.C. v. RMG Techs., Inc.,*
   507 F. Supp. 2d 1096 (C.D. Cal. 2007) ................................................................ 9

*Tyson v. City of Sunnyvale,*
   159 F.R.D. 528 (N.D. Cal. 1995) ......................................................................... 5

*UMG Recordings, Inc. v. MP3.com, Inc.,*
   2000 U.S. Dist. LEXIS 17907 (S.D.N.Y. Nov. 14, 2000) ................................. 13

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't,*
   447 F.3d 769 (9th Cir. 2006) .............................................................................. 19

*Wecosign, Inc. v. IFG Holdings, Inc.,*
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) ............................................................. 12

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................... 18

**STATUTES**

15 U.S.C. § 1114 ............................................................... 10

15 U.S.C § 1116(a) ........................................................... 18

15 U.S.C. § 1117(a)(1) ...................................................... 17

15 U.S.C. § 1117(a)(2) ...................................................... 17

15 U.S.C. § 1117(a)(3) ...................................................... 20

15 U.S.C. § 1117(b) .......................................................... 17

15 U.S.C. § 1125(a) .......................................................... 10

17 U.S.C. § 502(a) ............................................................ 18

17 U.S.C. § 504(c) ............................................................ 13

17 U.S.C. § 505 ............................................................ 19, 20

17 U.S.C. § 1201(a)(2) ...................................................... 8, 9

17 U.S.C. § 1201(b)(1) ......................................................... 9

17 U.S.C. § 1201(b)(2) ......................................................... 9

17 U.S.C. § 1203(b) ....................................................... 18, 19

17 U.S.C. § 1203(b)(4) ...................................................... 20

17 U.S.C. § 1203(c)(3) ...................................................... 16

28 U.S.C. § 1961(a) .......................................................... 20

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ............................ 10

**OTHER AUTHORITIES**

ETNEWS, KOREA IT NEWS (July 30, 2014),
    http://english.etnews.com/20140730200002 ........................................ 15

Fed. R. Civ. P. 55 ..................................................................... 1, 5

L.R. 54 ..................................................................................... 20

L.R. 55-1 ................................................................................... 12

L.R. 55-3 ................................................................................... 20

PLS.' MEM. OF Ps&As ISO MOT. FOR DEFAULT JUDGMENT AGAINST DEF. CREATE

## I.    **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 55, Plaintiffs Munhwa Broadcasting Corporation, MBC America Holdings, Inc., Seoul Broadcasting System International, Inc. and KBS America, Inc. (collectively "Plaintiffs") hereby move for default judgment against Defendant Create New Technology (HK) Co. Ltd. ("Create") on the grounds that Create's Answer to Plaintiffs' Second Amended Complaint ("SAC") has been stricken (Dkt. 205), default has been entered against it (Dkt. 212), and Plaintiffs have sufficiently pleaded (Dkt. 110) and established that Create is liable for all eight claims in the SAC, which all arise out of or relate to Create's willful copyright and trademark infringement (*see* Dkt. 181-83, 217).

Plaintiffs and/or their respective parent companies are the three largest South Korean television networks. Plaintiffs collectively employ over a hundred employees in Los Angeles, and sub-license their networks' programs and movies in the U.S. to DIRECTV and TimeWarner Cable, among other service providers, which in turn retransmit the content to U.S. fee-paying subscribers.

Create is a set-top box manufacturer and P4P network operator that boasts of 15 authorized U.S. distributors, dozens more worldwide, and over 3 million in worldwide sales of its TVpad devices—which translates into nearly a billion dollars in estimated revenue. Sokol Decl., Exs. 1-2; Wasserstein Decl., Ex. 76 [ad Create ran on its network in May 2012 stating "3 million units sold worldwide"]; *id*., Ex. 47 [January 2014 ad stating 2 million sold]; Sokol Decl., Ex. 9 [Song Dep. Tr.]; Blum Decl. ¶¶ 12-15.[1] *For over three years*, Create has willfully infringed Plaintiffs' *oeuvre* in the U.S., targeting and touting free transmission of Plaintiffs' entire creative output, live and "on demand," via Create's TVpad devices and

---

[1] Citations to "Sokol Decl." refer to the concurrently-filed Declaration of Brent D. Sokol, citations to "SUF" refer to the Statement of Undisputed Facts filed in support of Plaintiffs' MSJ, Dkt. 181-2, citations to "Wasserstein Decl." refer to the Declaration of C. Wasserstein filed in support of the MSJ, Dkt. 183, and citations to "Sokol MSJ Decl." refer to the Declaration of B. Sokol, filed in support of the MSJ, Dkt. 175-1, which attached documents filed under seal.

network.  Sokol Decl., Exs. 3-5; SUF ¶¶ 18, 19, 38, 41-43, 46, 47-49, 50, 68, 72, 150.

Create has reaped hundreds of millions of dollars *in U.S. sales* while depriving Plaintiffs of their U.S. legal rights.  *See* Dkt. 217 at 2; Blum Decl. ¶ 12. Moreover, Create's estimated billion dollars in *worldwide revenue* is predicated, in substantial part, on U.S. infringement of Plaintiffs' works, because each week, Create also directs transmission of Plaintiffs' works between the U.S. and tens of thousands of its network users in over 71 countries around the world.  Crocker Decl. ¶ 12.  Yet, when confronted in court, Create refused to comply with its discovery obligations, disregarded Court orders, and terminated its counsel's representation. As a result, the Court entered default against Create.  Dkt. 212.

Plaintiffs request that the Court enter default judgment against Create, and award Plaintiffs permanent injunctive relief, statutory and actual damages for willful infringement, entitlement to attorneys' fees and costs, and pre- and post-judgment interest based on Create's control of and profit from a piracy ring that continues to willfully infringe Plaintiffs' U.S. copyrighted works ("Copyrighted Works") and trademarks on an immense scale and for a massive profit.

## II.    FACTUAL BACKGROUND

Plaintiffs comprise the three most watched South Korean television networks SAC ¶¶ 2-3; SUF ¶ 62.  As described more fully in Plaintiffs' SAC and motion for summary judgment ("MSJ"), Create operates, controls and directs a massive, closed, centrally-managed P4P broadcast transmission piracy network, on which users of Create's $250 to $300 transmission apparatuses—TVpads—view hundreds of thousands of pirated television programs and live broadcasts without payment to the copyright holders.  Dkt. 110; 181-183; Sokol Decl., Ex. 12.  Create's network continuously transmits *and retransmits* unlicensed televisions programs and live broadcasts from content servers on its network to millions of Create's TVpad users every day.  SAC ¶ 7; SUF ¶ 42.

2

Create's transmission network is closed—only content publishers and owners of Create's TVpad device who make an agreement with Create may participate. SUF ¶¶ 12, 18-31; Wasserstein Decl., Ex. 11 [Crocker Rep.] ¶¶ 6-7,17.  Further, Create has the contractual right to delete any published content suspected of infringement.  SUF ¶ 23; Wasserstein Decl., Ex. 14.  Indeed, Create contractually reserves the right to change, suspend, remove or disable each user's access to the Transmission Applications *and the content* accessible through its TVpad Store at any time without notice.  SUF ¶ 25; Wasserstein Decl., Ex. 15.

Create reviews the content to be published on its network, teaches the publishers how to upload the content, collects a monthly payment from the publishers for use of content storage servers, and provides the content transmission application software that transmits the infringing content that Create links to, promotes and displays through the "TVpad store" on TVpads' on-screen menus. SUF ¶¶ 24, 63, 68-70, 87-88, 150-57, 161.  Certain of these applications, including but not limited to Solive, KKS, N+, the "DB" set of applications, and HOT 韩剧社 [Korean Drama] (collectively the "Infringement Applications"), have as their main function and appeal the transmission of Plaintiffs' Copyrighted Works to the public. SUF ¶¶ 39-50, 62-63, 67-68.  With specific knowledge that Plaintiffs' works are infringed, Create distributed, provided links to and helped service the Infringement Applications on the TVpad device and network.  SUF ¶¶ 62-91.  In addition, Create's Korean language marketing managers worked closely with the distributor Defendants and their predecessors to induce the U.S. Korean-speaking community to use the Infringement Applications and to watch Plaintiffs' Korean broadcasts and programs on the TVpad network.  SUF ¶¶ 62, 67, 109 112, 113.

As early as June 21, 2011, Create began selling the TVpad in the United States.  Sokol Decl., Ex. 13.  At least as early as January 19, 2012, Create began to promote the Solive [South Korea Live] Infringement Application on its website; Solive streams 12 of Plaintiffs' networks' broadcasts live on the TVpad network.

3

Sokol Decl., Ex. 6; SUF ¶ 46.  Throughout 2012, Create and its authorized U.S. distributors promoted the Infringement Applications to watch Plaintiffs' Copyrighted Works 24 hours a day, both live and on demand.  *See e.g.,* Sokol Decl., Ex. 7 [Create's authorization of ClubTVpad as authorized reseller]; Ex. 8 [ClubTVpad website on 7/8/12 noting TVpads can be used to watch Korean channels for free and offer "Video on Demand options"]; Ex. 3 [10/31/12 ClubTVpad blog post noting "tvpad officials" will update the content of the Infringement Applications.]; Ex. 10 [12/2/12 ClubTVpad blog post noting "Solive and all the other korean apps are still working."].

In 2013, Create continued its promotion of the Infringement Applications with the launch of its TVpad2 device.  Create specifically promoted Solive to watch MBC, SBS and KBS live television broadcasts.  Wasserstein Decl., Ex. 93; Sokol Decl., Ex. 11 [Create blog post listing Infringement Applications as available on TVpad2 devices and specifying that Plaintiffs' channels are available].

In January 2014, Create introduced the TVpad3 and continued to promote the Infringement Applications, including Solive. Dkt. 181-1 at 3-4.  By February 20, 2014, Plaintiffs had sent numerous cease and desist letters concerning copyright infringement on the TVpad network.  SUF ¶¶ 159, 163.  Defendant and TVpad distributor Du Hyun Song ("Song") shared those letters and the Complaint with Create, and Plaintiffs provided notice to Create of the ongoing infringement on its TVpad4 network throughout the course of this litigation.  SUF ¶¶ 159, 162, 169, 172; Wasserstein Decl., Ex. 99.  Despite these letters and this lawsuit, to this day Create continues to promote and provide links to Plaintiffs' Copyrighted Works, and continues to service these Infringement Applications via its network servers.  Crocker Decl. ¶ 13.  Indeed, Create infringes virtually the entire library of Plaintiffs' Copyrighted Works by transmission to its U.S network users *and* from its U.S. users to its foreign network users, each day, each hour, including each new work as soon as it is shown.  Wasserstein Decl., Ex. 11 [Crocker Rep.] ¶ 10, Chang

4

Decl. ¶ 10; Lee Decl. ¶ 10 ; Kim Decl. ¶10; Crocker Decl ¶ 7.

## III.   PROCEDURAL HISTORY

On November 28, 2014, Plaintiffs filed the SAC, which names Create as a
defendant.  Dkt. 104, 110.  On January 6, 2015, Create was served with the
Summons and SAC by personal service upon its registered agent.[2]  Dkt. 116.
Create filed its Answer to the SAC on February 10, 2015.  Dkt. 123.  On April 20,
2015, Plaintiffs filed their MSJ, which presents legal arguments and voluminous
evidence supporting their claims that Create willfully infringed Plaintiffs'
copyrights and trademarks on a massive scale, 24 hours a day, every day,
continuing to this day.  Dkt. 181-83.  Create did not file any opposition or respond
in any fashion to Plaintiffs' MSJ.  *See* Dkt. 199. On April 30, 2015, after Create
terminated its counsel and did not retain substitute counsel or comply with its
Court-ordered discovery obligations, the Court struck Defendant's Answer to the
SAC.  Dkt. 205.  On May 5, 2015, the clerk entered default against Create.  Dkt.
212.  On May 12, 2015, the Court granted Plaintiffs' MSJ against Song, finding
him personally liable for willful copyright and trademark infringement.  Dkt. 217.
The Court, however, denied the MSJ "as moot with respect to Create," because the
Court had previously "struck Create's Answer for failure to comply with a prior
order, and the clerk entered default against Create[.]"  *Id*. at 2.

## IV.   LEGAL STANDARD

Rule 55(b) of the Federal Rules of Civil Procedure permits a default
judgment following entry of default.  A court must presume the truth of the
complaint's factual allegations on a motion for default judgment, except with
respect to the amount of damages.  *Geddes v. United Fin. Grp*., 559 F.2d 557, 560
(9th Cir. 1977).  Where a party has refused to comply with discovery obligations,
the plaintiff's burden on a default judgment motion is not onerous, because "[a]ny

---

[2] Since Create appeared in this action through its Answer, it waived any right
to contest the service of process. *See Tyson v. City of Sunnyvale*, 159 F.R.D. 528,
530 (N.D. Cal. 1995) (defense of improper service not raised in answer waived).

insufficiency of the plaintiff's evidence [is] a direct result of [the defaulting

defendant's] refusal to comply with a legitimate request for discovery." *Henry v.

*Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974).

## V.   ARGUMENT

Plaintiffs have sufficiently *pleaded* each of the eight claims in the SAC

against Create, which is all that is required on default judgment. *See Derek

Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (on default

motion "all factual allegations in the complaint are deemed true, *including the

allegation of . . . willful infringement*") (emphasis added). Moreover, Plaintiffs

have already filed an MSJ with voluminous evidence supporting Create's willful

copyright and trademark infringement, and substantiate the other claims herein, so

there can be no doubt as to the extent of Create's liability. Dkt. 181-83. As such,

Plaintiffs are entitled to the entry of default judgment, permanent injunctive relief,

statutory and actual damages for willful infringement, determination of entitlement

to attorneys' fees and costs, and pre- and post-judgment interest.

### 1.   DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST CREATE.

#### A.   The *Eitel* Factors Weigh In Favor Of Default.

In the Ninth Circuit, a district court must examine the following factors on a

motion for default judgment:  (1) prejudice to plaintiff, (2) merits of the substantive

claim, (3) sufficiency of the complaint, (4) sum of money at stake, (5) possibility of

a dispute on material facts, (6) whether default was due to excusable neglect, and

(7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470,

1471-72 (9th Cir. 1986). Each factor militates in favor of default judgment here.

As to the first *Eitel* factor, prejudice exists where "[i]f the Court does not

enter a default judgment, it will allow Defendant to avoid liability by not

responding to Plaintiff's claims." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768

F. Supp. 2d 1049, 1054 (C.D. Cal. 2011). Here, the Court denied Plaintiffs'

6

1   unopposed MSJ against Create as moot, noting that Create's Answer had been

2   stricken "for failure to comply with a prior order[.]"  Dkt. 217 at 2.  Create's refusal

3   to provide court-ordered discovery rendered it impossible for Plaintiffs to seek

4   relief against Create by any other procedural vehicle.  *See Koninklijke Philips*

5   *Elecs. N.V. v. KXD Tech., Inc.*, 2008 U.S. Dist. LEXIS 50839, at *12 (D. Nev. July

6   1, 2008) (first *Eitel* factor met because "Defendants have prevented a fair trial on

7   the merits through needlessly obstructing discovery and by destroying evidence").

8          "The second and third *Eitel* factors assess the substantive merit of plaintiff's

9   claim and the sufficiency of its pleadings."  *Landstar Ranger, Inc. v. Parth Enters.*,

10  725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).  As shown below, Plaintiffs sufficiently

11  pleaded eight claims against Create (Dkt. 110), submitted evidence to support

12  Create's willful copyright and trademark infringement (Dkt. 181-183), and herein

13  establish the substantive merits of the other claims.

14         As to the first claim for public performance copyright infringement,

15  Plaintiffs' SAC pleads sufficient facts to establish Create's copyright infringement

16  liability, and the MSJ proves those claims are meritorious.  The Court held in ruling

17  on the MSJ that "Plaintiffs have clearly shown ownership of the allegedly infringed

18  material" and noted that each Plaintiff had proven it owned the relevant copyrights.[3]

19  Dkt. 217 at 3.  "Plaintiffs have submitted ample evidence that these copyrighted

20  works are the same ones allegedly directly infringed by TVpad users."  *Id*. at 3.

21  Plaintiffs' MSJ presents extensive legal argument and voluminous evidence

22  demonstrating Create is *contributorily* liable for copyright infringement because it

23  (a) induced others to infringe by promoting the use of TVpads to watch Plaintiffs'

24  works, and (b) materially contributed to that infringement by providing the

25  Infringing Applications, and the TVpad devices and network they exclusively run

26

27  _____

          [3] Moreover, as works of foreign origin, they need not be registered to be
28  enforced in the United States.  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165
    (2010) (citing 17 U.S.C. § 411(a)).

on.  Dkt. 181 at 8-13.[4]   The MSJ also shows Create is *vicariously* liable for copyright infringement because it profits from TVpad sales, and controls and directs the infringement by way of the retransmission network.  Dkt. 181-1 at 14-19.

Plaintiffs' second claim against Create is for reproduction and distribution copyright violations.  The SAC alleges that Create makes Plaintiffs' Copyrighted Works available not only for live streaming but also in video on-demand ("VOD") format.  SAC ¶¶ 7, 10, 22, 55-56, 90, 102-118.  Create's network servers contain vast libraries of Plaintiffs' Copyrighted Works, uploaded and stored with Create's permission, and accessed with Create's help by Create network users who employ the VOD Infringement Applications that Create features and promotes for its TVpads.  SUF ¶¶ 18-19, 42, 47, 48, 88-89.  *See also A&M Records v. Napster, Inc.,* 239 F.3d 1004, 1024 (9th Cir. 2001) (failure to police, with financial benefit, is contributory infringement).  As such, Create has contributorily violated Plaintiffs' reproduction and distribution rights.  Create is also vicariously liable for the infringement wrought by the VOD Infringement Applications because at minimum it (a) controls the P4P network including the network content servers containing the VOD programming, (b) contractually controls its publishing co-conspirators, and has the right to remove the infringing content from the TVpad network servers, and (c) directly profits from the uploads and storage of the infringing VOD content.  SUF ¶¶ 18, 18-19, 23, 24, 27, 31, 42, 43, 47, 48, 88-89, 156; Yi Decl. ¶ 3, Ex. A.  Indeed, these VOD applications were part of the sales pitch for the TVpad devices.  SUF ¶¶ 88; Sokol Decl., Ex. 3100, 3107, 3445.

Plaintiffs have also properly pleaded and substantiated their third claim, for violation of the DMCA, 17 U.S.C. §§ 1201, *et seq.*  First, Plaintiffs demonstrated that Create violated Section 1201(a)(2) by alleging and herein substantiating:  (1)

---

[4] For example, the Court already ruled that providing the Infringing Applications gives rise to contributory liability, as does selling TVpads with the Infringing Applications pre-installed and advertising the use of TVpads to watch the Copyrighted Works.  Dkt. 217 at 5.

Plaintiffs own Copyrighted Works; (2) protected by a technological measure, namely encryption of their live broadcast transmissions such that they may only be viewed live *in Korea* by lawful users who are provided with cable and/or satellite equipment to decrypt the signals for their personal use,[5] which Create has circumvented; (3) that third parties in the U.S., namely TVpad users, can now access; (4) without authorization from Plaintiffs, in a manner that (5) infringes (by U.S. retransmission on the Create network) or facilitates infringement (by TVpad user requests for U.S. transmission on the Create network) because of this Korean live broadcast subscription channel service that (6) Create "(i) designed or produced primarily for circumvention; (ii) made available despite only limited commercial significance other than circumvention; [and/or] (iii) marketed[6] for use in circumvention of the controlling technological measure." *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1111 (C.D. Cal. 2007) (quotation and citation omitted); 17 U.S.C. § 1201(a)(2).  Similarly, to prevail on their DMCA claim under 17 U.S.C. § 1201(b)(1), Plaintiffs have shown that Create's Korean live broadcast transmission service, effectuated through its Solive and KKS Infringement Applications, circumvented Plaintiffs' technological measures that protect their rights in the Copyrighted Works.  *See* 17 U.S.C. § 1201(b)(2).  As such, Plaintiffs have adequately pleaded and proved both DMCA claims.  *See Ticketmaster*, 507 F. Supp. 2d at 1112 (finding violations under both DMCA sections).  Finally, because Create promotes and provides its Korean live broadcast transmission service for the purpose of circumvention, Create is also contributorily and vicariously liable for DMCA violations arising out of use of those programs. *See Microsoft Corp. v. Silver Star Micro, Inc.,* 2008 U.S. Dist. LEXIS 1526, at *24

---

[5] Kim Decl. ¶ 5; Lee Decl. ¶ 5; Chang Decl. ¶ 5.

[6] Create marketed the Infringement Applications as a way to obtain the encrypted subscription-only channels. *See, e.g.,* Sokol Decl., Ex. 6.  And Create approved and funded ads specifically touted the Infringement Applications' ability to transmit Plaintiffs' subscription-only programming, including its sports programming.  SUF ¶¶ 28, 30, 80-81, 109, 111, 153; Wasserstein Decl., Exs. 68-70.

9

1   n.8 (N.D. Ga. Jan. 9, 2008) (finding vicarious and contributory DMCA liability).

2          As for Plaintiffs' fourth claim, the MSJ shows Create infringed—and

3   continues to infringe—Plaintiffs' trademarks in violation of the Lanham Act, 15

4   U.S.C. § 1114(1), as this Court recognized.  Dkt. 181-1 at 16-17; Dkt. 217 at 6-7;

5   *see Entm't & Sports Programming Network, Inc. v. Edinburg Cmty. Hotel, Inc*.,

6   735 F. Supp. 1334, 1341-42 (S.D. Tex. 1986) (holding illicit HBO broadcasts

7   infringed HBO's trademarks).   Similarly, in the fifth claim for unfair competition

8   under 15 U.S.C. § 1125(a) Plaintiffs alleged Create used Plaintiffs' marks so as to

9   lead consumers to mistakenly believe that Plaintiffs approved or endorsed such use,

10  in violation of the Lanham Act.  SAC ¶¶ 127-28, 137-40, 145, 155.  In fact,

11  Create's use of Plaintiffs' marks *has* caused consumer confusion.  Wasserstein

12  Decl., Ex. 8 [Lyu Dep.] 99:2-6; Sokol MSJ Decl., Ex. 1 [Blum Report] ¶¶ 39, 54.

13  As such, default judgment is warranted.[7]

14         Plaintiffs have also pleaded and proven their sixth cause of action for

15  common law trademark infringement.  SAC ¶¶ 142-48; *see Thane Int'l., Inc. v. Trek*

16  *Bicycle Corp*., 305 F.3d 894, 901 n.3 (9th Cir. 2002) (same standard applied for

17  common law trademark infringement as 15 U.S.C. § 1114 federal trademark

18  infringement); *AAA*, 2015 U.S. Dist. LEXIS 25172, at *13 (on default judgment,

19  "[b]ecause AAA has sufficiently pleaded its claim for federal trademark

20  infringement, it has also adequately pleaded its claim for common law trademark

21  infringement.").

22         Plaintiffs' seventh claim is for violation of California's unfair competition

23  statute ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.  A violation of another

24  substantive law constitutes a *per se* violation of the "unlawful" prong of the UCL,

25  and the underlying violation may arise under federal law, such as under the

26  _____

27         [7] *See AAA, Inc. v. AAA Auto Body & Repair, Inc*., 2015 U.S. Dist. LEXIS
    25172,  at *11 (N.D. Cal. Feb. 9, 2015) (granting default judgment on Lanham Act
28  unfair competition claim because defendant's use of the marks "may have caused
    confusion among consumers").

1  Copyright Act or Lanham Act.  *See BottleHood, Inc. v. Bottle Mill,* 2012 U.S. Dist.

2  LEXIS 57381, at *16 (S.D. Cal. Apr. 23, 2012) (denying motion to dismiss UCL

3  claim because "Plaintiff has adequately pled the trademark and copyright claims").

4  Likewise, as for Plaintiffs' eighth claim, courts see "no difference between statutory

5  unfair competition and common law unfair competition."  *Summit Tech., Inc. v.*

6  *High-Line Med. Instruments, Co*., 933 F. Supp. 918, 943 (C.D. Cal. 1996).

7      Finally, Create is a *willful* copyright and trademark infringer, for at least

8  three reasons:  First, Plaintiffs have pleaded and *proved* Create's willfulness.  SAC

9  ¶¶ 73-76, 81, 95, 100, 108, 111, 116, 122, 134, 148, 150, 158; Dkt. 181-1 at 1, 3-4,

10  14, 17-19.  Second, on default judgment, "all factual allegations in the complaint

11  are deemed true, ***including the allegation of willful infringement***."  *Derek Andrew,*

12  528 F.3d at 702 (emphasis added).  Third, this Court has already held that Create

13  has not participated in discovery and has violated court orders, and "[a]

14  determination of willfulness may . . .  rest on defendant's failure to cooperate in

15  discovery or its violation of court orders."  *Rolex Watch U.S.A., Inc. v. Zeotec*

16  *Diamonds, Inc*., 2003 U.S. Dist. LEXIS 5595, at *11 (C.D. Cal. Mar. 7, 2003).

17      The fourth *Eitel* factor requires the Court to "consider the amount of money

18  at stake in relation to the seriousness of Defendant's conduct."  *Philip Morris*

19  *U.S.A. Inc. v. Castworld Prods.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003) (citation and

20  quotation marks omitted).  When widespread infringement has occurred, courts

21  regularly award significant statutory damages where Defendant refuses to

22  participate in discovery.  *See, e.g., Blizzard Entm't v. Reeves*, 2010 U.S. Dist.

23  LEXIS 85560, at *8-9 (C.D. Cal. Aug. 10, 2010) (awarding $85,478,600 in

24  statutory damages and noting with respect to number of infringements "Court must

25  draw all reasonable inferences in Plaintiff's favor on account of Defendant's failure

26  to participate in the litigation process."); *see also Philip Morris U.S.A.,* 219 F.R.D.

27  at 500 (willfulness and failure to participate in the judicial process justified

28  $2,000,000 in Lanham Act statutory damages); *Taylor Made Golf Co. v. Carsten*

1   *Sports, Ltd*., 175 F.R.D. 658, 663 (S.D. Cal. 1997) ("[D]oubts about the actual
2   assessment of damages [awarded on default in trademark case] will be resolved
3   against the party who frustrates proof of such, and the factfinder may calculate
4   damages at the highest reasonably ascertainable value.'") (citation omitted).

5         Because "Plaintiffs filed a well-pleaded Complaint alleging the elements
6   necessary to prevail[,]" and Create failed to oppose Plaintiffs' MSJ, the fifth *Eitel*
7   factor, which considers the possibility of dispute as to any material facts in the case,
8   favors default judgment. *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388,
9   393 (C.D. Cal. 2005); *see also Wecosign, Inc. v. IFG Holdings, Inc*., 845 F. Supp.
10  2d 1072, 1082 (C.D. Cal. 2012) (fifth *Eitel* factor met because of defendants' "early
11  participation in this matter and subsequent failure to contest Plaintiff's claims").

12        As to the sixth *Eitel* factor, Create's tactical decision to allow entry of default
13  contradicts any excuse for neglect. Dkt. 205, 212; *See Wecosign*, 845 F. Supp. 2d
14  at 1082. The last *Eitel* factor takes into account the preference of the Federal Rules
15  for deciding cases on the merits. *Eitel*, 782 F.2d at 1472. But Create should not
16  escape a default judgment because it elected to stop defending itself. *Amini*
17  *Innovation*, 768 F. Supp. 2d at 1056 (granting default judgment where "Defendant
18  retained counsel . . . [and] had an adequate opportunity to defend itself . . .").

19         **B.**     **The Requirements Of Local Rule 55-1 Are Satisfied.**

20        Default was entered against Create on May 5, 2015 (Dkt. 212) with respect to
21  Plaintiffs' SAC (Dkt. 110). Create is not an infant or incompetent person, and the
22  Servicemembers Civil Relief Act does not apply. Sokol Decl. ¶ 1. Notice of the
23  motion was provided to Create via express mail to the address provided in its
24  former counsel's motion to withdraw (Dkt. 174-1). Sokol Decl. ¶ 2.

25        **2.**     **PLAINTIFFS ARE ENTITLED TO SIGNIFICANT**
26               **COPYRIGHT, TRADEMARK AND DMCA DAMAGES.**

27         **A.**     **The Court Should Award $150,000 In Statutory Copyright**
             **Damages Per Work.**

28  The magnitude of Create's willful infringement of Plaintiffs' Copyrighted

Works, willful disregard of this Court's authority, and refusal to stop its blatant infringement renders Plaintiffs entitled to a $150,000 statutory damages award for each of their Copyrighted Works.  *See* 17 U.S.C. § 504(c); *Harris v Emus Records Corp*., 734 F.2d 1329, 1335 (9th Cir. 1984) ("[t]he court has wide discretion in determining the amount of statutory damages to be awarded"); *see also Hounddog Prods., LLC v. Empire Film Grp., Inc*., 826 F. Supp. 2d 619, 632 (S.D.N.Y. 2011) (awarding maximum copyright statutory damages of $150,000 per infringed work on default judgment because infringement was willful); *UMG Recordings, Inc. v. MP3.com, Inc*., 2000 U.S. Dist. LEXIS 17907, at *1-2 (S.D.N.Y. Nov. 14, 2000) (awarding over $53 million in copyright statutory damages and fees); *Domanus v. Lewicki*, 742 F.3d 290 (7th Cir. 2014) (affirming $413 million damages award on default judgment).  To determine the proper level of statutory damages to award, courts consider (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.  *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1237 (E.D. Cal. 2008) (awarding requested statutory copyright damages even where defendant's profit not calculable due to default).

First, Create has misappropriated the *oeuvre* of three major television networks—a priceless trove—without *any incremental expense.*  Lee Decl. ¶¶ 3, 7; Chang Decl. ¶¶ 3, 7; Kim Decl. ¶¶ 3, 7.  Create has reaped over $ 217 million in U.S. revenues from TVpads that offer the Infringement Applications.  Blum Decl. ¶ 12.  Create's global profits are predicated in part on Create's retransmission of Plaintiffs' works between the U.S. and over 3 million Create network users worldwide.  Indeed, *in just 41 days* (let alone 3.5 years) Create transmitted parts of the Copyrighted Works *between just three TVpads in the U.S.* and over 61,000

TVpad users in over 71 other countries.  Crocker Decl. ¶ 12; Blum Decl. ¶ 15.[8]

As to the second consideration, Plaintiffs have lost revenues and continue to lose revenues on account of Create's conduct.  Sokol MSJ Decl., Ex. 1 [Blum Rep.]. Moreover, Plaintiffs lose revenues in dozens of countries outside the U.S. because Create efficiently directs transmissions of Plaintiffs' Copyrighted Works from the United States to its foreign network users in those countries.  Crocker Decl. ¶ 12; Kim Decl. ¶ 11; Lee Decl. ¶ 11; Chang Decl. ¶ 11, Blum Decl.¶ 16; *L.A. News Serv. v. Reuters Tel. Int'l, Ltd.*, 340 F.3d 926, 928 (9th Cir. 2003) (overseas profits garnered from U.S. infringement compensable under Copyright Act); *Randles Films, LLC v. Quantum Releasing, LLC*, 551 F. App'x 370, 370-71 (9th Cir. 2014) (copyright holder "entitled to recover all damages caused by" infringement including "losses" to "worldwide distribution rights"); *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1147 (N.D. Cal. 2011) (infringement taking place in part in U.S. is actionable).

As to the third consideration, the value of Plaintiffs' Copyrighted Works, including some of the most famous shows in Pacific Rim history, is priceless. Indeed, Plaintiffs' shows are worldwide hits, including with Chinese language viewers, to whom Create promotes the Copyrighted Works through its HOT 韩剧社 ［Korean Drama］ Infringement Application, among other Infringement Applications. SUF ¶¶ 2-4, 43, 48; Kim Decl. ¶¶ 3, 7; Lee Decl. ¶¶ 3, 7; Chang Decl. ¶¶ 3, 7.

As for the fourth consideration, Create's U.S. TVpad distributors, network server hosts and publishers continue to infringe Plaintiffs' works.  The Court should award a large judgment to deter Create's co-conspirators, other piracy networks,

---

[8] Transmission from the U.S. to non-US TVpad users violates the transmit clause.  *See, e.g., NFL v. Primetime 24 Joint Venture*, 211 F.3d 10, 13 (2d Cir. 2000) ("PrimeTime's uplink transmission of signals captured in the United States is a step in the process by which NFL's protected work wends its way to a public audience" consisting of Canadian cable subscribers); *see also Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 137 (2d Cir. 2008) (noting that in NFL, "while the uplink transmission that took place in the United States was not, in itself, 'to the public,' the NFL court deemed it so because it ultimately resulted in an undisputed public performance" consisting of Canadian viewers).

and TVpad users, who are inured to transmission piracy without consequences.[9]  As for the fifth consideration, Create's conduct is presumed to be willful as pleaded, and it is proven willful in the MSJ.  SAC ¶¶ 73-76, 81, 100, 116, 122, 134, 148, 150, 158; Dkt. 181-1 at 1, 3-4, 14, 17-19.  As to the sixth consideration, Create strategically refused to provide the particular records to assess the extent and value of the infringing material.  Dkt. 170, 205.  As to the seventh, Create's infringement is unabated, and punitive measures are needed to discourage its ongoing conduct.  *See Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990).[10]

In sum, this Court should award maximum statutory damages per work.

## B.    Plaintiffs Are Entitled To Maximum Statutory Damages For Each Of Their Copyrighted Works.

Plaintiffs confirm round-the-clock infringement of Plaintiffs' Copyrighted Works on the Create Network in the United States with (at least) the Solive Infringement Application.  Crocker Decl. ¶ 7.  Create began promoting the Solive 24-hour live broadcast Infringement Application as early as January 19, 2012.  Sokol Decl., Exs. 4-6.  Plaintiffs thus seek maximum statutory damages for *each of its registered works for shows it first broadcast since January 19, 2012.*  In addition, Plaintiffs seeks maximum statutory damages for their timely registered works that first aired before January 19, 2012, but that Create offered "on demand" after January 2012.  According to Plaintiffs' damages expert, Mr. Sidney Blum, this amounts to 1,966 works, at $150,000 a piece, for a total of $294,900,000 in statutory copyright damages.  Blum Decl. ¶ 5.

As indicated, Create, through Solive, broadcasts 13 of Plaintiffs' networks' live, around the clock.  SUF ¶ 46.  Since January 19, 2012, Create and its U.S.

---

[9] *See, e.g.,* Lee Gyeong-min, *Hallyu [Korean Wave] Contents are Defenseless against Chinese TV pads,* ETNEWS, KOREA IT NEWS (July 30, 2014), http://english.etnews.com/20140730200002.

[10] *See also New Form, Inc. v. Tekila Films, Inc.*, 357 Fed. App'x 10, 11 (9th Cir. 2009) ("We have consistently held and stated that [copyright] statutory damages are recoverable without regard to the existence or provability of actual damages.").

1   distributors promoted Solive to watch Plaintiffs' live broadcasts.  SUF ¶¶ 29-30, 68,

2   70, 87, 150-53.  As Create intended, U.S. TVpad users avail themselves of the 24

3   hour broadcast service each half hour around the clock.  Crocker Decl. ¶ 7.  Further,

4   Plaintiffs filed numerous *ex parte* applications to compel production of documents,

5   computer logs and testimony concerning user data.  *See, e.g.*, Dkt. 142, 156, 165.

6   Where, as here, the defaulting defendant failed to provide discovery (*see* Dkt. 217

7   at 2), courts infer that infringement occurred in *every alleged instance*, giving rise

8   to statutory damages as to each.  *See, e.g., Blizzard Entm't*, 2010 U.S. Dist. LEXIS

9   85560, at *8-9 (awarding $85,478,600 in statutory damages and noting as to

10  number of infringements "Court must draw all reasonable inferences in Plaintiff's

11  favor on account of Defendant's failure to participate in the litigation process.");

12  *Nexon Am., Inc. v. Kumar*, 2012 U.S. Dist. LEXIS 47294, at *16 (C.D. Cal. Apr. 3,

13  2012) (accepting plaintiff's "reasonable approximation" of infringing acts on

14  default judgment and awarding $3,587,600).  Moreover, Plaintiffs' request

15  *materially undercounts* the number of infringed works, since Plaintiffs cannot

16  register the works  as fast as Create infringes them.  Sokol Decl. ¶ 3.

17          **C.      A Significant DMCA Statutory Damages Award Is
                      Warranted.**

18          Plaintiffs are additionally entitled to DMCA statutory damages, which

19  amount to a minimum of $200 (and maximum of $2,500) per act of circumvention.

20  Create *offers* its transmission encryption circumvention service for each of

21  Plaintiffs' 10 subscription channels to over 81,000 TVpad users presently known to

22  have used the Solive and KKS Infringement Applications.  Crocker Decl. ¶ 9.  This

23  amounts to, at minimum, $16,243,400 per Plaintiff.   *See* 17 U.S.C. § 1203(c)(3);

24  *Blizzard Entm't*, 2010 U.S. Dist. LEXIS 85560, at *8-9 (awarding $85,478,600 in

25  DMCA statutory damages in addition to copyright infringement award)[11]; Blum

26  _____

27  [11] As in *Blizzard*, Plaintiffs are entitled to recover separate damages for Create's copyright infringement and violation of the DMCA.  In any event, Plaintiffs subscription-only channels (e.g., MBC Sports, SBS Golf, KBS N Sports) largely broadcast Plaintiffs' unregistered works, which are not part of the copyright statutory damages claim.  *See* Kim Decl. ¶ 5; Lee Decl. ¶ 5; Chang Decl. ¶ 5.

28

Decl. ¶ 7.  Moreover, Plaintiffs are conservatively counting each Create offer or act of circumvention.  Rather than count Create's offers on a per work basis (or its multiple offers of each work), Plaintiffs have counted each unique Solive and KKS user who transmitted to or received transmissions of Plaintiffs' channels from *Plaintiffs' expert's three TVpads*.  Further, Plaintiffs have only begun to capture this massive *current* user data, at great expense, since May (after Create defied the Court's user data discovery order).  Dkt. 171, 187, 205.  Consequently, Plaintiffs' number represents just a fraction of the TVpad users who downloaded the Solive and KKS Infringement Applications, through which Create offers the decryption service.  Crocker Decl. ¶¶ 9-10.  Plaintiffs therefore request that the Court consider awarding more than $200 for each TVpad user known to have used the Solive and KKS Infringement Applications.  *See* Blum Decl. ¶ 7; Crocker Decl. ¶ 10.

### D.   A Significant Trademark Damages Award Is Warranted.

A trademark infringement plaintiff can be awarded actual trademark damages under Section 1117 of the Lanham Act.  *See* 15 U.S.C. § 1117(a)-(c).[12]  Available damages include disgorgement of profits (15 U.S.C. § 1117(a)(1)), lost licensing revenues (15 U.S.C. § 1117(a)(2)), and corrective advertising costs (*Adray v. Adry-Mart, Inc*., 76 F.3d 984, 988-89 (9th Cir. 1996)).  Further, given that Create's infringement was willful, Plaintiffs are entitled to treble damages.  15 U.S.C. § 1117(b); *Chanel, Inc. v. Lin*, 2010 U.S. Dist. LEXIS 61295, at *39-40 (N.D. Cal. May 7, 2010) (awarding treble trademark damages on default).  Plaintiffs' expert provides support for $15,111,254 in trademark damages.[13]  Blum Decl. ¶ 9.

### 3.   PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF.

---

[12] An award of damages under the Lanham Act is not impermissibly duplicative of a Copyright Act statutory damages award.  *Nintendo of Am. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) ("when a defendant violates both the Copyright Act and the Lanham Act, an award of both types of damages is appropriate.").

[13] *See also* Sokol MSJ Decl., Ex. 1 [Blum Rep.] ¶¶ 34, 40, 42, 52, 57, 96, 98, 108-09, 130.

Both the Copyright Act and the Lanham Act vest district courts with the power to issue permanent injunctive relief. 17 U.S.C. § 502(a); 17 U.S.C. § 1203(b); 15 U.S.C § 1116(a). Plaintiffs request that this Court enter a permanent injunction against Create to enjoin it and any entity with which it works in concert from infringing conduct, in the form of the concurrently-filed Proposed Order.

A permanent injunction is warranted in the intellectual property context when there is no reason to believe the infringement will otherwise cease. *Broadcast Music v. Blueberry Hill Family Rests.*, 899 F. Supp. 474, 483 (D. Nev. 1995) (Copyright Act); *Storz Performance, Inc. v. Moto Italia*, 2008 U.S. Dist. LEXIS 70240, at *10 (S.D. Cal. Sept. 15, 2008) (Lanham Act). Courts must consider the following factors in determining whether to issue a permanent injunction: (1) actual success on the merits; (2) likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships; and (4) whether an injunction will advance the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

All four prerequisites for injunctive relief are met here. First, Plaintiffs' success on the merits is virtually assured. *See generally* Dkt. 217; *see also Teller v. Dogge*, 2014 U.S. Dist. LEXIS 139632, at *13 (D. Nev. Sept. 30, 2014) (permanently enjoining defaulting defendant where "Plaintiff has achieved success on the merits for his copyright infringement claim through this court's prior order of summary judgment"). Second, without an injunction, Plaintiff would suffer irreparable injury from the ongoing damages to its goodwill and diversion of customers; the vast scale of Create's infringement also suggests irreparable harm would result in the absence of a permanent injunction. Sokol MSJ Decl., Ex. 1 [Blum Rep.]; Dkt. 181-7 [Kim MSJ Decl.] ¶ 7; Dkt. 181-5 [Lee MSJ Decl.] ¶ 7; Dkt. 181-10 [Chang MSJ Decl.] ¶ 7; *MGM Studios, Inc. v. Grokster, Ltd*., 518 F. Supp. 2d 1197, 1217 (C.D. Cal. 2007) (issuing permanent injunction because of the "enormous scale" of the infringement and because defendant "has and will continue to induce far more infringement than it could ever possibly redress with damages").

The balance of hardships favors Plaintiffs, who will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities. *See Teller*, 2014 U.S. Dist. LEXIS 139632, at *13 ("plaintiff is likely to suffer irreparable injury because, absent injunctive relief, defendant's trademark and copyright infringement is likely to continue.").  Finally, an injunction is in the public interest because "there is greater public benefit in securing the integrity of Plaintiffs' copyrights than in allowing [Defendant] to make Plaintiffs' copyrighted material available to the public" (*Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 408 (D. Md. 2006)) and because the "public has an interest in avoiding confusion" caused by the trademark infringement (*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc*., 559 F.3d 985, 993 n.5 (9th Cir. 2009)).

In sum, permanent injunctive relief is necessary and warranted here. Plaintiffs request the Court enter the concurrently-filed Proposed Order.

### 4. PLAINTIFFS ARE ENTITLED TO THEIR REASONABLE ATTORNEYS' FEES.

The Copyright Act gives the Court discretion to "award a reasonable attorney's fee to the prevailing party[.]"  17 U.S.C. § 505; 17 U.S.C. § 1203(b). The Court may consider, *inter alia*:  (1) the degree of success the party obtained; (2) frivolousness; (3) motivation; (4) the objective reasonableness of the non-prevailing party; and (5) "considerations of compensation and deterrence." *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006).  A finding of willful infringement is an "'important factor favoring'" an award of fees. *Curtis v. Illumination Arts, Inc.,* 33 F. Supp. 3d 1200, 1220 (W.D. Wash. 2014) (citation omitted).  Create *willfully* infringed Plaintiffs' copyrights and trademarks; it is therefore liable for Plaintiffs' reasonable attorneys' fees. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1105 (N.D. Cal. 2003) (fees awarded on default where willful copyright infringement shown); *Derek Andrew, Inc*, 528 F.3d at 702 (affirming attorneys' fee award in default judgment trademark case).  Local Rule

55-3 sets forth a default judgment fee schedule.  However, "[a]n attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment to have the attorney's fee fixed by the Court."  L.R. 55-3.  At the time of entry of default judgment, Plaintiffs will request the full amount of fees incurred, in the approximate amount of $1,300,000, along with costs.

5. **PLAINTIFFS ARE ENTITLED TO COSTS OF SUIT AND PRE- AND POST-JUDGMENT INTEREST.**

The Copyright Act and Lanham Act also permit the Court discretion to award costs.  17 U.S.C. § 505; 17 U.S.C. § 1203(b)(4); 15 U.S.C. § 1117(a)(3).  Plaintiffs intend to file an application to tax costs pursuant to L.R. 54.[14]  The Court also may award Plaintiffs *pre*-judgment interest accruing as of the start of infringement in the amount of $20,726,941.  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716 (9th Cir. 2004); *see* Blum Decl. ¶¶ 6, 8, 10, 11.  Plaintiffs are also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961(a), as sought in the Prayer for Relief.  Dkt. 110 at 40, ¶ 13.

## VI.  <u>CONCLUSION</u>

Plaintiffs respectfully request that this Court enter default judgment against Create and provide the relief requested herein.

Dated:   July 27, 2015       JONES DAY

                            By: */s/ Brent D. Sokol*
                            _____
                                Brent D. Sokol

                            Attorneys for Plaintiffs
                            MUNHWA BROADCASTING CORPORATION;
                            MBC AMERICA HOLDINGS, INC; SEOUL
                            BROADCASTING SYSTEM INTERNATIONAL,
                            INC.; and KBS AMERICA, INC.

---

[14] *See Deckers Outdoor Corp. v. ShoeScandal.com, LLC*, 2013 U.S. Dist. LEXIS 111407, at *8 (C.D. Cal. Aug. 7, 2013) (granting default judgment along with request for costs "subject to proof in an application to tax costs" to be filed later pursuant to L.R. 54).

20