Brent D. Sokol (State Bar No. 167537)
Charlotte S. Wasserstein (State Bar No. 279442)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071.2300
Telephone:  +1.213.489.3939
Facsimile:   +1.213.243.2539
bdsokol@JonesDay.com
cswasserstein@JonesDay.com

Attorneys for Plaintiffs
MUNHWA BROADCASTING CORPORATION;
MBC AMERICA HOLDINGS, INC; SEOUL
BROADCASTING SYSTEM INTERNATIONAL,
INC.; and KBS AMERICA, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNHWA BROADCASTING CORPORATION, *et al.*,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>CREATE NEW TECHNOLOGY (HK) CO. LTD., *et al.*<br><br>　　　　　Defendants. | Case No. CV14-4213-RGK-RZx<br><br>Hon. R. Gary Klausner<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT HUA YANG INTERNATIONAL (HK) CO. LTD.**<br><br>Date:　　　August 31, 2015<br>Time:　　　9:00 a.m.<br>Place:　　　Courtroom 850<br>Judge:　　　Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................... 1

II. FACTUAL BACKGROUND ................................................................. 3

III. PROCEDURAL HISTORY .................................................................. 6

IV. LEGAL STANDARD ............................................................................ 6

V. ARGUMENT .......................................................................................... 6

   1. DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST HUA YANG ........................................................................................ 7

      A. The *Eitel* Factors Weigh In Favor Of Entering Default Judgment Against Hua Yang .................................................. 7

      B. The Requirements Of Local Rule 55-1 Are Satisfied ............. 12

   2. PLAINTIFFS ARE ENTITLED TO RECOVER SIGNIFICANT COPYRIGHT, TRADEMARK AND DMCA DAMAGES FROM HUA YANG ............................................................................ 12

      A. Hua Yang Is Liable For Its Proportionate Share Of The Infringement Wrought By The Create Network ..................... 12

      B. The Court Should Award $150,000 In Statutory Copyright Damages Per Work ............................................... 13

      C. Plaintiffs Are Entitled To Maximum Statutory Damages For Each Of Their Copyrighted Works Apportioned By Hua Yang's Sales Period ...................................................... 16

      D. A Significant DMCA Statutory Damages Award Is Warranted ............................................................................... 17

      E. A Significant Trademark Damages Award Is Warranted ........ 18

   3. PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF ...................................................................... 18

   4. PLAINTIFFS ARE ENTITLED TO THEIR REASONABLE ATTORNEYS' FEES ............................................................................ 20

   5. PLAINTIFFS ARE ENTITLED TO COSTS OF SUIT AND PRE- AND POST-JUDGMENT INTEREST .................................... 20

VI. CONCLUSION ..................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

CASES

*AAA, Inc. v. AAA Auto Body & Repair, Inc.*,
  2015 U.S. Dist. LEXIS 25172 (N.D. Cal. Feb. 9, 2015) ................................... 10

*Adray v. Adry-Mart, Inc.*,
  76 F.3d 984 (9th Cir. 1996) ................................................................................ 18

*Amini Innovation Corp. v. KTY Int'l Mktg.*,
  768 F. Supp. 2d 1049 (C.D. Cal. 2011) ................................................................ 7

*Babylon Landfill Joint Def. Grp. v. 1042 Collision Repairs, Inc.*,
  2014 U.S. Dist. LEXIS 119202 (E.D.N.Y. Aug. 26, 2014) ............................... 13

*Blizzard Entm't v. Reeves*,
  2010 U.S. Dist. LEXIS 85560 (C.D. Cal. Aug. 10, 2010) .......................... 11, 17

*BottleHood, Inc. v. Bottle Mill*,
  2012 U.S. Dist. LEXIS 57381 (S.D. Cal. Apr. 23, 2012) ................................... 11

*Broadcast Music v. Blueberry Hill Family Rests.*,
  899 F. Supp. 474 (D. Nev. 1995) ....................................................................... 18

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008) ............................................................................... 15

*Curtis v. Illumination Arts, Inc.*,
  33 F. Supp. 3d 1200, 1220 (W.D. Wash. 2014) ................................................. 20

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
  528 F.3d 696 (9th Cir. 2008) ................................................................... 6, 11, 20

*Disney Enters., Inc. v. Delane*,
  446 F. Supp. 2d 402 (D. Md. 2006) ................................................................... 19

*Domanus v. Lewicki,*
   742 F.3d 290 (7th Cir. 2014) ........................................................................ 14

*Eitel v. McCool,*
   782 F.2d 1470 (9th Cir. 1986) ........................................................... 7, 11, 12

*Elektra Entm't Grp., Inc. v. Crawford,*
   226 F.R.D. 388 (C.D. Cal. 2005) ................................................................ 12

*Entm't & Sports Programming Network, Inc. v. Edinburg Cmty. Hotel, Inc.,*
   735 F. Supp. 1334 (S.D. Tex. 1986) ........................................................... 10

*Geddes v. United Fin. Grp.,*
   559 F.2d 557 (9th Cir. 1977) ......................................................................... 6

*Harris v Emus Records Corp.,*
   734 F.2d 1329 (9th Cir. 1984) .................................................................... 14

*Hounddog Prods., LLC v. Empire Film Grp., Inc.,*
   826 F. Supp. 2d 619 (S.D.N.Y. 2011) ....................................................... 14

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.,*
   559 F.3d 985 (9th Cir. 2009) ...................................................................... 19

*L.A. News Serv. v. Reuters Tel. Int'l, Ltd.,*
   340 F.3d 926 (9th Cir. 2003) ...................................................................... 15

*Landstar Ranger, Inc. v. Parth Enters.,*
   725 F. Supp. 2d 916 (C.D. Cal. 2010) .......................................................... 7

*MGM Studios, Inc. v. Grokster, Ltd.,*
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) ...................................................... 19

*Microsoft Corp. v. Nop,*
   549 F. Supp. 2d 1233 (E.D. Cal. 2008) ...................................................... 14

*Microsoft Corp. v. Silver Star Micro, Inc.,*
   2008 U.S. Dist. LEXIS 1526 (N.D. Ga. Jan. 9, 2008) ............................... 10

ii

*New Form, Inc. v. Tekila Films, Inc.*,
    357 Fed. App'x 10 (9th Cir. 2009)................................................................16

*Nexon Am., Inc. v. Kumar*,
    2012 U.S. Dist. LEXIS 47294 (C.D. Cal. Apr. 3, 2012)....................................17

*NFL v. Primetime 24 Joint Venture*,
    211 F.3d 10 (2d Cir. 2000) ..............................................................................14

*Nintendo of Am. v. Dragon Pac. Int'l*,
    40 F.3d 1007 (9th Cir. 1994)............................................................................18

*Peer Int'l Corp. v. Pausa Records, Inc.*,
    909 F.2d 1332 (9th Cir. 1990)..........................................................................16

*Philip Morris U.S.A. Inc. v. Castworld Prods.*,
    219 F.R.D. 494 (C.D. Cal. 2003) .....................................................................11

*Randles Films, LLC v. Quantum Releasing, LLC*,
    551 F. App'x 370 (9th Cir. 2014)......................................................................15

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010) ...........................................................................................7

*Shropshire v. Canning*,
    809 F. Supp. 2d 1139 (N.D. Cal. 2011).............................................................15

*Stanley Black & Decker, Inc. v. D&L Elite Invs., LLC*,
    2014 U.S. Dist. LEXIS 104191 (N.D. Cal. July 28, 2014) ...............................13

*Stanley Black & Decker, Inc. v. D&L Elite Invs., LLC*,
    2014 U.S. Dist. LEXIS 104202 (N.D. Cal. June 20, 2014) ...............................13

*Storz Performance, Inc. v. Moto Italia*,
    2008 U.S. Dist. LEXIS 70240 (S.D. Cal. Sept. 15, 2008) .................................18

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.*,
    933 F. Supp. 918 (C.D. Cal. 1996)....................................................................11

*Taylor Made Golf Co. v. Carsten Sports, Ltd.*,
  175 F.R.D. 658 (S.D. Cal. 1997) ........................................................ 12

*Teller v. Dogge*,
  2014 U.S. Dist. LEXIS 139632 (D. Nev. Sept. 30, 2014) .................. 19

*Thane Int'l., Inc. v. Trek Bicycle Corp.*,
  305 F.3d 894 (9th Cir. 2002) ............................................................. 10

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
  507 F. Supp. 2d 1096 (C.D. Cal. 2007) ............................................... 9

*UMG Recordings, Inc. v. MP3.com, Inc.*,
  2000 U.S. Dist. LEXIS 17907 (S.D.N.Y. Nov. 14, 2000) .................. 14

*Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*,
  447 F.3d 769 (9th Cir. 2006) ............................................................. 20

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................... 19

**STATUTES**

15 U.S.C. § 1114 ........................................................................... 10, 18

15 U.S.C. § 1116(a) .............................................................................. 18

15 U.S.C. § 1117(a)(1) .......................................................................... 18

15 U.S.C. § 1117(a)(2) .......................................................................... 18

15 U.S.C. § 1117(a)(3) .......................................................................... 20

15 U.S.C. § 1117(a)-(c) ......................................................................... 18

15 U.S.C. § 1117(b) .............................................................................. 18

15 U.S.C. § 1125(a) .............................................................................. 10

17 U.S.C. § 502(a) ................................................................................ 18

17 U.S.C. § 504(c) ................................................................................ 14

17 U.S.C. § 505 ........................................................................................... 20

17 U.S.C. § 1201(a)(2) ................................................................................... 9

17 U.S.C. § 1201(b)(1) ................................................................................... 9

17 U.S.C. § 1201(b)(2) ................................................................................... 9

17 U.S.C. § 1203(b) ................................................................................. 18, 20

17 U.S.C. § 1203(b)(4) .................................................................................. 20

17 U.S.C. § 1203(c)(3) .................................................................................. 17

28 U.S.C. § 1961(a) ...................................................................................... 20

Cal. Bus. & Prof. Code §§ 17200, *et seq*. ................................................. 11

**OTHER AUTHORITIES**

ETNEWS, KOREA IT NEWS (July 30, 2014),
    http://english.etnews.com/20140730200002 ...................................... 15

Fed. R. Civ. P. 55 ........................................................................................ 1, 6

Local Rule 54 ................................................................................................ 20

Local Rule 55-1 ............................................................................................ 12

Local Rule 55-3 ............................................................................................ 20

1

2

## I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 55(b)(2), Plaintiffs Munhwa Broadcasting Corporation, MBC America Holdings, Inc., Seoul Broadcasting System International, Inc. and KBS America, Inc. (collectively "Plaintiffs") hereby move for default judgment against Defendant Hua Yang International (HK) Co. Ltd. ("Hua Yang") on the grounds that it did not file an Answer to Plaintiffs' Second Amended Complaint ("SAC"), default has been entered against it (Dkt. 197), and Plaintiffs have sufficiently pleaded that Hua Yang is liable for all eight claims in the SAC, which all arise out of its participation in a global piracy network that effectuated willful copyright and trademark infringement on a massive scale (*see* Dkt. 110).

Plaintiffs and/or their respective parent companies are the three largest South Korean television networks.  Plaintiffs collectively employ over a hundred employees in Los Angeles, and sub-license their networks' programs and movies in the U.S. to DIRECTV and TimeWarner Cable, among other service providers, which in turn retransmit the content to U.S. fee-paying subscribers.

For several years, Hua Yang played a central role in the piracy ring controlled and operated by its related corporate entity, Defendant Create New Technology (HK) Co. Ltd. ("Create").  As set forth in more detail in the SAC and Plaintiffs' motion for summary judgment ("MSJ,") Create is a set-top box manufacturer and P4P network operator that boasts of 15 authorized U.S. distributors, dozens more worldwide, and over 3 million in worldwide sales of its TVpad network devices—which translates into a billion dollars in estimated revenue.  Sokol Decl., Exs. 1-2, 7-8; Wasserstein Decl., Ex. 76 [ad Create ran on its network in May 2012 stating "3 million units sold worldwide"]; *id.*, Ex. 47 [January 2014 ad stating 2 million sold]; Sokol Decl., Ex. 9 [Song Dep. Tr.]; Blum Decl. ¶¶

12-15.[1]  *For over three years*, Create has willfully infringed Plaintiffs' *oeuvre* in the U.S., targeting and touting free transmission of Plaintiffs' entire creative output, live and "on demand," via Create's TVpad devices and network.  Sokol Decl., Exs. 3-5, 10; SUF ¶¶ 18, 19, 38, 41-43, 46, 47-49, 50, 68, 72, 150.  Moreover, Create's estimated billion dollars in worldwide revenue is predicated, in substantial part, on U.S. infringement of Plaintiffs' works, because each week, Create also directs transmission of Plaintiffs' works between the U.S. and tens of thousands of its network users in over 71 countries around the world.  Crocker Decl.  ¶ 12.

Meanwhile, Hua Yang played a central role in that infringement from at least January 19, 2012 through at least January 27, 2014.  Plaintiffs alleged and the evidence shows that Hua Yang promoted TVpads and recruited distributors on two Web sites, at the domains www.tvpad.hk and www.itvpad.com, specifically for infringing Plaintiffs' U.S. copyrighted works ("Copyrighted Works") and trademarks.  Further, Create and Hua Yang claimed to have "merged" their TVpad sales and distributor recruiting Web sites at www.itvpad.com as of January 27, 2014, which has been recently redirected to the same web pages at www.mtvpad.com.

Accordingly, Plaintiffs request that the Court enter default judgment against Hua Yang, and award Plaintiffs permanent injunctive relief, statutory and actual damages for willful infringement, entitlement to attorneys' fees and costs, and pre- and post-judgment interest, based on Hua Yang's role in Create's transmission piracy ring that continues to willfully infringe Plaintiffs' U.S. copyrighted works Copyrighted Works and trademarks on an immense scale and for a massive profit.

---

[1] Citations to "Sokol Decl." refer to the concurrently-filed Declaration of Brent D. Sokol, citations to "SUF" refer to the Statement of Undisputed Facts filed in support of Plaintiffs' MSJ, Dkt. 181-2, citations to "Wasserstein Decl." refer to the Declaration of C. Wasserstein filed in support of the MSJ, Dkt. 183, and citations to "Sokol MSJ Decl." refer to the Declaration of B. Sokol, filed in support of the MSJ, Dkt. 175-1, which attached documents filed under seal.

## II.   FACTUAL BACKGROUND

Plaintiffs comprise the three most watched South Korean television networks SAC ¶¶ 2-3; SUF ¶ 62.  Create operates, controls and directs a massive, closed, centrally-managed P4P broadcast transmission piracy network, on which users of Create's $250 to $300 transmission apparatuses—TVpads—view hundreds of thousands of pirated television programs and live broadcasts without payment to the copyright holders. Dkt. 110; 181-183; Sokol Decl., Ex. 12.  Create provides the content transmission application software that transmits the infringing content that Create links to, promotes and displays through the "TVpad store" on TVpads' on-screen menus.  SUF ¶¶ 24, 63, 68-70, 87-88, 150-57, 161.  Certain of these applications, including but not limited to Solive, KKS, N+, the "DB" set of applications, and HOT 韩剧社[Korean Drama] (collectively the "Infringement Applications"), have as their main function and appeal the transmission of Plaintiffs' Copyrighted Works to the public.  SUF ¶¶ 39-50, 62-63, 67-68.

As early as June 21, 2011, Create began selling the TVpad in the United States.  Sokol Decl., Ex. 13.  At least as early as January 19, 2012, Create began to promote the Solive [South Korea Live] Infringement Application on its website; Solive streams 12 of Plaintiffs' networks' broadcasts live on the TVpad network. Sokol Decl., Exs. 4-6; SUF ¶ 46.  In 2013, Create continued its promotion of the Infringement Applications with the launch of its TVpad2 device.  Create specifically promoted Solive to watch MBC, SBS and KBS live television broadcasts.  Wasserstein Decl., Ex. 93; Sokol Decl., Ex. 11.  In January 2014, Create introduced the TVpad3 and continued to promote the Infringement Applications, including Solive.  Dkt. 181-1 at 3-4.  In short, Create infringes virtually the entire library of Plaintiffs' Copyrighted Works by transmission to the public, each day, each hour, including each new work as soon as it is shown. Wasserstein Decl., Ex. 11 [Crocker Rep.] ¶ 10, Chang Decl. ¶ 10; Lee Decl. ¶ 10 ; Kim Decl. ¶10; Crocker Decl.¶ 7.  Hua Yang played a central role in the Create

3

transmission piracy network in two ways.

*First*, for at least the period of January 19, 2012 through January 27, 2014, Hua Yang provided TVpad promotional, sales, marketing and distributor recruitment services for Create at the Web sites www.tvpad.hk and www.itvpad.com.  Sokol Decl. ¶ 4; *id*., Ex. 14 [January 7, 2012 screenshot of  Hua Yang website selling TVPads and providing Create's phone number]; *id*., Ex.; *id*., Ex. 15 [itvpad.com blog post entitled "Hua Yang Blog"]; *id*., Ex. 16 [Hua Yang website announcing "HUA YANG INTERNATIONAL is the exclusive authorized e-distributor" of TVpads].  It also recruited distributors of TVpads.  Sokol Decl., Ex. 17 [Hua Yang website soliciting applications for distributorships].  Moreover, Hua Yang's website promoted the Infringement Applications.  Sokol Decl., Ex. 18 [itvpad.com blog post promoting Solive]; *id*., Ex. 17 [Web site with Hua Yang copyright explaining Korean content is available live and for free on TVpads]; *id*., Ex. 19 [September 13, 2013 www.itvpad.com Web page promoting DB Infringement Application] *id*., Ex. 20 [website with Hua Yang copyright promoting Solive].  It even touted the Solive's ability to play Plaintiffs' channels in particular. Sokol Decl., Ex. 21 [itvpad.com blog post listing Plaintiffs' channels as available on TVpad2 devices].

The SAC includes a screenshot of one such promotion, which brazenly advertises Plaintiff MBC's programming along with MBC's logo; Hua Yang has been promoting TVpads in this way since at least September 2012.  SAC ¶ 65; Sokol Decl., Ex. 22 [September 21, 2012 kr.tvpad.hk Web site showing Hua Yang promoted MBC and KBS programming, complete with trademarked logos].  Hua Yang also provided links to download the Infringement Applications.  *Id*., Ex. 23 [September 21, 2012 kr.tvpad.hk Web site showing Hua Yang promoted the Infringement Applications].  Moreover, as early as January 7, 2012 Hua Yang specifically targeted U.S. consumers and distributors and featured a U.S. 1-800 retail sales telephone number.  *Id*., Ex. 14.

4

In addition, Hua Yang recruited other distributors to sell TVpads, a surprising act for a worldwide exclusive online e-distributor, unless of course the worldwide exclusive online distributor is really the product manufacturer, Create, in disguise. *Id.*, Ex. 17. Tellingly, on its authorized distributor Web page, Create lists Hua Yang, a Hong Kong company, as having the same address in Shenzhen, China, 10/F JinFeng Building 1001, ShangBu South Road FuTian District, as the 2011-2012 registered address for Create's China manufacturing headquarters, Shenzhen Great Vision Technology Co. Ltd. Sokol Decl., Exs. 24, 34. By January 2014, Create dropped the pretense of Hua Yang as a separate consumer facing entity, and claimed they "merged" two of their Web sites, www.creatent.net and www.itvpad.com, to create the TVpad mall. SAC ¶ 67; Sokol Decl., Ex. 25 [Website announcing merger of Create and Hua Yang's websites]. Create and Hua Yang continue to operate the www.itvpad.com Web site, along with the same featured illicit blogs and promotions. At least until November 28, 2014, Hua Yang and Create promoted the Korean television retransmission software in English at www.en.itvpad.com. *Id.* ¶ 67.

*Second*, Hua Yang's and Create's intertwined violation of Plaintiffs' rights is underscored by their corporate relationship. In addition to sharing an address in Shenzhen, China, Hua Yang and Create are both interrelated with a company called Yukun. Sokol Decl., Ex. 26 [Hua Yang website bears the Yukun name]; *id.*, Ex. 27 [Whois information for creatent.net showing Yukun is the registry administrator for the domain]; *id.*, Ex. 28 [Chinese public record showing transfers of shares between Yukun and Create on page nine]. Create has now transferred all of its shares to another Yukun subsidiary, Create Samoa. SAC ¶ 54. Tian Zhigang, the former Create managing director, is a Yukun shareholder. Sokol Decl., Ex. 28 at 9. Further, the principal shareholder of Hua Yang, Chen Xia, shares the same address as Create's alter ego, Shenzhen Great Vision Technology Co. Ltd. (for which Tian Zhigang also serves as a director). Sokol Decl., Exs. 29-30. Hua Yang held out

5

1  Create's telephone number as its own, on Hua Yang's website portion dedicated to

2  "After-Sale Service" of TVpads.  Sokol Decl., Ex. 3; *id*., Ex. 12.  In short, Hua

3  Yang, through its website and corporate ties with Create, played a critical role in

4  the promotion and facilitation of the TVpad piracy network and the distribution of

5  the devices themselves specifically to violate Plaintiffs U.S. rights.

6  **III.  PROCEDURAL HISTORY**

7  　　On November 28, 2014, Plaintiffs filed the SAC, which names Hua Yang.

8  Dkt. 104, 110.  Hua Yang never filed an Answer to the Complaint.  On April 28,

9  2015, the Court ruled that "service of process on Hua Yang was proper" and

10  granted Plaintiffs' request for the entry of default against it.  Dkt. 197.  On April 20,

11  2015, Plaintiffs filed their MSJ, which presents arguments and evidence supporting

12  their claims that the Create network, which Hua Yang helped promote, willfully

13  infringes Plaintiffs' copyrights and trademarks.  Dkt. 181-83.  On May 12, 2015,

14  the Court granted Plaintiffs' MSJ against Create's local distributor, Defendant Du

15  Hyun Song, finding him personally liable for willful copyright and trademark

16  infringement.  Dkt. 217.  The Court, however, denied the MSJ "as moot with

17  respect to Create, because default had already been entered against it.  *Id*. at 2.

18  **IV.  LEGAL STANDARD**

19  　　Rule 55(b) of the Federal Rules of Civil Procedure permits a default

20  judgment following entry of default pursuant to Rule 55(a).  A court must presume

21  the truth of the complaint's factual allegations on a motion for default judgment,

22  except with respect to the amount of damages.  *Geddes v. United Fin. Grp*., 559

23  F.2d 557, 560 (9th Cir. 1977).

24  **V.  ARGUMENT**

25  　　Plaintiffs have sufficiently *pleaded* each of the eight claims in the SAC

26  against Hua Yang, which is all that is required on default judgment.  *See Derek*

27  *Andrew, Inc. v. Poof Apparel Corp*., 528 F.3d 696, 702 (9th Cir. 2008) (on default

28  motion "all factual allegations in the complaint are deemed true, *including the*

*allegation of . . . willful infringement*") (emphasis added).  Moreover, Plaintiffs have already filed an MSJ with voluminous evidence supporting the willful infringement in which Hua Yang participated, and substantiate the other claims herein.  Dkt. 181-83.

### 1.   DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST HUA YANG.

#### A.   The *Eitel* Factors Weigh In Favor Of Entering Default Judgment Against Hua Yang.

In the Ninth Circuit, a district court must examine the following factors on a motion for default judgment:  (1) prejudice to plaintiff, (2) merits of the substantive claim, (3) sufficiency of the complaint, (4) sum of money at stake, (5) possibility of a dispute on material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Each factor militates in favor of default judgment here.

As to the first *Eitel* factor, prejudice exists where "[i]f the Court does not enter a default judgment, it will allow Defendant to avoid liability by not responding to Plaintiff's claims."  *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011).  Here, Hua Yang's default renders it impossible for Plaintiffs to obtain relief against by any other procedural vehicle.

"The second and third *Eitel* factors assess the substantive merit of plaintiff's claim and the sufficiency of its pleadings."  *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).  As shown below, Plaintiffs sufficiently pleaded eight claims against Hua Yang (Dkt. 110), submitted evidence to support its co-conspirator Create's willful copyright and trademark infringement (Dkt. 181-183), and herein establish the substantive merits of the other claims.

As to the first claim for public performance copyright infringement, Plaintiffs' SAC pleads sufficient facts to establish Hua Yang's copyright infringement liability, and the MSJ proves those claims are meritorious.  The Court held in ruling on the MSJ that "Plaintiffs have clearly shown ownership of the

7

allegedly infringed material" and noted that each Plaintiff had proven it owned the relevant copyrights.[2]  Dkt. 217 at 3.  Plaintiffs' MSJ presents extensive legal argument and voluminous evidence demonstrating Create is *contributorily* liable for copyright infringement because it (a) induced others to infringe by promoting the use of TVpads to watch Plaintiffs' works, and (b) materially contributed to that infringement by providing the Infringing Applications, and the TVpad devices and network they exclusively run on.  Dkt. 181 at 8-13.[3]  Hua Yang likewise provided TVpads and the Infringing Applications to TVpad users, while specifically promoting both to violate Plaintiffs' copyright rights.  Sokol Decl., Exs. 20, 21, 23.

Plaintiffs' second claim against Hua Yang is for reproduction and distribution copyright violations.  The SAC alleges that Create, with Hua Yang's assistance, made Plaintiffs' Copyrighted Works available not only for live streaming but also in video on-demand ("VOD") format.  SAC ¶¶ 1, 7, 10, 22, 55-56, 90.  Create's network servers contain vast libraries of Plaintiffs' Copyrighted Works, uploaded and stored with Create's permission, and accessed with Create's help by Create network users who employ the VOD Infringement Applications that Create features and promotes for its TVpads.  SUF ¶¶ 18-19, 42, 47, 48, 88-89. Hua Yang induced and contributed to such distribution and reproduction by promoting on its Web site downloads of the VOD  Infringement Applications, and use of the Applications specifically to violate Plaintiffs' rights,  so that the reproduced works could be accessed from the piracy libraries.  Sokol Decl., Ex. 32 [3429 website promoting VOD applications on TVpads, with Hua Yang copyright]; *id*., Ex. 33 [3519 website promoting VOD applications with Hua Yang contact information].

[2] Moreover, as works of foreign origin, they need not be registered to be enforced in the United States. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010) (citing 17 U.S.C. § 411(a)).

[3] For example, the Court already ruled that providing the Infringing Applications gives rise to contributory liability, as does selling TVpads with the Infringing Applications pre-installed and advertising the use of TVpads to watch the Copyrighted Works.  Dkt. 217 at 5.

8

Plaintiffs have also properly pleaded and substantiated their third claim, for violation of the DMCA, 17 U.S.C. §§ 1201, *et seq*., arising out of Hua Yang's role in assisting Create in the promotion and distribution of TVpads to watch Plaintiffs Copyrighted works in particular, and its promotion and facilitation of Solive Infringement Application downloads by TVpad users in particular.  Plaintiffs demonstrated that *Create* violated Section 1201(a)(2) because:  (1) Plaintiffs own Copyrighted Works; (2) protected by a technological measure, namely encryption of their live broadcast transmissions such that they may only be viewed live *in Korea* by lawful users who are provided with cable and/or satellite equipment to decrypt the signals for their personal use,[4] which Create has circumvented; (3) that third parties in the U.S., namely TVpad users, can now access as a result of Hua Yang's promotion and download links to the Solive Application; (4) without authorization from Plaintiffs, in a manner that (5) infringes (by  U.S. retransmission on the Create network) or facilitates infringement (by TVpad user requests for U.S. transmission on the Create network) because of this Korean live broadcast subscription channel Infringement Application that (6) is "(i) designed or produced primarily for circumvention; (ii) made available despite only limited commercial significance other than circumvention; [and/or] (iii) marketed[5] for use in circumvention of the controlling technological measure." *Ticketmaster L.L.C. v. RMG Techs., Inc*., 507 F. Supp. 2d 1096, 1111 (C.D. Cal. 2007) (quotation and citation omitted); 17 U.S.C. § 1201(a)(2).  Similarly, as to the DMCA claim under 17 U.S.C. § 1201(b)(1), Plaintiffs have shown that Create's Korean live broadcast transmission service and Solive Infringement Application, promoted and linked to by Hua Yang coupled with its sale of TVpad devices to U.S. consumers,

---

[4] Kim Decl. ¶ 5; Lee Decl. ¶ 5; Chang Decl. ¶ 5.

[5] Create marketed the Infringement Applications as a way to obtain the encrypted subscription-only channels. *See, e.g.,* Sokol Decl., Ex. 6.  And Create approved and funded ads specifically touted the Infringement Applications' ability to transmit Plaintiffs' subscription-only programming, including its sports programming.  SUF ¶¶ 28, 30, 80-81, 109, 111, 153; Wasserstein Decl., Exs. 68-70.

1   circumvented Plaintiffs' technological measures that protect their rights in the

2   Copyrighted Works.  *See* 17 U.S.C. § 1201(b)(2).  As such, Plaintiffs have

3   adequately pleaded and proved both DMCA claims as against Create.  *See*

4   *Ticketmaster*, 507 F. Supp. 2d at 1112 (finding violations under both DMCA

5   sections).  Likewise, Hua Yang is contributorily liable for Create's DMCA

6   violations because it promotes the Korean live broadcast transmission service and

7   provided consumers with links to the Solive Infringement Application for the

8   purpose of circumvention.  *See Microsoft Corp. v. Silver Star Micro, Inc.,* 2008

9   U.S. Dist. LEXIS 1526, at *24 n.8 (N.D. Ga. Jan. 9, 2008) ("The Court analyzes

10   contributory and vicarious liability under the DMCA in the same manner as

11   determining personal liability for violations of the Copyright Act").

12        As for Plaintiffs' fourth claim, the MSJ shows Hua Yang, together with

13   Create, infringed Plaintiffs' trademarks in violation of the Lanham Act, 15 U.S.C. §

14   1114(1), as this Court recognized.  Dkt. 181-1 at 16-17; Dkt. 217 at 6-7; *see Entm't*

15   *& Sports Programming Network, Inc. v. Edinburg Cmty. Hotel, Inc*., 735 F. Supp.

16   1334, 1341-42 (S.D. Tex. 1986) (holding illicit HBO broadcasts infringed HBO's

17   trademarks); Sokol Decl., Ex. 22 [Web site showing Hua Yang promoted MBC and

18   KBS trademarked logos].  Similarly, in the fifth claim for unfair competition under

19   15 U.S.C. § 1125(a), Plaintiffs alleged Hua Yang used Plaintiffs' marks so as to

20   lead consumers to mistakenly believe that Plaintiffs approved or endorsed such use,

21   in violation of the Lanham Act.  SAC ¶¶ 1, 127-28, 138, 145, 155.  In fact, Create

22   and Hua Yang's use of Plaintiffs' marks *has* caused consumer confusion.

23   Wasserstein Decl., Ex. 8 [Lyu Dep.] 99:2-6; Sokol MSJ Decl., Ex. 1 [Blum Report]

24   ¶¶ 39, 54.  As such, default judgment is warranted.[6]  Plaintiffs have also pleaded

25   and proven their sixth cause of action for common law trademark infringement.

26   _____

27   [6] *See AAA, Inc. v. AAA Auto Body & Repair, Inc*., 2015 U.S. Dist. LEXIS 25172,  at *11 (N.D. Cal. Feb. 9, 2015) (granting default judgment on Lanham Act

28   unfair competition claim because defendant's use of the marks "may have caused confusion among consumers").

1    *See Thane Int'l., Inc. v. Trek Bicycle Corp*., 305 F.3d 894, 901 n.3 (9th Cir. 2002)

2    (same standard applied for common law trademark infringement as 15 U.S.C. §

3    1114 federal trademark infringement); *AAA*, 2015 U.S. Dist. LEXIS 25172, at *13

4    (on default judgment, "[b]ecause AAA has sufficiently pleaded its claim for federal

5    trademark infringement, it has also adequately pleaded its claim for common law

6    trademark infringement.").

7        Plaintiffs' seventh claim is for violation of California's unfair competition

8    statute ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.  A violation of a

9    substantive law such as the Copyright or Lanham Act constitutes a *per se* violation

10   of the UCL.  *See BottleHood, Inc. v. Bottle Mill,* 2012 U.S. Dist. LEXIS 57381, at

11   *16 (S.D. Cal. Apr. 23, 2012) ("Plaintiff has adequately pled the trademark and

12   copyright claims").  As for Plaintiffs' eighth claim, courts see "no difference

13   between statutory unfair competition and common law unfair competition."

14   *Summit Tech., Inc. v. High-Line Med. Instruments, Co*., 933 F. Supp. 918, 943 (C.D.

15   Cal. 1996).

16       Finally, Hua Yang is a *willful* copyright and trademark infringer.  Plaintiffs

17   have pleaded and *proved* Create's willfulness.  SAC ¶¶ 1, 73-76, 81, 100, 116, 122,

18   134, 148, 150, 158; Dkt. 181-1 at 1, 3-4, 14, 17-19.  Likewise, Hua Yang

19   participated in much of the same inducement and material contribution activity as

20   Create, even using the same physical address as Create headquarters and the same

21   9910 phone number.  Sokol Decl., Exs. 24, 34.  Moreover, on default judgment, "all

22   factual allegations in the complaint are deemed true, ***including the allegation of***

23   ***willful infringement***."  *Derek Andrew,* 528 F.3d at 702 (emphasis added).

24       The fourth *Eitel* factor requires the Court to "consider the amount of money

25   at stake in relation to the seriousness of Defendant's conduct."  *Philip Morris*

26   *U.S.A. Inc. v. Castworld Prods.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003) (citation and

27   quotation marks omitted).  When widespread infringement has occurred, courts

28   regularly award significant statutory damages.  *See, e.g., Blizzard Entm't v. Reeves*,

1   2010 U.S. Dist. LEXIS 85560, at *8-9 (C.D. Cal. Aug. 10, 2010) (awarding

2   $85,478,600 in statutory damages and noting with respect to number of

3   infringements "Court must draw all reasonable inferences in Plaintiff's favor on

4   account of Defendant's failure to participate in the litigation process."); *see also*

5   *Philip Morris U.S.A.,* 219 F.R.D. at 500 (willfulness and failure to participate in the

6   judicial process justified $2,000,000 in Lanham Act statutory damages); *Taylor*

7   *Made Golf Co. v. Carsten Sports, Ltd*., 175 F.R.D. 658, 663 (S.D. Cal. 1997)

8   ("[D]oubts about the actual assessment of damages [awarded on default in

9   trademark case] will be resolved against the party who frustrates proof of such, and

10  the factfinder may calculate damages at the highest reasonably ascertainable

11  value.'") (citation omitted).

12          Because "Plaintiffs filed a well-pleaded Complaint alleging the elements

13  necessary to prevail[,]" and Hua Yang failed to answer Plaintiffs' SAC, the fifth

14  *Eitel* factor, which considers the possibility of dispute as to any material facts in the

15  case, favors default judgment.  *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D.

16  388, 393 (C.D. Cal. 2005).  As to the sixth *Eitel* factor, there is no indication Hua

17  Yang's failure to answer is the result of excusable neglect.  Dkt. 205, 212; *See*

18  *Wecosign*, 845 F. Supp. 2d at 1082.  The last *Eitel* factor takes into account the

19  preference of the Federal Rules for deciding cases on the merits.  *Eitel*, 782 F.2d at

20  1472.  But Hua Yang should not escape a default judgment because it elected to

21  ignore this lawsuit.

22          **B.     The Requirements Of Local Rule 55-1 Are Satisfied.**

23          Default was entered against Hua Yang on April 28, 2015 (Dkt. 197) with

24  respect to Plaintiffs' SAC (Dkt. 110).  Because it is a foreign corporation, Hua

25  Yang is not an infant or incompetent person, and the Servicemembers Civil Relief

26  Act does not apply.  Sokol Decl. ¶ 1.  Notice of the motion was provided to Hua

27  Yang via express mail to its registered agent for service.  Sokol Decl. ¶ 2.

28

**2.** **PLAINTIFFS ARE ENTITLED TO RECOVER SIGNIFICANT COPYRIGHT, TRADEMARK AND DMCA DAMAGES FROM HUA YANG.**

**A.** **Hua Yang Is Liable For Its Proportionate Share Of The Infringement Wrought By The Create Network.**

Hua Yang assisted Create in the promotion of the TVpad retransmission piracy network and recruitment of distributors from at least the period of January 19, 2012 through January 27, 2014.  Plaintiffs seek damages against Create for period of January 19, 2012 through the filing of the default judgment motion.  As such, Hua Yang should be held liable for its proportional share of the damages assessed against Create, namely 58%, based on the amount of time during which Hua Yang was held out by Create as a principal in Create's piracy scheme.  Blum Supp. Decl. ¶ 7.  Moreover, there is an extensive record of Hua Yang promoting the Solive application specifically to infringe Plaintiffs broadcasts.  Sokol Decl., Ex. 22-24.  Hua Yang's decision not to answer this lawsuit after proper service renders a more precise apportionment impossible, and therefore the Court may award damages based on a reasonable approximation of Hua Yang's share of the liability, given Plaintiffs' evidence to support it.  *See, e.g., Stanley Black & Decker, Inc. v. D&L Elite Invs., LLC*, 2014 U.S. Dist. LEXIS 104202, at *58 (N.D. Cal. June 20, 2014) (finding on default judgment "the most reasonable approach is to give [plaintiff] the benefit of the doubt" as to the plaintiff's assumptions underlying a chronological apportionment of damages where evidence presented in support)[7].[8]

_____

[7] The cited report and recommendation was accepted in pertinent part by *Stanley Black & Decker, Inc. v. D&L Elite Invs., LLC*, 2014 U.S. Dist. LEXIS 104191 (N.D. Cal. July 28, 2014).

[8] *See also Babylon Landfill Joint Def. Grp. v. 1042 Collision Repairs, Inc.*, 2014 U.S. Dist. LEXIS 119202, at *14-16 (E.D.N.Y. Aug. 26, 2014) (each defaulting defendant liable on per capita basis where plaintiff lacked "access to the evidence necessary to support a determination of the proportionate share of each Defaulting Defendant because the Site records are incomplete, all active defendants who did not default have already settled with Plaintiff, and most available evidence is in the exclusive possession of each Defaulting Defendant")To be clear, Plaintiffs seek merely to hold Hua Yang jointly and severally liable with Create; it does not seek any "double recovery" based on Create's conduct as compared with Hua Yang's.  In other words, during the time period Hua Yang collaborated with Create in promoting and profiting from a piracy ring infringing Plaintiffs' Copyrighted

13

### B. The Court Should Award $150,000 In Statutory Copyright Damages Per Work.

The magnitude of Create and Hua Yang's willful infringement of Plaintiffs' Copyrighted Works and disregard of this Court's authority render Plaintiffs entitled to a $150,000 statutory damages award for each of their Copyrighted Works. *See* 17 U.S.C. § 504(c); *Harris v Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) ("[t]he court has wide discretion in determining the amount of statutory damages to be awarded").[9]  To determine the proper level of statutory damages to award, courts consider (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1237 (E.D. Cal. 2008) (awarding requested statutory copyright damages even where defendant's profit not calculable due to default).

First, Create and Hua Yang worked together to profit from the oeuvre of three major television networks—a priceless trove—without any incremental expense.  Lee Decl. ¶¶ 3, 7; Chang Decl. ¶¶ 3, 7; Kim Decl. ¶¶ 3, 7.  Create, Hua Yang and their other corporate relatives have reaped over $ 217 million in U.S. revenues from TVpads that offer the Infringement Applications.  Blum Decl. ¶ 12.

---

(continued…)

Works and trademarks, one or the other of them must be held financially accountable for the damages stemming from that conduct.  As set forth below, that liability is, and should be, substantial.

[9] *See also Hounddog Prods., LLC v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 632 (S.D.N.Y. 2011) (awarding maximum copyright statutory damages of $150,000 per infringed work on default judgment because infringement was willful); *UMG Recordings, Inc. v. MP3.com, Inc.*, 2000 U.S. Dist. LEXIS 17907, at *1-2 (S.D.N.Y. Nov. 14, 2000) (awarding over $53 million in copyright statutory damages and fees); *Domanus v. Lewicki*, 742 F.3d 290 (7th Cir. 2014) (affirming $413 million damages award on default judgment).

14

The TVpad retransmission network's global profits are predicated in part on the retransmission of Plaintiffs' works between the U.S. and over 3 million Create network users worldwide.  Indeed, in just 41 days Create transmitted parts of the Copyrighted Works between just three TVpads in the U.S. and over 61,000 TVpad users in over 71 other countries.  Crocker Decl. ¶ 12; Blum Decl. ¶ 15.[10]

As to the second consideration, Plaintiffs have lost revenues on account of Create and Hua Yang's conduct.  Sokol MSJ Decl., Ex. 1 [Blum Rep.].  Moreover, Plaintiffs lose revenues in dozens of countries outside the U.S. because, the Create network uses the Infringement Applications promoted by Hua Yang to efficiently directs transmissions of Plaintiffs' Copyrighted Works from the United States to its foreign network users in those countries.  Crocker Decl. ¶ 12; Kim Decl. ¶ 11; Lee Decl. ¶ 11; Chang Decl. ¶ 11, Blum Decl.¶ 16.[11]  As to the third consideration, the value of Plaintiffs' Copyrighted Works, including some of the most famous shows in Pacific Rim history, is priceless.  Indeed, Plaintiffs' shows are worldwide hits. SUF ¶¶ 2-4, 43, 48; Kim Decl. ¶¶ 3, 7; Lee Decl. ¶¶ 3, 7; Chang Decl. ¶¶ 3, 7. As for the fourth consideration, the Court should award a large judgment to deter Hua Yang's other co-conspirators, piracy network operators and promoters more generally, and TVpad users, who are inured to transmission piracy without

---

[10] Transmission from the U.S. to non-US TVpad users violates the transmit clause.  *See, e.g., NFL v. Primetime 24 Joint Venture*, 211 F.3d 10, 13 (2d Cir. 2000) ("PrimeTime's uplink transmission of signals captured in the United States is a step in the process by which NFL's protected work wends its way to a public audience" consisting of Canadian cable subscribers); *see also Cartoon Network LP, LLLP v. CSC Holdings, Inc*., 536 F.3d 121, 137 (2d Cir. 2008) (noting that in NFL, "while the uplink transmission that took place in the United States was not, in itself, 'to the public,' the NFL court deemed it so because it ultimately resulted in an undisputed public performance" consisting of Canadian viewers).

[11] *L.A. News Serv. v. Reuters Tel. Int'l, Ltd*., 340 F.3d 926, 928 (9th Cir. 2003) (overseas profits garnered from U.S. infringement compensable under Copyright Act); *Randles Films, LLC v. Quantum Releasing, LLC*, 551 F. App'x 370, 370-71 (9th Cir. 2014) (copyright holder "entitled to recover all damages caused by" infringement including "losses" to "worldwide distribution rights"); *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1147 (N.D. Cal. 2011) (infringement taking place in part in U.S. is actionable).

15

consequences.[12]  As for the fifth consideration, Hua Yang's conduct is presumed to be willful as pleaded.  SAC ¶¶ 1, 73-76, 81, 100, 116, 122, 134, 148, 150, 158.  As to the sixth consideration, by failing to answer the properly-served SAC, Hua Yang refused to provide the particular records to assess the extent and value of the infringing material, including the number of its TVpad sales.  Dkt. 197.  As to the seventh, this default judgment is the only manner in which Plaintiffs' rights against Hua Yang will be vindicated, and it will otherwise have no reason not to engage in similar activities in the future.  *See Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990).[13]

In sum, this Court should award maximum statutory damages per work.

### C.   Plaintiffs Are Entitled To Maximum Statutory Damages For Each Of Their Copyrighted Works Apportioned By Hua Yang's Sales Period.

Plaintiffs confirm round-the-clock infringement of Plaintiffs' Copyrighted Works on the Create Network in the United States with (at least) the Solive Infringement Application.  Crocker Decl. ¶ 7.  Hua Yang began promoting TVpad sales and recruiting distributors online at least as early as January 7, 2012.  Plaintiffs thus seek against Hua Yang maximum statutory damages for *each of its registered works for shows it first broadcast since January 19, 2012, as it did against Create,* concluding as of January 27, 2014.  In addition, Plaintiffs seeks maximum statutory damages for their timely registered works that first aired before January 19, 2012, but that Create offered "on demand" after January 2012.  According to Plaintiffs' damages expert, Mr. Sidney Blum, this amounts to 1,966 works, at $150,000 a piece, for a total of $294,900,000 in statutory copyright damages.  Blum Decl. ¶ 5.  Hua Yang's proportionate joint and several share would

[12] *See, e.g.,* Lee Gyeong-min, *Hallyu [Korean Wave] Contents are Defenseless against Chinese TV pads*, ETNEWS, KOREA IT NEWS (July 30, 2014), http://english.etnews.com/20140730200002.

[13] *See also New Form, Inc. v. Tekila Films, Inc.*, 357 Fed. App'x 10, 11 (9th Cir. 2009) ("We have consistently held and stated that [copyright] statutory damages are recoverable without regard to the existence or provability of actual damages.").

be $169,693,624.  Blum Supp. Decl. ¶ 6.

As indicated, Create, through Solive, broadcasts 12 of Plaintiffs' networks' live, around the clock.  SUF ¶ 46.  As Hua Yang intended, U.S. TVpad users avail themselves of the 24 hour broadcast service each half hour around the clock. Crocker Decl. ¶ 7.  Where, as here, the defaulting defendant failed to provide discovery, courts infer that infringement occurred in *every alleged instance*, giving rise to statutory damages as to each.  *See, e.g., Blizzard Entm't*, 2010 U.S. Dist. LEXIS 85560, at *8-9 (awarding $85,478,600 in statutory damages and noting as to number of infringements "Court must draw all reasonable inferences in Plaintiff's favor on account of Defendant's failure to participate in the litigation process."); *Nexon Am., Inc. v. Kumar*, 2012 U.S. Dist. LEXIS 47294, at *16 (C.D. Cal. Apr. 3, 2012) (accepting plaintiff's "reasonable approximation" of infringing acts on default judgment and awarding $3,587,600).[14]

### D.   Significant DMCA Statutory Damages Are Warranted.

Plaintiffs are additionally entitled to DMCA statutory damages, which amount to a minimum of $200 (and maximum of $2,500) per act of circumvention. Create *offers* its transmission encryption circumvention service for each of Plaintiffs' 10 subscription channels to over 81,000 TVpad users presently known to have used the Solive and KKS Infringement Applications.  Crocker Decl. ¶ 9.  This amounts to, at minimum, $16,243,400 per Plaintiff.   *See* 17 U.S.C. § 1203(c)(3); *Blizzard Entm't*, 2010 U.S. Dist. LEXIS 85560, at *8-9 (awarding $85,478,600 in DMCA statutory damages in addition to copyright infringement award)[15]; Blum

---

[14] Moreover, Plaintiffs' request likely materially undercounts the number of infringed works, since Plaintiffs cannot register the works as fast as they are infringed with the Infringement Applications that Hua Yang promoted for download and which were available in the TVpad Store of the TVpads it sold. Sokol Decl. ¶ 3.

[15] As in *Blizzard*, Plaintiffs are entitled to recover separate damages for Create's copyright infringement and violation of the DMCA.  In any event, Plaintiffs subscription-only channels (e.g., MBC Sports, SBS Golf, KBS N Sports) largely broadcast Plaintiffs' unregistered works, which are not part of the copyright statutory damages claim.  See Kim Decl. ¶ 5; Lee Decl. ¶ 5; Chang Decl. ¶ 5.

Decl. ¶ 7.  Hua Yang's joint and several proportional share of that amount totals $28,040,706.  Blum Supp. Decl. ¶ 8.  Moreover, rather than count Create's offers on a per work basis (or its multiple offers of each work), Plaintiffs have counted each unique Solive and KKS user who transmitted to or received transmissions of Plaintiffs' channels from Plaintiffs' expert's three TVpads.  Further, Plaintiffs have only begun to capture this massive current user data, at great expense, since May.  Consequently, Plaintiffs' number represents just a fraction of the TVpad users who downloaded the Solive and KKS Infringement Applications, through which Create offers the decryption service.  Crocker Decl. ¶¶ 9-10.  Plaintiffs therefore request that the Court consider awarding more than $200 per violation.  *See* Blum Decl. ¶ 7; Crocker Decl. ¶ 10.

### E. A Significant Trademark Damages Award Is Warranted.

A trademark plaintiff can be awarded actual damages under Section 1117 of the Lanham Act.  *See* 15 U.S.C. § 1117(a)-(c).  Available damages include disgorgement of profits (15 U.S.C. § 1117(a)(1)), lost licensing revenues (15 U.S.C. § 1117(a)(2)), and corrective advertising costs (*Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988-89 (9th Cir. 1996)).  Further, given that Create's infringement was willful, Plaintiffs are entitled to treble damages.  15 U.S.C. § 1117(b).  Plaintiffs' expert provides support for $15,111,254 in trademark damages.[16]  Blum Decl. ¶ 9.  Hua Yang's joint and several share is $8,695,434.  Blum Supp. Decl. ¶ 7.

### 3. PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF.

Both the Copyright Act and the Lanham Act vest district courts with the power to issue permanent injunctive relief.  17 U.S.C. § 502(a); 17 U.S.C. § 1203(b); 15 U.S.C § 1116(a).  A permanent injunction is warranted in the

---

[16] An award of damages under the Lanham Act is not impermissibly duplicative of a Copyright Act statutory damages award.  *Nintendo of Am. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) ("when a defendant violates both the Copyright Act and the Lanham Act, an award of both types of damages is appropriate.").

18

intellectual property context when there is no reason to believe the infringement will otherwise cease. *Broadcast Music v. Blueberry Hill Family Rests*., 899 F. Supp. 474, 483 (D. Nev. 1995) (Copyright Act); *Storz Performance, Inc. v. Moto Italia*, 2008 U.S. Dist. LEXIS 70240, at *10 (S.D. Cal. Sept. 15, 2008) (Lanham Act). Courts must consider: (1) success on the merits; (2) likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships; and (4) the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

All four prerequisites for injunctive relief are met here. First, Plaintiffs' success on the merits is virtually assured. *See generally* Dkt. 217; *see also Teller v. Dogge*, 2014 U.S. Dist. LEXIS 139632, at *13 (D. Nev. Sept. 30, 2014). Second, without an injunction, Plaintiffs would suffer irreparable injury from the ongoing damages to its goodwill and diversion of customers; the vast scale of Create's infringement also suggests irreparable harm would result in the absence of a permanent injunction against its co-conspirators such as Hua Yang. Sokol MSJ Decl., Ex. 1 [Blum Rep.]; Dkt. 181-7 [Kim MSJ Decl.] ¶ 7; Dkt. 181-5 [Lee MSJ Decl.] ¶ 7; Dkt. 181-10 [Chang MSJ Decl.] ¶ 7; *MGM Studios, Inc. v. Grokster, Ltd*., 518 F. Supp. 2d 1197, 1217 (C.D. Cal. 2007) (issuing permanent injunction because of the "enormous scale" of the infringement). The balance of hardships favors Plaintiffs, who will lose profits and goodwill, while an injunction will only proscribe Hua Yang's infringing activities. *See Teller*, 2014 U.S. Dist. LEXIS 139632, at *13 ("plaintiff is likely to suffer irreparable injury because, absent injunctive relief, defendant's trademark and copyright infringement is likely to continue."). Finally, an injunction is in the public interest because "there is greater public benefit in securing the integrity of Plaintiffs' copyrights than in allowing [Defendant] to make Plaintiffs' copyrighted material available to the public" (*Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 408 (D. Md. 2006)) and because the "public has an interest in avoiding confusion" caused by the trademark infringement (*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc*., 559

19

F.3d 985, 993 n.5 (9th Cir. 2009)).  Plaintiffs request the Court enter the concurrently-filed Proposed Order.

### 4.  PLAINTIFFS ARE ENTITLED TO THEIR REASONABLE ATTORNEYS' FEES.

The Copyright Act gives the Court discretion to "award a reasonable attorney's fee to the prevailing party[.]" 17 U.S.C. § 505; 17 U.S.C. § 1203(b).[17]  A finding of willful infringement is an "'important factor favoring'" an award of fees. *Curtis v. Illumination Arts, Inc.,* 33 F. Supp. 3d 1200, 1220 (W.D. Wash. 2014) (citation omitted); *Derek Andrew, Inc*, 528 F.3d at 702.  L.R. 55-3 sets forth a default fee schedule.  However, "[a]n attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment[.]" L.R. 55-3.  Plaintiffs will request Hua Yang pay proportional joint and several fees.

### 5.  PLAINTIFFS ARE ENTITLED TO COSTS OF SUIT AND PRE- AND POST-JUDGMENT INTEREST.

The Copyright and Lanham Acts permit costs.  17 U.S.C. § 505; *id*. § 1203(b)(4); 15 U.S.C. § 1117(a)(3).  Plaintiffs intend to file an application to tax costs fourteen days after the entry of default judgment, pursuant to L.R. 54. Plaintiffs here seek post-judgment interest.  28 U.S.C. § 1961(a); Dkt. 110 at 40.

## VI.  <u>CONCLUSION</u>

Plaintiffs request that this Court enter default judgment against Hua Yang and provide the relief requested herein.

Dated:   July 30, 2015     JONES DAY

By: */s/ Brent D. Sokol*
       Brent D. Sokol

Attorneys for Plaintiffs
MUNHWA BROADCASTING CORPORATION; MBC AMERICA HOLDINGS, INC; SEOUL BROADCASTING SYSTEM INTERNATIONAL, INC.; and KBS AMERICA, INC.

---

[17] The Court may consider, inter alia:  (1) the degree of success the party obtained; (2) frivolousness; (3) motivation; (4) the objective reasonableness of the non-prevailing party; and (5) "considerations of compensation and deterrence." *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006).