JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-04213-RGK (RZx)** | Date | September 2, 2015 |
|---|---|---|---|
| Title | *Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiffs' Motion for Default Judgment and Permanent Injunction Against Defendants Du Huyn Song and Media Journal, Inc. (DE 243)**

## I.   INTRODUCTION

On June 2, 2014, Munhwa Broadcasting Corp., MBC America Holdings Inc., Seoul Broadcasting System International Inc., and KBS America Inc. ("Plaintiffs") filed suit against eight separate defendants—among them Du Huyn Song and Media Journal, Inc. ("Defendants")—alleging copyright infringement and unfair competition claims. On June 30, 2014 Plaintiffs filed a First Amended Complaint, which added a claim for violation of the Digital Millennium Copyright Act ("DMCA"). On November 28, 2014, Plaintiffs filed a Second Amended Complaint ("SAC"), which added trademark infringement and unfair competition claims. All told, the SAC asserts the following claims: (1) Public Performance Copyright Infringement, (2) Reproduction and Distribution Copyright Infringement, (3) DMCA Violations, (4) Lanham Act Violation, (5) Federal Unfair Competition, (6) Common Law Trademark Infringement, (7) Statutory Unfair Competition, (8) Common Law Unfair Competition.

Defendants filed their Answer to Plaintiffs' SAC on December 19, 2014. On April 6, 2015, Media Journal's counsel withdrew and it failed to retain substitute counsel, so the Court struck Media Journal's Answer to the SAC. On April 8, 2015, the clerk entered default against Media Journal.

On April 20, 2015, Plaintiffs filed a Motion for Summary Judgment against Song. On May 12, 2015 the Court granted Plaintiffs' Motion for Summary Judgment against Song, ruling that Media Journal was liable for copyright and trademark infringement, and Song was personally liable for Media Journal's conduct. By that point, Song had also abandoned his defense to the lawsuit, prompting the Court to strike his Answer to the SAC on May 21, 2015. Finally, on May 27, 2015 the clerk entered default against Song.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-04213-RGK (RZx) | Date | September 2, 2015 |
|---|---|---|---|
| Title | *Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.* | | |

Presently before the Court is Plaintiffs' Motion for Default Judgment against Defendants. For the following reasons, the Court **GRANTS** Plaintiffs' Motion.

## II. FACTUAL BACKGROUND

Plaintiffs and/or their respective parent companies are the three largest national television networks in South Korea, and are the producers, distributors, and/or exclusive licensees of a large number of audiovisual works, or "programs." Customers in the United States can access Plaintiffs' programs through Plaintiffs' respective websites by paying a subscription fee. In the U.S., Plaintiffs also enter into retransmission consent agreements with various cable television systems, satellite television services, and other multi-channel distributors, which then make the programs available to their subscribers. Plaintiffs' works are registered with the United States Copyright Office, and Plaintiffs own or hold exclusive licenses for the copyrights covering those works.

Defendant Du Huyn Song, a Korean National living in Los Angeles, founded Defendant company Media Journal. In January 2014, Defendant Media Journal partnered with Create New Technology Co. ("Create") to jointly promote and sell Create's TVPad [1] devices. By their own admission Defendants sold a total of 1,771 TVPad devices. (Blum Expert Report (DE 201) ¶¶ 70.)

The TVPad operates using a closed, centrally managed global "P4P" digital broadcast transmission service, which is a variant of "P2P," or "peer to peer," services. This service retransmits or otherwise communicates the entirety of Plaintiffs' copyrighted daily broadcasts and programs on demand to the U.S. public without any copyright licenses. The TVpad connects to a television via an HDMI or analog/video cable, and can be connected to the Internet through either a wireless or Ethernet cable. The TVpad operates various applications (commonly known as "apps"), which Plaintiffs refer to as "unlicensed retransmission request software," and which allow users to access and stream a host of audiovisual works, including Plaintiffs' works, for free. Additionally, the TVPad and its applications are designed to bypass "geo-blocking" algorithms which many broadcasters apply to deter the viewing of their content outside of their country's border. Critically, in addition to receiving transmitted content, the TVpads also *re-transmit* that content to other TVpads on the network operated by Defendant.

## III. JUDICIAL STANDARD

Federal Rule of Civil Procedure 55(b) ("Rule 55") allows entry of default when a party has failed to plead or otherwise defend a case. Rule 55(b) requires that an applicant apply for default judgment in all cases where the requirements for clerk-entered judgment cannot be met. An applicant must apply for a court-ordered default judgment where (1) the claim is for an amount that is not certain or capable of being made certain by computation; (2) the defendant, although in default, has appeared in the action;

---

[1] There are four versions of the TVPad, to which Plaintiffs refer as "TVpad," "TVpad2," "TVpad3," and "TVpad4." This Order uses "TVpad" to refer to all versions of the device.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-04213-RGK (RZx)** | Date | September 2, 2015 |
|---|---|---|---|
| Title | *Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.* | | |

(3) the defendant is a minor or incompetent; or (4) the defendant is in military service or is the United States. Fed. R. Civ. P. 55(b)(2).

Pursuant to Local Rule of the Central District of California ("Local Rule") 55-1, the application for a default judgment shall include a declaration with the following: (1) when and against what party the default was entered; (2) the identification of the pleading to which the default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other representation; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2).

In the Ninth Circuit, a district court must examine the following factors on a motion for default judgment: (1) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the possibility of prejudice to the plaintiff; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## IV.     DISCUSSION

Plaintiffs contend that the Court should grant their Motion for Default Judgment. For the following reasons, the Court agrees.

### A.     Default Judgment is Warranted Under F.R.C.P. 55

Plaintiff has satisfied the statutory requirements for a default judgment. Defendants have each been served with summons and complaint. The Clerk of Court entered default against Defendant Media Journal on April 8, 2015 and against Defendant Song on May 27, 2015. Finally, neither Defendant is a minor, an incompetent person, or exempt under the Servicemembers Civil Relief Act.

### B.     Default Judgment Is Warranted Under the *Eitel* Factors

In the Ninth Circuit, district courts consider several factors, recited above as the *Eitel* factors, in determining whether an entry of default judgment is proper. After analyzing Plaintiffs' Motion in light of the *Eitel* factors, this Court finds that the factors weigh in favor of default judgment for Plaintiffs.

#### 1.     *Substantive Merits and Sufficiency of the Complaint*

The first two *Eitel* factors are (1) the merits of Plaintiffs' substantive claim, and (2) the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. These two factors, taken together, require that a plaintiff "state a claim on which the plaintiff may recover." *Pepsico, Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). For the purpose of default, all well-pleaded allegations in the complaint

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-04213-RGK (RZx)** | Date | September 2, 2015 |
|---|---|---|---|
| Title | ***Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.*** | | |

relating to liability are assumed to be true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). In addition, the defendant's liability is conclusively established and all factual allegations of the complaint, except those relating to damages, are assumed to be true. *Geddes United Fin. Group*, F.2d 557, 560 (9th Cir. 1977).

Plaintiffs assert the following claims in the SAC: (1) Public Performance Copyright Infringement, (2) Reproduction and Distribution Copyright Infringement, (3) DMCA Violations, (4) Trademark Infringement, (5) Federal Unfair Competition, (6) Common Law Trademark Infringement, (7) Statutory Unfair Competition, (8) Common Law Unfair Competition.

To prevail on their copyright infringement claim, Plaintiffs must prove (1) ownership of a valid copyright, and (2) that Defendants violated the copyright owner's exclusive rights under the Copyright. 17 U.S.C. § 501(a). Plaintiffs allege in their SAC that they and their licensees own valid copyrights in the Korean programs at issue. (SAC ¶ 5.) Moreover, Plaintiffs allege vicarious infringement because Defendants induced others to infringe Plaintiffs' copyrights by providing and promoting the TVPads, which allowed the users to publicly perform and distribute Plaintiffs' works without authorization. (SAC ¶¶ 56-67, 107-111.) These facts satisfy the elements needed to prove copyright infringement.

To prevail on their DMCA violation claim, Plaintiffs must prove that Defendants have "manufactured, imported, offered to the public, provided, or otherwise trafficked in any technology, product, service, or component that is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected by copyright or the rights of a copyright owner, that has only limited commercially significant purpose or use other than to circumvent such technological measures, or that is marketed for use in circumventing such technological measures." 17 U.S.C. § 1201. Plaintiffs allege that Defendants have manufactured and sold for commercial gain the TVPad—a device designed to circumvent safeguards intended to control access to copyrighted works. (SAC ¶ 56-67, 121.)

To prevail on their federal trademark infringement claim, Plaintiffs must prove that, without their consent, Defendants used in commerce a reproduction or copy of a registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers. 15 U.S.C. § 1114(a) (1997). Plaintiffs own several registered trademarks (USPTO Registration Numbers 4259591, 4599526, and 4378636), which they include on the screen periodically during their programming. (SAC ¶¶ 82-87.) Moreover, Plaintiffs allege that Defendants use their trademarks in advertising and offering TVpads for sale; because Defendants appropriate the identical trademarks, the likelihood of consumer confusion is very high. (SAC ¶ 65-67 127.) These facts satisfy the elements needed to prove trademark infringement.

To prevail on their federal unfair competition claim, Plaintiffs must prove that Defendants used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-04213-RGK (RZx)** | Date | September 2, 2015 |
|---|---|---|---|
| Title | ***Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.*** | | |

fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiffs, or as to the origin, sponsorship, or approval of his goods by Plaintiffs. 15 U.S.C. § 1125(a)(1)(A) (1997). A federal unfair competition claim contains elements that are identical to those of a federal trademark infringement claim. Both claims require an unauthorized use in commerce of a plaintiff's mark or symbol that is likely to cause consumer confusion. Because Plaintiffs have sufficiently pled both an unauthorized use of their marks in commerce and likely consumer confusion, this Court finds that Plaintiffs have stated a claim for federal unfair competition.

To prevail on their common law trademark infringement claim, Plaintiffs must satisfy the same standard governing federal trademark infringement under the Lanham Act. *See Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009). Because Plaintiffs have sufficiently pled federal trademark infringement, this Court finds that Plaintiffs have also stated a claim for common law trademark infringement.

To prevail on their statutory unfair competition claim, Plaintiffs must prove that Defendants engaged in "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A violation of another substantive law can serve as a predicate unlawful business activity under California's Unfair Competition Law. *See Celebrity Chef's Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1159, 1169 (S.D. Cal. 2014). Because Plaintiffs have sufficiently pled both trademark and copyright infringement, such violations constitute the predicate unlawful business activities necessary to support a finding of statutory unfair competition.

To prevail on their common law unfair competition claim, Plaintiffs must satisfy the same standard governing federal unfair competition under the Lanham Act. *See Id.* Because Plaintiffs have sufficiently pled federal unfair competition, this Court finds that Plaintiffs have also stated a claim for common law unfair competition.

Overall, the Court finds that Plaintiffs have sufficiently pled each claim, and, therefore, they have satisfied the first two *Eitel* factors.

        2.     <u>*Possibility of Prejudice*</u>

The third *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. Potential prejudice to Plaintiffs favors granting a default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.

        3.     <u>*Amount at Stake*</u>

Under the fourth *Eitel* factor, the court must consider the amount of money at stake in relation to the seriousness of Defendants' conduct. In the instant case, Plaintiffs are seeking $8,471,748, which is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-04213-RGK (RZx)** | Date | September 2, 2015 |
|---|---|---|---|
| Title | *Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.* | | |

clearly a substantial sum. Given Defendants' thousands of TVPad sales conducted even after Plaintiffs warned them with a cease and desist letter, the Defendants have engaged in willful infringement of Plaintiffs' copyrighted works and trademarks, which justifies the imposition of a substantial monetary award. Accordingly, this factor favors granting default judgment.

4.  *Possibility of Dispute*

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. Accordingly, no genuine dispute of material facts would preclude granting Plaintiffs' motion.

5.  *Possibility of Excusable Neglect*

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. The Court finds that the possibility of excusable neglect is remote. Defendants were properly served with summons and complaint. Both Defendants were involved early in this case and filed an answer to Plaintiffs' SAC. Subsequently, however, Defendant Media Journal failed to retain new counsel after its attorney withdrew, prompting this Court to strike its Answer on April 6, 2015. Similarly, Defendant Song abandoned his defense after opposing Plaintiffs' Motion for Summary Judgment, and this Court struck his Answer on May 21, 2015. The Clerk of Court entered default against Media Journal on April 8, 2015 and against Song on May 27, 2015. Given Defendants' early participation in the matter, and the ample notice it received at various stages of the litigation, the possibility of excusable neglect is slight.

6.  *Policy for Deciding Cases on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the mere existence of Fed.R.Civ.P. 55(b) indicates that "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Moreover, a decision on the merits is impractical, if not impossible, given Defendant's non-responsive conduct after this Court ordered it to retain new counsel and proceed with its defense. "Rule 55(a) allows a court to decide a case before the merits are heard if the defendant fails to appear and defend." *Landstar Ranger Inc., v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). Accordingly, the court is not precluded from entering default judgment against Defendant.

**C.  Statutory Damages**

1.  *DMCA Statutory Damages*

In lieu of actual damages and profits, a prevailing plaintiff under the DMCA "may elect to recover an award of statutory damages for each violation . . . in the sum of not less than $200 [n]or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-04213-RGK (RZx)** | Date | September 2, 2015 |
|---|---|---|---|
| Title | *Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.* | | |

the court considers just." 17 U.S.C. § 1203(c)(3)(A). In calculating the award of statutory damages, courts multiply the rate specified in the DMCA by the number of infringing devices. *See, e.g.*, *Sony Comput. Entm't Am. v. Filipak*, 406 F. Supp. 2d 1068, 1074 (N.D. Cal. 2005) ("The Court concludes that [the DMCA] authorizes a separate award of statutory damages for each device sold."). Ultimately, district courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Peer Int'l. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990).

Plaintiffs seek an award of $354,200 per Plaintiff for DMCA violations. (Blum Suppl. Decl. ¶ 8.) Plaintiffs arrive at this figure by multiplying the statutory minimum ($200) by the number of devices that Defendants sold (1,771). *Id.*

Plaintiffs seek a high award, and this Court does not take its discretionary role in granting statutory damages lightly. Despite its wide discretion, however, this Court is limited to a certain range prescribed by the DMCA and may not grant an award below the statutory minimum of $200 per violation. *Peer Int'l.*, 909 F. 2d at 1336; *Nexon Am. Inc. v. Kumar*, No. 2:11-cv-06991-ODW(PJWx), 2011 WL 1116328, at *7 (C.D. Cal. Apr. 3, 2011) ("[T]he Court is powerless the deviate from the DMCA's statutory minimum."). In fact, under the same provision of the DMCA, other district courts have been compelled to award statutory damages in the high millions. *Sony Comput. Entm't Am.*, 406 F. Supp. 2d at 1075 (awarding $6,018,700); *EchoStar Satellite LLC v. ViewTech, Inc.*, No. 07cv1273 BEN (WVG), 2011 WL 1522409, at *4 (S.D. Cal. Apr. 20, 2011) (awarding $ 214,898,600); *Blizzard Entm't Inc., v. Reeves*, No. cv-09-7621 SVW(AJWx), 2010 WL 4054095, at *4 (C.D. Cal. Aug. 10, 2010) (awarding $85,478,600).

Accordingly, the Court grants an award of $354,200 per Plaintiff for DMCA violations.

    2.    *Trademark Damages*

Under the Lanham Act, a plaintiff can be awarded actual trademark damages in the form of disgorged profits and lost licensing revenues. 15 U.S.C. § 1117(a). Additionally, a plaintiff is entitled to recover the cost of corrective advertising undertaken to restore the value of a trademark that has been diminished by a defendant's infringement. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (1995). Treble damages (three times the profits) are also available in cases where the defendant "intentionally us[es] a mark or designation, knowing such mark or designation is a counterfeit mark." 15 U.S.C. 1117(b). The Lanham Act also provides, "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a).

Plaintiffs first seek disgorgement of profits in the amount of $257,044. To reach this figure, Plaintiffs' expert subtracted Defendants' overhead costs from the total revenue on the 1,771 TVPads sold to yield a total of $164,161 in profits. (Blum Expert Report (DE 201) ¶¶ 68-88.) Next, the expert

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-04213-RGK (RZx)** | Date | September 2, 2015 |
|---|---|---|---|
| Title | ***Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.*** | | |

report factored in treble damages for the 1,547 TVPad devices that were sold in willful infringement after Defendants had been adequately warned by a cease and desist letter. *Id.* Finally, because only 12 out of 21 channels on the TVPad feature Plaintiffs' content, the expert report apportioned Defendants' overall profit accordingly for a total of $257,044 in damages trebled or $93,571 un-trebled. *Id.*

Plaintiffs also seek lost licensing revenue in the amount of $451,580. To arrive at this figure, Plaintiffs' expert calculated each Plaintiff's subscription revenue per month in the United States over the course of the infringement period. (Blum Expert Report (DE 201) ¶¶ 99-110.) The expert report multiplied each Plaintiff's subscription revenue by the 1,771 TVPad owners who would otherwise have had to pay a subscription fee, yielding a result of $166,950. *Id.* Next, the expert report factored in treble damages for the 1,547 TVPad devices that were sold in willful infringement after Defendants had been adequately warned by a cease and desist letter, producing a figure of $451,580.

Finally, Plaintiffs seek $270,000 in corrective advertising damages for expenses incurred. To calculate the amount, Plaintiffs' expert utilized two sound methodologies to determine how much the infringing defendants had expended on advertising. (Blum Expert Report (DE 201) ¶¶ 117-18.) The expert report then used the defendants' advertising expenditures as a benchmark for the amount Plaintiffs would have to spend on corrective advertising. Plaintiffs' expert recommended a total of $30,000 and stated that it would be equally reasonable to split the $30,000 evenly among the three Plaintiffs or award each Plaintiff $30,000. (Blum Expert Report (DE 201) ¶ 128.) Plaintiffs seek $90,000 ($30,000 each) along with treble damages for a total of $270,000 in corrective advertising costs. (Blum Decl. ¶ 9.)

All told, Plaintiffs seek $978,624 in actual damages under the Lanham Act. The Ninth Circuit has stressed that "the trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party." *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir. 1982). Additionally, the Lanham Act vests district courts with discretion to adjust damages if "the amount of the recovery based on profits is either inadequate or excessive." 15 U.S.C. § 1117(a). While Plaintiffs are certainly entitled to actual damages in the form of lost licensing revenue, corrective advertising costs, and disgorgement of profits, the Court disagrees that treble damages are appropriate here. Plaintiffs have demonstrated a loss of $166,950 in forgone licensing revenue and have shown that Defendants only received $164,161 in profits. (Blum Expert Report (DE 201) ¶¶ 46-51, 68-88.) In light of these figures, the Court considers an award of treble damages to be excessive and exercises its discretion to adjust the actual damages accordingly.

Overall, the Court grants Plaintiffs an award of damages reflecting the pure amounts of lost licensing revenue ($166,950), disgorgement of profits ($93,571), and corrective advertising ($90,000). Thus, the Court grants an award of $350,521 in actual damages under the Lanham Act.

    2.    *Copyright Statutory Damages*

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-04213-RGK (RZx)** | Date | September 2, 2015 |
|---|---|---|---|
| Title | ***Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.*** | | |

 Section 504(a) of the Copyright Act provides that "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a). Subsection (c) states that the copyright owner may elect to recover, instead of actual damages and profits, an award of statutory damages of $750 to $30,000 per each work infringed. 17 U.S.C. § 504(c). Where the court finds that the infringement was committed willfully, the court has discretion to increase the award of statutory damages to a sum of not more than $150,000. 17 U.S.C. § 504(c)(2).

 Here, Plaintiffs seek $6,430,524 in statutory damages rather than actual damages. Plaintiffs request the maximum award of $150,000 for Defendants' willful infringement. The SAC alleges that Defendants acted willfully and intentionally in violation of Plaintiffs' copyrights when they continued to promote and sell the TVPad product with full knowledge that the content streaming on the TVPad consisted of Plaintiffs' copyrighted works. (SAC ¶ 81.)

 Plaintiffs' expert determined the Copyright damages amount by referencing the liability of another Defendant in the present action, Create New Technology Co. (Blum Suppl. Decl. ¶ 5.) First, Plaintiffs' expert calculated the percentage of infringing devices attributable to Media Journal and Song by dividing Media Journal's sales (1,771) by the total number of Create's sales in the United States (81,217) for a total of 2.2%. *Id.* Next, Plaintiffs' expert apportioned Media Journal and Song's copyright infringement liability by calculating 2.2% of Create's total copyright infringement liability ($294,900,000) to yield a total of $6,430,524. (Blum Suppl. Decl. ¶ 6.)

 Even though Plaintiffs have alleged and demonstrated willful infringement, the Court is not convinced that the maximum statutory award of $150,000 per infringing work is merited. "While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to a windfall." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1103 (N.D. Cal. 2014). Here, Plaintiffs have demonstrated a loss of $166,950 in forgone licensing revenue and have shown that Defendants only received $164,161 in profits. (Blum Expert Report (DE 201) ¶¶ 46-51, 68-88.) The Court has already ordered payment of $1,062,600 for DMCA violations and $350,521 in actual damages under the Lanham Act. In light of these figures, the Court is satisfied that awarding the statutory minimum of $750 per work would effectively deter the Defendants and prevent Plaintiffs from receiving a windfall.

 This Court has previously imposed the minimum Copyright statutory damages amount of $750 per work against Create for a total of $1,474,500. To determine Media Journal and Song's liability under the Copyright Act, the Court will utilize the same apportionment method proposed by Plaintiffs' expert, which simply takes 2.2% of Create's total Copyright liability. Calculating 2.2% of Create's $1,474,500 liability produces a total of $32,439.

 Thus, the Court grants an award of $32,439 in statutory damages under the Copyright Act.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 14-04213-RGK (RZx)** | Date | September 2, 2015 |
|---|---|---|---|
| Title | *Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.* | | |

**D.    Attorney's Fees and Costs**

Plaintiffs seek an award of reasonable attorney's fees and costs.

Local Rule 55-3 permits recovery of attorneys' fees in connection with default judgment where an "applicable statute provides for the recovery of reasonable attorneys' fees." L.R. 55-3. Here, the Copyright Act vests the court with discretion to "award a reasonable attorneys' fee to the prevailing party." 17 U.S.C. § 505. Local Rule 55-3 sets forth a default judgment fee schedule, but an attorney seeking a fee award in excess of the schedule may file a request with the Court at the time of entry of the default judgment. Plaintiffs have indicated they will request the full amount of attorneys' fees incurred once default judgment has been entered.

As to costs, the Court grants Plaintiff's costs, the amount of which to be determined by separate application to the Clerk of the Court.

**E.    Injunctive Relief**

Plaintiffs seek a permanent injunction against Defendant enjoining and permanently restraining Defendant from engaging in any infringing activity, including re-transmitting or publicly displaying Plaintiffs' copyrighted works and trademarks without authorization.

The Lanham Act gives the court the power to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C.A. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Additionally, courts have noted that when a defendant is aware of the serious claims brought against him, yet chooses to ignore the lawsuit, "failure to grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003).

Section 502 of the Copyright Act vests the Court with the power to grant permanent injunctive relief as it deems reasonable to prevent infringement of copyright. 17 U.S.C. § 502(a). Courts apply a four-factor test when considering whether to award permanent injunctive relief to a prevailing plaintiff in disputes arising under the Copyright Act. *eBay Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391-92 (2006). This test requires a plaintiff to demonstrate that (1) it has suffered irreparable injury; (2) remedies at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Id.* at 391.

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 14-04213-RGK (RZx)** | Date | September 2, 2015 |
|---|---|---|---|
| Title | *Munhwa Broadcasting Corp. et al. v. Create New Technology Co. Ltd. et al.* | | |

Here, a permanent injunction against Defendant is warranted under the Lanham Act and the Copyright Act. Plaintiffs allege that they have been injured and will continue to suffer irreparable injury to their business and reputation unless Defendant is restrained by this Court from infringing Plaintiffs' trademarks and copyrights. Plaintiff has no adequate remedy at law. The balance of hardships between Plaintiff and Defendant warrants permanent injunction. Finally, the public interest would not be disserved by a permanent injunction. Thus, this Court grants a permanent injunction enjoining Defendant from re-transmitting or publicly displaying Plaintiffs' copyrighted works and trademarks without authorization. The terms of the permanent injunction shall be consistent with those included in the Judgment concurrently issued with this Order.

## V.      CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiffs' Motion for Default Judgment. The Court awards Plaintiffs the following damages:

1. $354,200 of statutory damages per Plaintiff under the DMCA

2. $350,521 of actual damages under the Lanham Act

3. $32,439 of statutory damages under the Copyright Act

Defendants' total liability amount to $1,445,560

The Court also **GRANTS** a permanent injunction against Defendant and **ORDERS** Plaintiffs to amend the proposed order to conform with the amount of damages granted herein by no later than ten (10) days from the date of this order.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer